UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KARILIN FRICA SANCHEZ, SHAWANNA
DILWORTH, NELSON FORASTIERI, ANDRE
LASHLEY, TOMMY MIRANDA, RENEE DAVIS,
RODNEY WILLIAMS, and MARY ESTEVEZ,
individually and on behalf of all others similarly
situated,

                       Plaintiffs,

             - against -

ASA COLLEGE, INC., ALEX SHCHEGOL,
VICTORIA KOSTYUKOV, VICTORIA
SHTAMLER, ROBERTO DUMAUAL, LESIA
WILLIS-CAMPBELL, JOSE VALENCIA,
SHANTHI KONKOTH, MARK MIRENBERG,
ALLA SHCHEGOL, ROBERT FAYNBLUT,
DUWAYNE CARTHAN, ANTHONY DALTON,
and JOHN and JANE DOES 1 AND 2,

                     Defendants.

Index No.: 14 CV 5006 (JMF)(RLE)

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

JOHNSON GALLAGHER MAGLIERY LLC
Steven D. Johnson, Esq.
Peter J. Gallagher, Esq.
75 Broad Street - 20th floor
New York, New York 10004
(212) 248-2220

*Attorneys for Defendants*

# Table of Contents

Page

TABLE OF AUTHORITIES .................................................................. iii

PRELIMINARY STATEMENT .............................................................. 1

BACKGROUND AND SUMMARY OF ALLEGATIONS ........................................ 3

    ASA and the Financial Aid Program ................................................. 3

    The Plaintiffs' Allegations Against the Defendants .......................................... 7

    The Defendants' Alleged Scheme to Fraudulently Obtain
    Regulatory Approvals .................................................. 8

    The Defendants' Alleged Scheme to Trick Students ...................................... 8

ARGUMENT ................................................................................ 10

    I.       The Plaintiffs Do Not a Private Right of Action for Their Claims ....... 10

    II.      Plaintiffs' RICO Claim is Inadequately Pled ....................................... 15

          A.     Plaintiffs Fail to Plead the Requisite Detail For Any of the
                  Supposed Predicate Acts of Fraud ............................................. 17

          B.     The Amended Complaint Fails to Allege That Any of the
                  Individual Defendants Acted With Fraudulent Intent ............... 19

          C.     Plaintiffs Fail to Allege Knowledge of Falsity ........................... 21

          D.     Plaintiffs Fail to Allege How or Why Many
                  Misrepresentations Were False ................................................. 23

          E.     Certain of the Statements Plaintiffs Complain About Are
                  Non-Actionable Puffery or Forward Looking Statements ......... 26

          F.     The Alleged Omissions Are Not Adequately Pled .................... 28

          G.     There is No RICO Claim in Light of the Above ........................ 29

    III.     The Amended Complaint Fails to State a Claim Under DTPA § 349 .. 30

          A.     The Conduct at Issue is Not Consumer Oriented ...................... 30

          B.     The Amended Complaint is Insufficiently Pled as to
                  the Individual Defendants ......................................... 31

          C.     Plaintiffs Fail to Allege Acts of Practices That
                  Are Materially Misleading ......................................... 32

      D.      The DTPA Claim Fails Because Plaintiffs Cannot Plead
            a Legally Cognizable Injury .......................................................   35

CONCLUSION ............................................................................................   37

Cases                                                                                    Page(s)

*4 K & D Corp. v. Concierge Auctions, LLC*,
    No. 13 Civ. 2527 (JGK), 2014 WL 904451 (S.D.N.Y. Mar. 10, 2014) .................. 15-16

*Alki Partners, L.P. v. Windhorst*,
    472 F. App'x 7 (2d Cir. 2012) .............................................................19-22, 24-25, 27

*Allen v. New World Coffee, Inc.*,
    No. 00 CIV.2610(AGS), 2002 WL 432685 (S.D.N.Y. Mar. 19, 2002).........................17

*Amusement Indus., Inc. v. Stern*,
    693 F. Supp. 2d 327 (S.D.N.Y. 2010)....................................................................28, 29

*Anyakora v. Sallie Mae Corp.*,
    255 F. App'x 457 (11th Cir. 2007) ..............................................................................14

*Austin v. Albany Law Sch. of Union Univ.*,
    38 Misc. 3d 988 (Sup. Ct. Albany County 2013) .........................................................33

*B & M Linen, Corp. v. Kannegiesser, USA, Corp.*,
    679 F. Supp. 2d 474 (S.D.N.Y. 2010)..........................................................................26

*Beason v. Kleine*,
    96 A.D.3d 1611 (4th Dep't 2012) .................................................................................27

*Bevelacqua v. Brooklyn Law Sch.*,
    39 Misc. 3d 1216(A) (Sup. Ct. Kings County 2013)....................................................33

*Cacchillo v. Insmed, Inc.*,
    551 F. App'x 592 (2d Cir. 2014) ..................................................................................27

*Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996)..........................................................................................20

*Conte v. Newsday, Inc.*,
    703 F. Supp. 2d 126 (E.D.N.Y. 2010) .................................................................. 17-18

*Cort v. Ash*,
    422 U.S. 66 (1975)........................................................................................................12

*Cromer Finance Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001)..........................................................................21

*Cruz v. NYNEX Info. Res.*,
    263 A.D.2d 285 (1st Dep't 2000) .................................................................................30

*Derbaremdiker v. Applebee's Int'l, Inc.*,
No. 12-CV-01058 (KAM), 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012),
*aff'd*, No. 12-4184-cv, 2013 WL 2158396 (2d Cir. May 21, 2013)................................35

*Discon, Inc. v. NYNEX Corp.*,
93 F.3d 1055 (2d Cir. 1996), *vacated on other grounds,* 525 U.S. 128 (1998)..............17

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
822 F.2d 1242 (2d Cir. 1987)..................................................................................22

*Dobina v. Weatherford Int'l Ltd.*,
909 F. Supp. 2d 228 (S.D.N.Y. 2012)................................................................ 20-21

*Edmonds v. Seavey*,
No. 08 CIV.5646(HB), 2009 WL 2949757 (S.D.N.Y. Sept. 15, 2009),
*aff'd,* 379 F. App'x 62 (2d Cir. 2010)................................................................ 16-17

*Feasby v. Industri–Matematik Int'l Corp.*,
99 Civ. 8761(LTS)(JCF), 2003 WL 22976327 (S.D.N.Y. Dec. 19, 2003) ...................23

*Fink v. Time Warner Cable*,
810 F. Supp. 2d 633 (S.D.N.Y. 2011).......................................................................34

*Gaidon v. Guardian Life Ins. Co. of Am.*,
96 N.Y.2d 201 (2001) ..............................................................................................32

*Gibbs v. SLM Corp.*,
336 F. Supp. 2d 1 (D. Mass. 2004), *aff'd*, No. 05-1057,
2005 WL 5493113 (1st Cir. Aug. 23, 2005).............................................................11

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011)......................................................................20

*Gomez-Jimenez v. N.Y. Law Sch.*,
36 Misc. 3d 230 (Sup. Ct., N.Y. County 2012),
*aff'd*, 103 A.D.3d 13 (2012)............................................................................... 35-36

*Gomez-Jimenez v. N.Y. Law School*,
103 A.D.3d 13 (1st Dep't 2012) ......................................................................... 25-26

*Gross v. Waywell*,
628 F. Supp. 2d 475 (S.D.N.Y. 2009 ...........................................................16, 17, 19

*Halzack Watkins v. Educ. Credit Mgmt. Corp.*,
2:09cv472, 2010 WL 2520653 (E.D. Va. June 17, 2010) ...........................................11

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
311 F.3d 198 (3d Cir. 2002).....................................................................................19

*In re Sotheby's Holdings, Inc.,*
    No. 00 Civ. 1041, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) ..................................23

*In re Sterling Foster & Co., Sec. Litig.,*
    222 F. Supp. 2d 216 (E.D.N.Y. 2002) ..........................................................30

*In re Time Warner Inc. Sec. Litig.,*
    9 F.3d 259 (2d Cir. 1993) ............................................................................19

*Jack Kelly Partners LLC v. Zegelstein,*
    No. 600351/08, 2009 WL 5172482
    (Sup. Ct., N.Y. County Nov. 30, 2009) (unpub.)...........................................30

*Janbay v. Canadian Solar, Inc.,*
    10 CIV. 4430 (RWS), 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012)...........................24

*Jones v. Nat'l Comm'n & Surveillance Networks,*
    No. 05 Civ. 3461(AKH), 2006 WL 73623 (S.D.N.Y. Jan.12, 2006) ...........................25

*L'ggrke v. Benkula,*
    966 F.2d 1346 (10th Cir. 1992) ..................................................................11

*Labickas v. Arkansas State Univ.,*
    78 F.3d 333 (8th Cir. 1996) ........................................................................11

*Leung v. Law,*
    387 F. Supp. 2d 105 (E.D.N.Y. 2005) ...................................................18, 23

*MacDonald v. Thomas M. Cooley Law School,*
    724 F.3d 654 (6th Cir. 2013) ......................................................................31

*Marcus v. Frome,*
    275 F. Supp. 2d 496 (S.D.N.Y. 2003) ........................................................23

*Mathon v. Feldstein,*
    303 F. Supp. 2d 317 (E.D.N.Y. 2004) ........................................................17

*McCulloch v. PNC Bank Inc.,*
    298 F.3d 1217 (11th Cir. 2002) .............................................................. 11-14

*Medina v. Bauer,*
    2004 WL 136636 (S.D.N.Y. Jan 27, 2004) ............................................. 31-32

*Mihalakis v. Cabrini Med. Ctr.,*
    151 A.D.2d 345 (1st Dep't 1989) ................................................................36

*Mills v. Polar Molecular Corp.,*
    12 F.3d 1170 (2d Cir. 1993)................................................................ 16, 18-19

*N.Y. Inst. of Dietetics, Inc. v. Great Lakes Higher Educ. Corp.*,
    94 civ. 4858 (LLS), 1995 WL 562189 (S.D.N.Y. Sept. 21, 1995) ........................... 13-14

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*,
    12 CIV. 2837 (KBF), 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012),
    *aff'd*, 530 F. App'x 19 (2d Cir. 2013) ..............................................................32

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
    85 F. Supp. 2d 282 (S.D.N.Y. 2000)..............................................................28

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995) ...................................................................................32

*Parks School of Bus., Inc. v. Symington*,
    51 F.3d 1480 (9th Cir. 1995) ..................................................................11, 12

*Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*,
    888 F. Supp. 2d 491 (S.D.N.Y. 2012),
    *aff'd*, 514 F. App'x 51 (2d Cir. 2013) ............................................................29

*Plount v. Am. Home Assurance Co.*,
    668 F. Supp. 204 (S.D.N.Y. 1987)..............................................................16

*Rahman v. Schriro*,
    13-CV-6095 (CS), 2014 WL 2208050 (S.D.N.Y. May 27, 2014)............................5, 34

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)........................................................................24

*Sanon v. Dep't of Higher Educ.*,
    453 F. App'x 28 (2d Cir. 2011) ..................................................................11

*Serbalik v. Gen. Motors Corp.*,
    246 A.D.2d 724 (3d Dep't 1998) ................................................................26

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) .......................................................................20

*Shovak v. Long Island Commercial Bank*,
    50 A.D.3d 1118 (2d Dep't 2008)................................................................35

*Small v. Lorillard Tobacco Co.*,
    94 N.Y.2d 43 (1999) ..................................................................................36

*Southerland v. N.Y.C. Hous. Auth.*,
    No. 10-CV-5243 (SLT), 2010 WL 4916935 (E.D.N.Y. Nov. 23, 2010).....................32

*Stutman v. Chem. Bank,*
    95 N.Y.2d 24 (2000) ...........................................................................30, 32

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
   497 F.3d 144 (2d Cir. 2007)..................................................................26

*Todd v. Oppenheimer & Co.*,
   78 F.R.D. 415 (S.D.N.Y. 1978) ...........................................................24

*Touche Ross & Co. v. Redington*,
   442 U.S. 560 (1979)..............................................................................12

*Trustees of Plumbers & Pipefitters Nat'l Pension Fund v.*
   *De-Con Mech. Contractors, Inc.*,
   896 F. Supp. 342, 347 (S.D.N.Y. 1995) ..............................................18

*Uhr ex rel. Uhr v E. Greenbush Cent. Sch. Dist.*,
   94 N.Y.2d 32 (1999) ............................................................................15

*United States v Hathaway*,
   798 F.2d 902 (6th Cir. 1986) ..........................................................21-22

*Warren v. John Wiley & Sons, Inc.*,
   952 F. Supp. 2d 610 (S.D.N.Y. 2013)..............................................18-19

*Weinstein v. Appelbaum*,
   193 F. Supp. 2d 774 (S.D.N.Y. 2002) ..................................................25

*Welch v. TD Ameritrade Holding Corp.*,
   No. 07 CIV 6904, 2009 WL 2356131 (S.D.N.Y. July 27, 2009) ..................34

*Valencia ex rel. Franco v. Lee*,
   316 F.3d 299, 305 (2d Cir. 2003).........................................................29

*Williams v. Nat'l School of Health Tech.*,
   836 F. Supp. 273 (E.D. Pa. 1993), *aff'd*, 37 F.3d 1491 (3rd Cir. 1994) ..........13

Miscellaneous                                                                    Page(s)

18 U.S.C. §§ 1961-1968
   Racketeer Influenced and Corrupt Organizations Act ("**RICO**") .......... *passim*

18 U.S.C. § 1341...................................................................................16

18 U.S.C. § 1343...................................................................................16

20 U.S.C. § 1002.....................................................................................4

20 U.S.C. § 1082.................................................................................6, 12

20 U.S.C. § 1085 ................................................................4

20 U.S.C. § 1092 ....................................................... 4-6, 29

20 U.S.C. § 1094 ....................................................... 4-6, 13

20 U.S.C. § 1099c ...............................................................4

34 C.F.R.§ 600.5 .................................................................4

34 C.F.R.§ 600.20 ...............................................................4

34 C.F.R.§ 668 .......................................................... 4-6, 13

34 C.F.R.§ 668.14 ...........................................................4, 6

34 C.F.R.§ 668.23 ...............................................................4

34 C.F.R.§ 668.41 ..........................................................6, 29

34 C.F.R.§ 668.42 ..........................................................6, 29

34 C.F.R.§ 668.43 .......................................................4, 6, 29

34 C.F.R.§ 668.71-74 .......................................................5-6

34 C.F.R.§ 668.92-94 .....................................................6, 13

34 C.F.R.§ 668.95 ..........................................................6, 13

34 C.F.R.§ 668.187 ..............................................................5

Fed. R. Civ. P. 8 .............................................................31-32

Fed. R. Civ. P. 9 ............................................ 16-19, 22-23, 29

Fed. R. Civ. P. 12(b)(6)........................................................1

N.Y. Educ. Law § 661 .........................................................4

N.Y. Educ. Law § 665-a ......................................................4

N.Y. Gen. Bus. Law § 349 (New York Consumer Protection Act)................................... *passim*

We respectfully submit this memorandum on behalf of each of the defendants ("**Defendants**") in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the First Amended Complaint ("**Amended Complaint**" or "**Am. Compl.**"), which the Plaintiffs filed in accordance with the Court's order dated September 8, 2014.

## PRELIMINARY STATEMENT

The Court should dismiss both of the Amended Complaint's causes of action because the Plaintiffs do not have a private right of action to pursue either of them. Plaintiffs, former students of defendant ASA College, Inc. ("**ASA**"), claim that ASA and its alleged officers (*i.e.*, the "**Individual Defendants**") tricked the U.S. Department of Education ("**DOE**") into allowing ASA to participate in the federal financial aid programs authorized by Title IV of the Higher Education Act ("**HEA**") and tricked the Plaintiffs into taking HEA loans to attend ASA. Every one of the allegations of misconduct contained in the Amended Complaint would be a violation of the HEA had each occurred as Plaintiffs allege.

As such, the Amended Complaint must be dismissed under the rule of law that prohibits students from suing their schools in court for alleged violations of the HEA. Court after court to consider the question has come to the same conclusion—they have consistently refused to recognize a private right of action for such claims because doing so would be inconsistent with Congress's express delegation of exclusive authority to the DOE to monitor compliance with the HEA and remedy violations of it. Allowing a private right of action would conflict with this enforcement scheme, as it would put the Court in the position of deciding issues that Congress intended the DOE to determine, thereby usurping the DOE's "exclusive authority" and "undercutt[ing] the administrative enforcement mechanisms" that Congress created.

Thus, a consensus has emerged that regardless of whether a student explicitly labels her claim as a violation of the HEA or (as Plaintiffs have done) a violation of some other statutory or common law duty, a student cannot sue her school in court for conduct that would violate the HEA, had it occurred. Rather, if the student believes the school has violated the HEA, the student must pursue her claim according to the path that Congress set forth—namely, the student can file a complaint against the school with the DOE (which Congress armed with extensive enforcement tools, including the ability to order restitution), and if dissatisfied with the results, she can file a lawsuit against the DOE, whose handling of the complaint is subject to judicial review on an arbitrary and capricious standard.

What the student cannot do is what the Plaintiffs have done here—sue the school in Court rather than pursue their administrative remedies. This being the case, Counts I and II of the Amended Complaint (for violation of the RICO statute and Section 349 of New York's Deceptive Trade Practice Act ("**DTPA**"), respectively) should be dismissed, because both are based on allegations of HEA non-compliance that the Plaintiffs can only properly bring before the DOE.

Even if Plaintiffs could somehow sidestep this flaw in their Amended Complaint, neither their RICO claim nor their DTPA claim has been adequately pled. While Plaintiffs accuse ASA's officers of mail and wire fraud as part of a pattern of racketeering activity, they come nowhere close to satisfying the heightened pleading standards that apply to all fraud claims. They do not identify when the alleged misrepresentations were made, who supposedly made them, to whom, where, and, in many cases, not even the content of the alleged misstatement. Fraud simply cannot be pled in such bare, conclusory terms. Moreover, the fraud claims fail because they are based on non-actionable "puffery" or forward-looking statements and

frequently do not even identify any basis from which one could conclude that they are false or that the alleged speaker knew them to be so.

Plaintiffs' DTPA claim fares no better. First, the Plaintiffs lack standing to bring this claim because the DTPA only applies to consumer-oriented conduct whereas case law holds that career advancement—which is each Plaintiff's admitted purpose in pursuing an ASA education—is a business purpose that is not covered by consumer-oriented statutes like the DTPA. Moreover, the DTPA claim is based on allegations that are too conclusory to state a claim and that are not materially misleading (as they would have to be) even when taken as true.

## BACKGROUND AND SUMMARY OF ALLEGATIONS

**ASA and the Financial Aid Programs.** Defendant ASA is a privately owned two-year college that provides its students with degree and certificate programs in various fields, including business, healthcare, and information technologies. (Am. Compl. ¶ 52.) ASA offers its programs from three locations in New York City and one in Miami, Florida. (Am. Compl. ¶ 17.)

Since it was formed more than 20 years ago, ASA has been authorized by the New York State Department of Education ("**NYSED**") to operate as an institution of higher learning and accredited by a federally recognized accrediting agency. (Am. Compl. ¶¶ 221, 222, 277.) ASA has also, at all relevant times, been certified to participate in the financial aid programs that are authorized by Title IV of the HEA ("**Title IV Programs**"), as well as the financial aid programs authorized by New York State (collectively, the "**Financial Aid Programs**"). (*Id.*)

In order to obtain that certification, ASA had to demonstrate to the regulatory bodies charged with supervising the Financial Aid Programs that ASA satisfied all of the statutory requirements that a school must meet before it will be allowed to receive financial aid as payment for its tuition. Thus, ASA had to demonstrate to the U.S. Secretary of Education

3

("**Secretary**")[1] and to the Higher Education Services Corporation ("**HESC**") (which supervise and enforce the Title IV Programs and New York State financial aid programs respectively) all of the following, *inter alia*: (i) ASA is "legally authorized" to provide secondary education in the state in which it is located, (ii) ASA is accredited by an accrediting agency the Secretary and HESC deem reliable, and (iii) the programs that ASA offers, the disclosures it makes to its students, and the fees that it charges them all satisfy various criteria set forth in the statutes. 20 U.S.C. §§ 1099c; 1092; New York Educ. Law §§ 661, 665-a; 34 C.F.R. §§ 600.5, 600.20(a), 668.43.

ASA must demonstrate that it satisfied these requirements not just at the time of its initial certification but on an ongoing basis as a condition of being allowed to continue its participation in the Financial Aid Programs. 20 U.S.C. §§ 1002, 1094, 1099c; 34 C.F.R. §§ 600.5, 600.20, 668.14. Every year, an independent auditor conducts an audit of ASA's compliance with the applicable Title IV Program requirements, as well as an audit of ASA's financial statements, and submits the results to the Secretary. 20 U.S.C. § 1094(c); 34 C.F.R. § 668.23. If the Secretary determines at any time that a school no longer meets Title IV Program requirements, the Secretary may, *inter alia,* terminate the school's participation in the Title IV Programs. 20 U.S.C. § 1094(c)(3); 34 C.F.R. § 668, Subparts G and H.

One aspect of a school's performance the Secretary closely tracks is the rate at which its students default on repaying their student federal loans, the so-called "cohort default rate" ("**CDR**"). 20 U.S.C. § 1085(m); 34 C.F.R. § 668, Subparts M and N. The DOE calculates the CDR by determining the percentage of students that default on their loans within a two or three year period following the time that their obligation to repay the loan began, using data about

---

[1] The Secretary heads the DOE.

each student's repayment performance that is taken from a federal government database, the "National Student Loan Data System." 20 U.S.C. § 1092b(a)(9).

Under the HEA, a school loses its eligibility to participate in Title IV Programs if its CDR is over 40% for any single fiscal year or over 30% for three consecutive years. 34 C.F.R. §§ 668.187(a)(1) (25% for the Two-Year CDR). (Am. Compl. ¶¶ 253-54.) According to the official website of the DOE (www.ed.gov),[2] ASA's two year CDR for fiscal year 2011 was 5.6% (Am. Compl. ¶ 269 (for 5.6%)) and its three year CDR was 6.3%, as compared with a national average that year for two-year colleges of 10%. (Declaration of Steven Johnson, dated October 31, 2014 ("**Johnson Decl.**") Exs. 1, 2 and 3.)

It is a violation of the HEA for any school, or any representative of a school, to make a "substantial misrepresentation" to a student or a prospective student, a member of the public, or any representative of an accrediting agency, a state agency, or the DOE. 20 U.S.C. § 1094(c)(2) and (3); 34 C.F.R. §§ 668.71-668.74. Under the HEA, a "substantial misrepresentation" is defined as a false, erroneous, or misleading statement that is (i) about the "nature of the [school's] educational program, its financial charges, and the employability of its graduates," and (ii) one that could be, or has been, reasonably relied upon. 20 U.S.C. § 1094(c)(2) and (3); 34 C.F.R. §§ 668.71-668.74. Regulations promulgated by the DOE in conjunction with the HEA specify that "substantial misrepresentations" within the meaning of the HEA include, *inter alia,* those concerning the transferability of a student's credits, the availability of scholarships, and the post-graduate job placement services the school offers. 20 U.S.C. § 1094(c)(2) and (3); 34 C.F.R. §§ 668.71-668.74.

---

[2] This Court is empowered to consider United States governmental publications in deciding Defendants' motion to dismiss. *See, e.g., Rahman v. Schriro*, 13-CV-6095 (CS), 2014 WL 2208050, at *3 (S.D.N.Y. May 27, 2014) ("Because the Court is permitted to take judicial notice of United States government publications, I will consider [a fact sheet on radiation published on the website of the Environmental Protection Agency] in deciding this motion [to dismiss].")

In addition to prohibiting misrepresentations, the HEA also requires all participating schools to make certain disclosures to students/prospective students as a precondition for program eligibility. 20 U.S.C. § 1092; 34 C.F.R. Part 668, Subpart D. Among other things, every school must disclose all of the financial assistance programs offered to its students, the costs associated with going to the school, and the school's procedures for withdrawals and tuition refund. 20 U.S.C. § 1092(a); 34 C.F.R. §§ 668.71-74; 34 C.F.R. § 668.72(o); 34 C.F.R. §§ 668.41-43. The HEA also specifically prohibits schools from "provid[ing] any commission, bonus, or other incentive payment to any student recruiter for securing enrollment or financial aid for the school." 20 U.S.C. § 1094(a)(20); 34 C.F.R. § 668.14(b).

The HEA provides administrative remedies for students who believe their school has made any substantial misrepresentations, failed to disclose something it should have, or done anything else to violate the HEA. The student may file a complaint against the school with the DOE, which, if its investigation warrants, may commence a formal proceeding against the school. If the Secretary determines "after reasonable notice and opportunity for a hearing" that a school or school representative has violated the HEA, it may suspend or terminate the school's Title IV eligibility, levy monetary sanctions, and/or order appropriate restitution. 20 U.S.C. § 1094(c)(3); 34 C.F.R. §§ 668.92-95. Among its other powers, the Secretary can order a school to pay loan obligations that a student incurred based on the school's misrepresentation or failure to disclose something that should have been disclosed. 34 C.F.R. § 668.95. If a student files a complaint against a school with the DOE and is dissatisfied with the DOE's handling of the claim, the student can file a lawsuit against the DOE, whose actions will be reviewed on an arbitrary and capricious standard. 20 U.S.C. 1082(a)(2).

**The Plaintiffs' Allegations Against the Defendants.**  The Plaintiffs are eight individuals who attended ASA for some period of time, three of whom never completed any ASA program and one of whom enrolled in ASA only after his wife had graduated from ASA with an Associate's Degree.  (Am. Compl. ¶¶ 312, 322, 339, 341, 361, 367, 383, 392, 400, 408, 411, 426, 429, 448, 453, 476, 481.)  They sue in their individual capacities and as the self-professed representatives of an alleged class of similarly situated ASA students who they claim were "victimized by a massive scheme to draw millions of dollars of federal and state financial aid to ASA at the students' expense and detriment."  (Am. Compl. ¶ 1.)

The alleged scheme consisted of two components.  First, the Defendants allegedly orchestrated an elaborate conspiracy to trick various regulators into providing various regulatory approvals to ASA so that ASA could fraudulently obtain certification to participate in the Financial Aid Programs.  (Am. Compl. ¶¶ 1, 4-5.)  Then, once ASA was eligible to participate in the Financial Aid Programs, the Defendants allegedly conspired to trick students into coming to ASA so ASA could actually draw down on the financial aid to which it had gained access.  (Am. Compl. ¶¶ 3-6.)

The Defendants allegedly did this by failing to disclose to students certain things about ASA (principally that its regulatory approvals were allegedly fraudulently obtained) and by making various misrepresentations such as "an ASA degree is a fast and affordable route to obtaining a job."  (Am. Compl. ¶¶ 3-6.)  The Plaintiffs claim that this scheme enriched the Defendants in that ASA has received millions of dollars in financial aid as payment for tuition, while ASA "students' only gain … from enrolling in ASA is crippling student loan debt that they are unable to afford and lost eligibility for future federal and state educational loans and grants." (Am. Compl. ¶ 7.)

**The Defendants' Alleged Scheme to Fraudulently Obtain Regulatory**

**Approvals.**  According to the Plaintiffs, the alleged scheme to fraudulently obtain financial aid certification was a multi-step process in which the Defendants, in pursuit of that ultimate goal, defrauded all of the following: the DOE, the NYSED, two federally recognized accrediting agencies, and the HESC.  (Am. Compl. ¶¶ 1, 215-250, 276-296.)  First, knowing that licensing and accreditation were prerequisites for eligibility in the Financial Aid Programs, the Defendants supposedly tricked the NYSED into licensing ASA and tricked two accrediting agencies (both recognized by the DOE) into accrediting ASA, all for the purpose of later using the license and the accreditation to gain access to the Financial Aid Programs.  (Am. Compl. ¶¶ 222, 233-244, 276-296.)  Then, with the purportedly fraudulent license and accreditation in hand, the Defendants supposedly tricked the DOE and the HESC into certifying ASA to participate in the Financial Aid Programs.  (Am. Compl. ¶¶ 223-228, 230-250.)  For each part of this alleged scheme, the alleged fraud consists of the Defendants falsely representing to the regulatory agency at issue that ASA satisfied all of the requirements for the pertinent regulatory approval, when, in fact, according to the Plaintiffs, ASA did not.  *See id.*

**The Defendants' Alleged Scheme to Trick Students.**  Having allegedly obtained permission to participate in the Financial Aid Programs by fraud, the Defendants next allegedly tricked students into attending ASA by making misrepresentations about ASA and failing to disclose things about ASA that should have been disclosed.

The Plaintiffs group their allegations into two categories—misrepresentations/failures to disclose directed to the putative class and misrepresentations/failures to disclose directed at the individual Plaintiffs.  In terms of the former, the Plaintiffs claim that the Defendants misrepresented or failed to disclose information about: (i) ASA's graduation and job placement

rates; (ii) the job placement assistance ASA provides; (iii) guaranteed externships for ASA

students; (iv) the transferability of ASA credits to other schools; (v) the role of ASA credentials

in professional licensure/certification; (vi) the actual cost of ASA's programs, including English

as a Second Language; (vii) financial aid; (viii) charges assessed to a withdrawing student; and

(ix) the legitimacy of ASA's credentials.  (Am. Compl. ¶¶ 99-214.)

In terms of alleged misrepresentations directed at the individual Plaintiffs, Ms. Sanchez,

who acknowledges that she participated in filling out and signing financial aid forms before she

ever started at ASA, claims that an ASA representative told her that her first three semesters

would be "free" when that was not in fact the case.  (Am. Compl. ¶¶ 308, 310, 312.)  Ms.

Dilworth claims that an ASA representative promised she would receive a scholarship that never

materialized and led her to believe that ASA credits were widely transferable to other schools,

whereas Ms. Dilworth claims she was unable to transfer "almost all" of her ASA credits when

she applied to SUNY Buffalo.  (Am. Compl. ¶¶ 330, 332-333, 340, 343.)  A third Plaintiff, Mr.

Forastieri, claims an ASA representative promised that ASA would provide assistance in finding

externships and jobs that did not materialize and that ASA failed to disclose that he would

supposedly need to be a Certified Public Accountant in order to work as an accountant and that

he would need a Bachelor's Degree in order to become a Certified Public Accountant.  (Am.

Compl. ¶¶ 354, 356.)

A fourth Plaintiff, Andre Lashley, claims that the externship ASA placed him in was

inadequate and that an ASA representative told him he would "definitely" be able to find a full

time job after graduation, which Mr. Lashley alleges he has been unable to do.  (Am. Compl. ¶¶

388-390, 394.)  Another Plaintiff, Mr. Miranda (who also acknowledges that he participated in

filling out and signing financial aid forms) claims an ASA representative "led [him] to believe

that he would be obtaining only grants to pay his ASA tuition, and that he would not have to take out any loans." (Am. Compl. ¶¶ 406-407.) A sixth Plaintiff, Ms. Davis, claims an ASA representative told her that ASA had excellent job placement services and that she was guaranteed to find a job, whereas Ms. Davis claims that ASA's job placement assistance was poor and that she has been unable to find a job. (Am. Compl. ¶¶ 423-424, 431-434.)

Another Plaintiff, Rodney Williams, claims that he has received "no help from ASA in obtaining a job," that an ASA representative asked him to sign financial aid forms but "did not offer to allow him to read" the forms, and that ASA "urged him to put his loans in forbearance," rather than to default on his loans. (Am. Compl. ¶ 461.) The eighth Plaintiff, Mary Estevez, alleges that ASA told her that her pay would "immediately increase to $17 per hour" once she earned her degree and that ASA did not provide her "meaningful assistance" in finding a job. (Am. Compl. ¶ 483.)

The Amended Complaint asserts two causes of action. In Count I, the Plaintiffs claim that the Individual Defendants violated the federal RICO statute by virtue of their supposed scheme to defraud the regulators and attract students to ASA. (Am. Compl. ¶¶ 489-528.) In Count II, they claim that ASA and the Individual Defendants violated DTPA § 349 by making the alleged misrepresentations set forth in the Amended Complaint. (Am. Compl. ¶¶ 529-536.)

## ARGUMENT

### I. The Plaintiffs Do Not Have a Private Right of Action for Their Claims.

The Amended Complaint should be dismissed because Plaintiffs' claims are premised entirely on alleged violations of the HEA, and federal law does not permit private litigants to pursue claims based on alleged Title IV violations regardless of whether they are styled as express claims for violation of the HEA or—as here—as violations of some other statutory or

common law duty.[3]  Because the resolution of Plaintiffs' claims would require a court, rather

than the Secretary, to determine ASA's alleged non-compliance with the HEA, these claims are

barred under well-settled federal precedent giving the Secretary the exclusive authority to decide

the questions raised by Plaintiffs' allegations.

Since the HEA was enacted, students have from time to time tried to sue schools

participating in the Financial Aid Programs, such as ASA, for supposed violations of the

regulatory framework in which HEA participants are required to operate.  With one exception—

which was decided before an important Supreme Court decision on the issue—our research

indicates that the Courts, including the Second Circuit, have refused, repeatedly and

unequivocally, to recognize a private right of action based on Title IV violations.  *See e.g., Sanon*

*v. Dep't of Higher Educ.*, 453 F. App'x 28, 30 (2d Cir. 2011) ("HEA does not provide student

borrowers a private right of action to enforce its provisions").[4]

In reaching this conclusion, courts have explained that Congress's enactment of the HEA

is "not tantamount to an expression of legislative intent in favor of equipping students with a

private right of action against … participants in the [financial aid] programs." *McCulloch v.*

*PNC Bank Inc.*, 298 F.3d 1217, 1222 (11th Cir. 2002) (first alteration in original).  In fact, the

---

[3] Indeed the majority of the representations allegedly made to the Secretary and other third parties are direct quotations of the statutory language.  One of the main differences between the Plaintiffs' original complaint and the Amended Complaint is that in the latter, the Plaintiffs removed the citations to the HEA and its regulations that were in the former.  However, the allegations in the two versions of the complaint are essentially the same in that statutory language.  (*See* Am. Compl. ¶¶ 6, 80, 104, 177-78, 185-86, 188, 208-09, 211, 213-15, 219-97, 494-95, 497-98, 502, 506, 516, 519.)

[4] *See also Labickas v. Arkansas State Univ.*, 78 F.3d 333, 334 (8th Cir. 1996) ("We conclude that no private right of action is implied under the HEA for student borrowers."); *Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ("There is no express right of action under the HEA except for suits brought by or against the Secretary of Education."); *L'ggrke v. Benkula*, 966 F.2d 1346, 1348 (10th Cir. 1992) (finding that no provision provides for student enforcement of the HEA or student entitlement to civil damages); *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 16 (D. Mass. 2004) ("In sum, there is no private right of action to enforce the regulations enacted under the HEA."), *aff'd*, No. 05-1057, 2005 WL 5493113 (1st Cir. Aug. 23, 2005); *Halzack Watkins v. Educ. Credit Mgmt. Corp.*, 2:09cv472, 2010 WL 2520653, at *2 (E.D. Va. June 17, 2010) ("The HEA's comprehensive remedial scheme makes the Secretary of Education responsible for enforcing compliance with the HEA and does not create a private right of action to sue any party other than the Secretary of Education").

text of the HEA contains no language supporting a private right of action for students against participants; rather Congress chose to authorize only two types of lawsuits under the HEA: those brought against the DOE and those brought by the DOE. 20 U.S.C. § 1082(a)(2).

Finding no express right for students to pursue private lawsuits against their schools based on alleged Title IV violations, courts have next considered whether Congress may have *implicitly* intended to create such a right. Applying the four factor test that the Supreme Court articulated in *Cort v. Ash* and *Touche Ross & Co. v. Redington*[5]—in which the Supreme Court cautioned the judiciary to exercise restraint in implying private rights of action into statutes and ruled that no such right may *ever* be implied absent affirmative evidence of legislative intent— the Courts have repeatedly found that there is no evidence of even an implicit intent to authorize such lawsuits. *See*, *e.g.*, *McCulloch,* 298 F.3d at 1224 (finding that "the HEA's legislative history is completely silent with respect to the issue of Congress's intent to create" a private right of action).

To the contrary, Courts have found that private lawsuits against HEA participants, if permitted, would so severely undermine the statutory enforcement scheme intended by Congress that they are actually inconsistent with the HEA. *See Parks School of Bus., Inc. v. Symington,* 51 F.3d 1480, 1485 (9th Cir. 1995) quoting *St. Mary of the Plains College v. Higher Educ. Loan Program, Inc.*, 724 F. Supp. 803, 808 (D. Kan. 1989) ("The implication of a private cause of action would seriously undercut, rather than complement, the Secretary's enforcement powers.").

This is because allowing such claims would not only usurp the Secretary's "exclusive" enforcement authority to remedy violations of the HEA and to decide whether a school is in

---

[5] *Cort v. Ash*, 422 U.S. 66, 78 (1975); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979). The factors that *Cort* identifies are whether (1) the plaintiff is one of the class for whose benefit the statute was enacted, (2) there is any evidence that Congress intended to create or deny a private right of action, (3) implying a private right of action would be consistent with the purposes of the legislative scheme, and (4) the cause of action is "one traditionally relegated to state law," so that "it would be inappropriate to infer a cause of action based solely on federal law." *Id.*

material compliance, it could also hinder the Secretary's effectiveness in reaching resolutions

with schools determined to be noncompliant. *N.Y. Inst. of Dietetics, Inc. v. Great Lakes Higher*

*Educ. Corp.*, 94 civ. 4858 (LLS), 1995 WL 562189, at *4 (S.D.N.Y. Sept. 21, 1995). As one

New York federal court has observed:

> [T]here would be little chance of a [Title IV recipient-school] curing or correcting
> its violation or compromising with the Secretary, if the [school] was already
> entangled in litigation on the same matter with an institution and particularly if
> any correction or compromise could possibly constitute an admission of fault in
> any other litigation… Implying a private remedy would [therefore] undercut the
> administrative enforcement mechanism.

*Id.* (citations omitted).

The allowance of private lawsuits would also undermine congressional intent since

Congress created a detailed regulatory structure to resolve student claims administratively, rather

than in Court. When a "statute provides administrative remedies," as the HEA does, "there is

a presumption that Congress did not intend to create a private right of action, but rather

provided precisely the remedies it considered appropriate." *McCulloch,* 298 F.3d at 1222-23.

That Congress provided students with administrative remedies for HEA-related claims (namely,

the right to file a complaint with the DOE and then obtain judicial review of its determination)

therefore strongly indicates that those are the remedies that Congress deemed appropriate and

that it did not also wish to provide students with the right to sue HEA participants in Court for

HEA-related claims. S*ee* 20 U.S.C. § 1094(c)(3); 34 C.F.R. §§ 668.92-95. The same

implication stems from the fact that Congress provided the Secretary with detailed enforcement

mechanisms for remedying violations of the HEA. *See, e.g.,* 20 U.S.C. § 1094; 34 C.F.R. Part

668, Subparts F and G; *Williams v. Nat'l School of Health Tech.*, 836 F. Supp. 273, 279 (E.D. Pa.

1993) ("Where a statute provides an administrative enforcement mechanism, it is presumed that

Congress did not mean to create a private right of action"), *aff'd*, 37 F.3d 1491 (3rd Cir. 1994).

What follows from this rule—*i.e.*, the rule that students may not enforce the HEA through private litigation—is that no matter what legal label a plaintiff gives to her claim, a student cannot sue a participant in the HEA programs where her claim, whether brought expressly under the HEA or under another statute such as RICO or DTPA, would require a court to determine questions of HEA compliance. *N.Y. Inst. of Dietetics, Inc. v. Great Lakes Higher Educ. Corp.*, 94 civ. 4858 (LLS), 1995 WL 562189, at *4 (S.D.N.Y. Sept. 21, 1995) (holding that alleged Title IV "violations cannot form the basis for a RICO claim"). Regardless of whether the student calls the claim one for "violation of the HEA" or calls the claim something else, a student with an HEA-related grievance against an HEA participant must pursue the claim with the DOE. *Id.*[6]

Though the Plaintiffs package their claims as purported violations of RICO and DTPA, the entire complaint is predicated on ASA's alleged conduct as a participant in the Title IV Programs. Indeed, the very heart of the alleged fraudulent scheme is a supposed plan by the Defendants to certify ASA as a Title IV participant even though, according to the Plaintiffs, ASA is not really qualified to participate in Title IV. It is not just the overarching fraud, however, for which proof will hinge on questions of ASA's Title IV compliance: the overlap between the misconduct alleged by Plaintiffs and the duties imposed by the HEA is so complete that, as set forth in the chart attached as Exhibit 4 to the accompanying Johnson Decl., every single one of the allegations of wrongdoing contained in the Amended Complaint would constitute a violation of the HEA had it occurred as the Plaintiffs allege.[7]

---

[6] *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1226 (11th Cir. 2002) ("the Court finds that Plaintiffs' mail and wire fraud claims are nothing more than purported HEA violations pled in RICO terms"); *Anyakora v. Sallie Mae Corp.*, 255 F. App'x 457, 458 (11th Cir. 2007) (affirming dismissal of fraud, racketeering, discrimination, negligence, and due process claims because they were "simply HEA violations pled in other terms").

[7] Or an example of compliance with the HEA. For example, Plaintiffs complain at one point that ASA supposedly engages in wrongdoing by manipulating its CDR to maintain its eligibility for participation in the federal student aid program. (Am. Compl. ¶¶ 251-275.) However, the DOE explicitly advises schools to track its graduates

14

This being the case, this Court is not the proper forum to determine Plaintiffs' claims against the Defendants. To the extent that Plaintiffs wish to pursue a claim based on alleged HEA violations by ASA and its officers, they must do so before the DOE. They are not authorized to proceed with RICO and DTPA claims that undermine the HEA by asking this Court to second guess the Secretary's determination that ASA is both qualified to participate in Title IV Programs and HEA-compliant.[8]

## II.     Plaintiffs' RICO Claim is Inadequately Pled.

Plaintiffs allege that the Individual Defendants violated § 1962(c) of the federal RICO statute by conducting a "Pattern of Racketeering Activity" through an "Enterprise," *i.e.*, ASA.[9] (Am. Compl. ¶¶ 489-528.) To state a RICO claim, Plaintiffs must allege that each Individual Defendant "personally committed or aided and abetted the commission of two predicate acts" within a ten-year period. *4 K & D Corp. v. Concierge Auctions, LLC*, No. 13 Civ. 2527 (JGK), 2014 WL 904451, at *5 (S.D.N.Y. Mar. 10, 2014) (internal quotation marks omitted). The "predicate acts" that Plaintiffs seek to prove consist of numerous alleged acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. (Am. Compl. ¶¶ 514-28.) "Where a plaintiff

---

[8] aggressively and to use the very methods Plaintiffs allege are wrongful, including "skip tracing" and encouraging students to enter into forbearance instead of default. *See* Johnson Decl. Ex. 5 (including relevant portions of U.S. Department of Education, Office of Student Financial Aid guidance to colleges entitled "Ensuring Student Loan Repayment, A National Handbook of Best Practices Based on the Student Loan Repayment Symposium," which may also be accessed on the DOE website, making consideration of those materials permissible as explained in footnote 2 *infra*.).

[8] This analysis likewise shows that there is no private right of action to enforce the statutory and regulatory standards governing New York's Tuition Assistance Program ("**TAP**") recipients. The New York Court of Appeals has already held that there is no private right of action for students under at least some provisions of New York's Education Law (*Uhr ex rel. Uhr v E. Greenbush Cent. Sch. Dist.*, 94 N.Y.2d 32, 38 (1999)), and its standard for determining whether such a right can be implied is nearly identical to the standard used by federal courts. That test requires courts to consider: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Id.* (internal quotation marks omitted) (holding that a private right of action would be inconsistent with the intended statutory scheme of New York's Education Law because, *inter alia*, the statute gave the Commissioner of Education exclusive authority to remedy violations).

[9] ASA is not a defendant on Count I.

in a RICO claim alleges racketeering activity based on the predicate acts of violating the mail or wire fraud statutes, he or she must prove three elements: (1) scheme to defraud, including proof of intent; (2) money or property as object of scheme; (3) use of mails or wires to further the scheme." *4 K & D Corp.*, at *7 (internal quotation marks omitted). The plaintiff must also allege "the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993).

Allegations of mail and wire fraud must comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b) ("**Rule 9(b)**"), and "RICO claims premised on mail or wire fraud must be particularly scrutinized" to eliminate claims that do not meet this standard. *Gross v. Waywell*, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009); *see also Plount v. Am. Home Assurance Co.,* 668 F. Supp. 204, 205 (S.D.N.Y. 1987) (requiring "a strict application of [Rule 9(b)'s] pleading requirements in civil RICO actions"). This is because even "ordinary fraud" is normally "carried out in some form by means of mail or wire communication," and thus "the potential for transforming garden-variety common law actions into federal cases is greater if grounded entirely on these predicates." *Gross*, at 493. It is also because "merely bringing a RICO action against a defendant can unfairly stigmatize [a person] as a 'racketeer,'" even if the lawsuit is entirely meritless. *Plount*, 668 F. Supp. at 205.

As set forth in detail below, Plaintiffs' RICO claim must be dismissed because the Amended Complaint fails to adequately plead any of the predicate acts of mail or wire fraud or to meaningfully connect the Individual Defendants to any fraudulent scheme.[10]

---

[10] Because Plaintiffs fail to state a viable RICO claim, as set forth in this Section of our brief, their claim pursuant to § 1962(d), for conspiracy to commit RICO violations, likewise fails. *Edmonds v. Seavey*, No. 08 CIV.5646(HB), 2009 WL 2949757, at *7 (S.D.N.Y. Sept. 15, 2009) ("where a plaintiff fails to establish a claim for a substantive RICO violation, as Edmonds has failed to do here, any claim for conspiracy to commit that violation must

**A. Plaintiffs Fail to Plead the Requisite Detail For Any of the Supposed Predicate Acts of Fraud.** Rule 9(b) requires a plaintiff alleging fraud to state with particularity "the content, date, and place of any alleged misrepresentations, and the identity of the persons making them." *Mathon v. Feldstein,* 303 F. Supp. 2d 317, 322-23 (E.D.N.Y. 2004). Plaintiffs' allegations fall well below this standard.

To begin, the vast majority of Plaintiffs' allegations fail to identify specific instances of fraud; rather than specify particular occasions when the Individual Defendants supposedly committed fraud, the Plaintiffs claim merely that the Individual Defendants, as a matter of course, "design and disseminate" materials that contain misrepresentations (*e.g.*, Am. Compl. ¶ 100) and "direct and train" unidentified ASA representatives to make misrepresentations (*e.g.*, *id.* ¶ 199) or to "withhold" or "omit" pertinent information (*e.g.*, *id.* ¶¶ 202, 211).

Fraud cannot be premised upon generalized allegations such as these. One who accuses another of fraud must specify the particular instance(s) in which the accused supposedly committed fraud. By contrast, litigants like the Plaintiffs—who sweepingly declare that a fraud has occurred but do not pinpoint particular instance(s) of fraud—do not state a claim for fraud. *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 137 (E.D.N.Y. 2010) (although "the complaint alleges that in 'dozens of instances,' the Newsday defendants misled plaintiff as to the true circulation numbers of the newspaper," it "does not allege who made the alleged misstatements, or when or where the statements were made," meaning these dozens of "alleged predicate acts involving fraud are not pled with sufficient particularity and cannot support plaintiff's RICO

---

necessarily fail as well"), *aff'd,* 379 F. App'x 62 (2d Cir. 2010); *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996) ("Any claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." (internal quotation marks omitted)), *vacated on other grounds,* 525 U.S. 128 (1998); *Allen v. New World Coffee, Inc.*, No. 00 CIV. 2610(AGS), 2002 WL 432685, at *6 (S.D.N.Y. Mar. 19, 2002) ("The dismissal of all of plaintiffs' RICO claims leaves the conspiracy cause of action without a leg to stand on.").

claim"); *see also Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. De-Con Mech. Contractors, Inc.*, 896 F. Supp. 342, 347 (S.D.N.Y. 1995) ("The complaint is conspicuously lacking in stating any particulars as to a specific instance of fraud").

Nor do the Plaintiffs provide any of the descriptive detail about the alleged fraud that Rule 9(b) requires. Almost without exception, the Plaintiffs do not identify the particular written materials that supposedly contain misrepresentations or when or where these unidentified materials were supposedly distributed. (*See* Am. Compl. ¶¶ 100, 103, 108-09, 118, 120, 139, 144, 150, 153-54, 157-58, 213.) Likewise, they do not identify when or where the alleged oral misrepresentations were made or even who the alleged maker of the alleged misrepresentation was. (*See, e.g., id.* ¶¶ 224-29; 232, 250, 524; *see also id.* ¶ 212). In fact, the Plaintiffs do not even allege *the contents* of many of the alleged written and oral misrepresentations in many instances. (*Id.* ¶¶ 115, 117, 161-65, 169).

Without identifying the specific documents that Plaintiffs contend are fraudulent, there is no basis to link any particular defendant to any particular document (much less any particular misrepresentation), and no basis to conclude even that the documents ever existed or were ever distributed. *See Leung v. Law*, 387 F. Supp. 2d 105, 114 (E.D.N.Y. 2005) (fraud claim could not be premised vaguely on entire collection of "documents, each of which encompasses numerous discrete statements" without identifying exactly which statements in which particular documents were fraudulent and why). Likewise, without specifying when or where the alleged oral misrepresentations were made or which specific employee allegedly made them, there is no basis to conclude that any of these statements were ever made and no basis to infer that the speaker was acting at the direction of any of the Individual Defendants.[11] *Warren v. John Wiley & Sons,*

---

[11] Nor does it help that Plaintiffs allege the defendants' various positions as ASA officers. It is well settled in the Second Circuit that "[t]he mere fact that [defendants] were controlling persons" within a corporation "does not link

*Inc.*, 952 F. Supp. 2d 610, 622 (S.D.N.Y. 2013) (dismissing fraud claim where complaint attributed certain statements only to "a photo editor" employed by the defendant because that allegation failed "to specify who made the misrepresentation[s]").[12] Of course, without identifying what the alleged misrepresentation consisted of (as Plaintiffs frequently fail to do regarding both the alleged written misrepresentations and the alleged oral misrepresentations) there is no reason to conclude that any misrepresentation was ever made. *See In re Time Warner,* at 264; *In re Rockefeller,* at 218; *Warren,* at 622.

A fraud claim as bare as the Plaintiffs' does not satisfy Rule 9(b), which requires the Plaintiffs to identify the time, place, content, maker, recipient, and specific circumstances surrounding each alleged fraud. *Gross*, at 493. Lacking as it does any of the basic details required by Rule 9(b), the fraud claim is inadequately pled and must be dismissed.

**B. The Amended Complaint Fails to Allege That Any of the Individual Defendants Acted With Fraudulent Intent.** To allege mail or wire fraud, Plaintiffs must allege facts which raise a "strong inference of fraudulent intent" on the part of each Individual Defendant. *Alki Partners,* at *10. This requires allegations showing either (i) a "motive and opportunity" to defraud or (2) "strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (internal quotation marks omitted). Where there is no motive alleged, "the strength of the

---

them to" fraudulent acts of the company or its employees. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Rather, plaintiffs must allege specific facts permitting an inference that the Individual Defendants personally directed or knew about the fraudulent statements at issue *Id.*; *see also Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7, 9 (2d Cir. 2012); *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 218 (3d Cir. 2002) ("the identification of Goldman Sachs employees involved in the pertinent deals elsewhere in the Second Amended Complaint" was not "sufficiently specific" to connect those defendants to alleged misstatements by other, unnamed Goldman Sachs employees concerning the same disputed deals). Because Plaintiffs fail to allege any such facts, relying instead on the mere fact that each defendant was an ASA officer, there can be no personal liability based on the allegations in the Amended Complaint.

[12] *See also In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 264 (2d Cir. 1993) (dismissing fraud claim where plaintiffs alleged "that some as yet unknown agents of [the corporate defendant] made misleading statements"); *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 218 (3d Cir. 2002) (where the plaintiff fails to identify a speaker with particularity, "there is no indication that the speaker had the authority to speak on behalf of [the defendants] or that the [speaker] was in regular contact with" those defendants so as to render them responsible for the alleged misstatement).

circumstantial allegations must be correspondingly greater."  *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 587 (S.D.N.Y. 2011) (internal quotation marks omitted).

To allege a motive to defraud, a plaintiff must allege that the defendant stood to benefit in a "concrete and personal" manner.  *Dobina v. Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 240-41 (S.D.N.Y. 2012).  Here, the goal of the RICO scheme that plaintiffs allege was to enroll as many students as possible in ASA and to register ASA to participate in state and federal financial aid programs, so that ASA could collect financial aid money to cover portions of the students' tuition.  This supposedly amounted to fraud because Plaintiffs claim ASA did not really qualify to receive state or federal financial aid.  (Am. Compl. ¶¶ 494-96.)

This alleged scheme would yield no "concrete and personal" gain to any of the Individual Defendants, so as to establish a motive to defraud.  With the exception of Alex and Alla Shchegol,[13] the only benefits alleged to have inured to the Individual Defendants were (i) corporate success for ASA and (presumably) (ii) the defendants' regular compensation as officers of ASA.  "Our Circuit has made clear that goals 'possessed by virtually all corporate insiders,'" including a desire to "increase executive compensation" or to foster corporate well-being, are "insufficient to allege motive" to defraud.  *Dobina,* 909 F.Supp.2d at 240-41; *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) ("[t]he motive to maintain the appearance of corporate profitability, or of the success of an investment, will naturally involve benefit to a corporation, but does not 'entail concrete benefits'" for the purpose of alleging motive to defraud).

---

[13] Plaintiffs allege that Mr. and Mrs. Shchegol "personally benefitted" from the supposed fraudulent scheme, because they have an ownership stake in ASA and therefore personally benefit when ASA makes money.  But this is no different than alleging a "generalized profit motive" on their behalf to ensure that ASA is profitable.  *Id.*; *see also Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1130 (2d Cir. 1994) (mere allegation "that the defendant is acting in his or her informed economic self-interest" is not sufficient to establish motive to defraud).

Nor have Plaintiffs alleged "strong circumstantial evidence of conscious misbehavior or recklessness," so as to infer fraudulent intent on that basis. *Alki Partners*, at *10 (internal quotation marks omitted). To do so, the complaint would need to allege facts showing either "deliberate illegal conduct" or that the misrepresentations were "so obvious that the defendant must have been aware of" them. *Id.* This standard is typically met by allegations that a defendant "had access to information contradicting his public statements, or [that] he failed to review information that he had a duty to monitor." *Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452, 469 (S.D.N.Y. 2001). As set forth in Section II(C), immediately *infra*, plaintiffs have not—with one limited exception, addressed at 24-25, *infra*—alleged that any information was ever available that would have informed the Individual Defendants of the falsity of the statements at issue here.

Because Plaintiffs have not alleged facts supporting a strong inference of fraudulent intent on the part of any of the Individual Defendants, the RICO claim must be dismissed.

**C. Plaintiffs Fail to Allege Knowledge of Falsity.** Plaintiffs fail to allege facts to show that the Individual Defendants knew the alleged misrepresentations were false at the time they were made, as would be necessary to allege predicate acts of mail or wire fraud. To enable the court to infer knowledge of falsity, Plaintiffs would need to allege that each of the Individual Defendants had access to specific information that contradicted or cast doubt on the defendants' alleged statements at the time they were made. *United States v. Hathaway*, 798 F.2d 902, 909 (6th Cir. 1986) ("[e]ven if the statements complained of were false, defendants must have known them to be false ... in order to be found guilty" of mail or wire fraud). Conclusory allegations that a defendant knew his or her statements were false are insufficient to satisfy Rule 9(b) and are not entitled to a presumption of truth at the pleading stage. *Alki Partners, L.P. v. Windhorst*,

472 F. App'x 7, 10 (2d Cir. 2012) ("conclusory allegation" that defendant's statement was inaccurate could not be presumed true where no facts were alleged to create an inference of falsity); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1248 (2d Cir. 1987) (to infer knowledge of falsity, plaintiffs "must allege particular facts demonstrating the knowledge of defendants at the time that such statements were false").

Here, for six of the Individual Defendants (Valencia, Mirenberg, Dalton, Alla Shchegol, and John/Jane Does 1 and 2), the Amended Complaint never alleges that they knew or should have known that any given representation was false at the time it was made. At a minimum, the Amended Complaint must therefore be dismissed as against these individuals. *Alki Partners*, at 10.

For the remaining Individual Defendants, other than Shchegol and Willis-Campbell, Plaintiffs allege knowledge of falsity only in the most conclusory fashion, with no supporting factual basis. (*See* Am. Compl. ¶¶ 170 (Schtamler); 85, 159, 168, 170 (Kostyukov, Dumaual and Carthan); 159, 244 (Konkoth); 85 (Faynblut)). Because Plaintiffs identify no "particular facts" that were ever available to these defendants (or even to ASA generally) to contradict the representations that Plaintiffs attribute to them, Plaintiffs' allegations are conclusory and fail to properly allege knowledge of falsity against these defendants as well. *DiVittorio*, at 1248.

Finally, with regard to Shchegol and Willis-Campbell, Plaintiffs allege knowledge of falsity only once in a nonconclusory manner, when they allege, in paragraph 279, that Shchegol and Willis-Campbell submitted one report to an accrediting agency even though the report contained information that an unidentified "employee" believed to be incorrect and supposedly told them was incorrect. (Am. Compl. ¶ 279.) Plaintiffs do not identify the report with any

specificity, as they would need to do in order to meet the requirements of Rule 9(b),[14] nor do they explain the former employee's position with any detail. Allegations attributed to a confidential source are not entitled to any deference absent a detailed description of why someone in the source's position would have gained personal knowledge of the allegations attributed to him. *Feasby v. Industri–Matematik Int'l Corp.,* 99 Civ. 8761(LTS)(JCF), 2003 WL 22976327, at *4 (S.D.N.Y. Dec. 19, 2003) (discounting scienter allegations of "former employees" because "[n]owhere [ ] does the Complaint describe the position held by or work assignments of the former employee ... or any other information that would support an inference that the sources would possess the information attributed to them").[15]

Because Plaintiffs fail to allege with particularity that any of the Individual Defendants other than Alex Shchegol and Willis-Campbell made any statement while knowing it to be false, and only allege that Shchegol and Willis Campbell filed one report with "knowledge" that an unidentified employee disagreed with its contents, there is no permissible inference of fraudulent intent, and the RICO claim must be dismissed.

**D. Plaintiffs Fail to Allege How or Why Many Misrepresentations Were False.** For many of the alleged misrepresentations, Plaintiffs fail to specify the manner in which, or a reasonable basis to conclude that, they were false. This is true for all of the representations allegedly made to the Secretary (Am. Compl. ¶¶ 226-229), for most of the representations

---

[14] *In re Sotheby's Holdings, Inc.,* No. 00 Civ. 1041 (DLC), 2000 WL 1234601, at *7–8 (S.D.N.Y. Aug. 31, 2000) (failure to identify specific documents or information contradicting public statements constitutes "failings" of Complaint to adequately plead recklessness or conscious misbehavior); *Marcus v. Frome*, 275 F. Supp. 2d 496, 502 (S.D.N.Y. 2003) (dismissing fraud claim for failure to allege fraudulent intent where "[t]he Complaint does not allege the defendants had access to any document, does not mention any particular document or information that the defendants had access to, and does not allege that the information contained in those documents, whatever they were, was inconsistent or contradicted the information that formed the basis of the defendants' public statements").

[15] Of course, even if the Court were to credit this allegation, a single instance of alleged misconduct in no way supports Plaintiffs' sweeping conclusion that every single "ASA Officer[] continue[s] to participate in a scheme involving pervasive and ongoing misrepresentations to accrediting agencies ..." (Am. Compl. ¶ 276.) *Leung v. Law*, 387 F. Supp. 2d 105, 115 (E.D.N.Y. 2005) (dismissing RICO claim because "the specificity of [one] lone allegation cannot be imputed to Leung's other claims that the defendants made false statements in other tax returns filed for other tax years and/or on behalf of other corporations").

allegedly made to NYSED[16] (*id.* ¶¶ 233-244; 245-50), and for numerous other alleged

misrepresentations throughout the Amended Complaint. (*See, e.g., Id.* ¶¶ 146, 169, 199.)  For

each of these supposed misstatements, Plaintiffs allege only in the most conclusory fashion, with

no supporting detail or explanation, that the statements made were somehow "false and

misleading."

Conclusory allegations of falsity are insufficient to satisfy Rule 9(b), which requires

detailed fact allegations demonstrating "the manner in which [the defendants' statements] were

alleged to be fraudulent." *Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 420 (S.D.N.Y. 1978).  To

meet this standard, plaintiffs "must do more than say that the statements ... were false and

misleading; they must demonstrate with specificity why and how that is so." *Rombach v. Chang*,

355 F.3d 164, 174 (2d Cir. 2004); *Janbay v. Canadian Solar, Inc.*, 10 CIV. 4430 (RWS), 2012

WL 1080306, at *5 (S.D.N.Y. Mar. 30, 2012) (dismissing fraud claim because plaintiffs "do not

allege any actual statements or specific facts demonstrating that the [transaction] was a

consignment" so as to contradict alleged promise that it was not a consignment); *Alki Partners,*

*L.P. v. Windhorst*, 472 F. App'x 7, 10 (2d Cir. 2012) (dismissing fraud claim because "[t]he

conclusory allegation that Vatas was 'undercapitalized' is not entitled to the assumption of truth,

and Plaintiffs have alleged no facts supporting the conclusion that Vatas was undercapitalized")

(citation omitted).  Because Plaintiffs fail to allege facts showing the manner in which the

---

[16] The only facts that Plaintiffs allege to support an inference that any representations to NYSED were false are the allegations that ASA advertised a Massage Therapy program for approximately one year before NYSED approved it, even though ASA supposedly represented that it did not advertise programs not yet approved by NYSED, and that ASA supposedly refers in promotional materials to its "campus" even though NYSED has not "approved" the use of the term "campus" by ASA.  (Am. Compl. ¶¶ 234(c), 237.)  Even taking these allegations as true, they do not support a conclusion that all of the representations ASA made to NYSED were false.  At best, they support an inference of falsity with regard one discrete representation:  the representation that ASA does not advertise courses that are not yet approved by NYSED.  (*Id.* ¶ 234(c).)  They do not, by contrast, support a sweeping inference of material falsity with regard to the alleged statement that ASA complies with state and federal laws (*Id.* ¶ 234(a)), nor do they cast doubt on ASA's advertised job placement rates.  (*Id.* ¶ 234(b).)  All of the other alleged misrepresentations to NYSED are simply claimed to be false with no explanation of Plaintiffs' basis for concluding that they are false.  (*Id.* ¶¶ 239-44.)

alleged statements were false, none of these representations can support a claim of mail or wire fraud. *Id.*; *Weinstein v. Appelbaum*, 193 F. Supp. 2d 774, 779 (S.D.N.Y. 2002) ("the barebones statement that financial information is untrue, without specifying how or why, is insufficiently specific to state a claim").

Even if Plaintiffs were to explain why they think certain statements were misleading, their allegations are often non-sequiturs that do not give rise to a *reasonable* inference of falsity. *See Jones v. Nat'l Comm'n & Surveillance Networks,* No. 05 Civ. 3461(AKH), 2006 WL 73623, *9 (S.D.N.Y. Jan.12, 2006) (fraud claim cannot stand on "conclusory allegations that are inconsistent with . . . a common sense understanding of [the alleged] facts"). For example, in discussing the job placement rates that ASA advertised to students, Plaintiffs contend that the rates were misleading because they were supposedly calculated "based on only a subset of students who graduate, rather than all students who attend" and because Defendants "improperly count[ed]" or "excluded" students from their calculations (such as students who have obtained only part-time work instead of full-time work or students who work at ASA) for reasons that Plaintiffs think were misleading. (Am. Compl. ¶¶ 111-117.) New York courts have rejected as a matter of law the notion that simply by advertising a job placement rate, a school makes implicit representations as to whether the rates include part time workers or those working in their field of study. *Gomez-Jimenez v. N.Y. Law School*, 103 A.D.3d 13, 18 (1st Dep't 2012) ("the fact that [law school's advertised] employment rates included temporary, part-time, voluntary or non-JD-required/preferred employment" did not render "the employment and salary data disclosed by defendant ... actually false (even if it was incomplete)," and "[t]hus, the fraud claim fails insofar as it is based on" the advertised rates).

A similar non-sequitur is alleged at paragraphs 166, 351 and 379, where Plaintiffs take issue with ASA's representation that "students can earn Associate's Degrees in 16 months," because according to Plaintiffs, some students do not actually complete their degrees in that amount of time. The fact that some students do not earn a degree in sixteen months, of course, in no way means that it is impossible for others to do so, so as to make this alleged statement false.[17]

**E.  Certain of the Statements Plaintiffs Complain About Are Non-Actionable Puffery or Forward Looking Statements.**  Certain of the alleged misrepresentations on which Plaintiffs base their fraud claims are classic examples of non-actionable "puffery," *i.e.*, positive statements about one's own products or services that are "'so vague that [they] can be understood as nothing more than a mere expression of opinion.'" *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007). These include vague promotional statements such as "ASA Education→JOBS" or that ASA has "outstanding job placement services" (Am. Compl. ¶ 102) (*see, e.g., Serbalik v. Gen. Motors Corp.*, 246 A.D.2d 724, 725 (3d Dep't 1998) (salesperson's claim that car would "perform excellently" was puffery and too indefinite to support a fraud claim)), as well as the alleged use of generalized terms like "prestigious" and "valuable" to describe ASA's externship program (Am. Compl. ¶¶ 141 & 144). *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 482 (S.D.N.Y. 2010) (promise that service was "topnotch" was puffery and too unspecific to support fraud claim). They also include several of the vague, optimistic statements allegedly made to the named Plaintiffs about

---

[17] Likewise, while Plaintiffs allege that ASA falsely promises job placement assistance to students, they actually admit that ASA does provide assistance. (Am. Comp. ¶¶ 129, 131, 132-34, 136, 388, 391, 431, 450, 479, 483.) The fact that Plaintiffs take issue with the alleged quality of the assistance given does not render defendants' alleged representation false.

the value and prospects students can generally expect from an ASA education.[18]  (*See*, *e.g.*, Am.

Compl. ¶¶ 319, 389, 404, and 423.)  Plaintiffs may not rely on sales puffery as predicate acts of

fraud to support a RICO claim.

Plaintiffs also rely heavily on allegedly fraudulent statements that cannot constitute acts

of fraud because they amount to nothing more than promises or hopeful expressions about future

expectations.  Representations that are "'merely expressions of future expectations or that are

promissory in nature at the time made and relate to future actions or conduct are insufficient to

support a cause of action ... for fraud.'"  *Beason v. Kleine*, 96 A.D.3d 1611, 1615 (4th Dep't

2012); *Cacchillo v. Insmed, Inc.*, 551 F. App'x 592, 596 (2d Cir. 2014) ("[t]he <u>alleged</u>

misrepresentation cannot be a promise of future conduct, which are not actionable ... under New

York law") (emphasis added).  While forward-looking statements can occasionally be considered

fraudulent if the defendant actually knew, when the promise was made, that it would never be

performed, the mere fact that an expectation did not materialize is not a sufficient basis on which

to infer fraudulent intent.  *Alki Partners, L.P. v. Windhorst*, 472 F. App'x 7, 9 (2d Cir. 2012)

(dismissing fraud claim because mere allegation of nonperformance of a promise was

insufficient to infer that defendants intended, at the time the promise was made, to break it).

Under this law, there can be no fraud claim based on ASA's alleged promise of

"personalized job placement assistance" and "lifetime job placement assistance," because those

allegations are forward-looking and there are no allegations to support an inference that the

Individual Defendants knew them to be false at the time they were made.  (Am. Compl. ¶¶ 121-

---

[18] Plaintiffs also fail to allege knowledge by any of the Individual Defendants that such puffery was false:  the mere fact that three named Plaintiffs are apparently dissatisfied with their externship experiences, for example, or did not obtain a job after attending ASA, does not permit an inference that ASA lied when it called its program "valuable" or "prestigious."  (Am. Compl. ¶¶ 141 & 144.)

22.)[19]  Similarly, a fraud claim cannot be premised on the supposedly broken promises (i) that students would participate in valuable externships (Am. Compl. ¶¶ 141-49), (ii) that ASA credits would likely be transferable to other schools (Am. Compl. 150-52), and (iii) that attending ASA would lead to jobs (*e.g.*, Am. Compl. ¶¶ 100-03, 307, 353, 389, 404, 448, 472), because these are all forward looking statements of ASA's confident expectations, and nothing in the Amended Complaint permits an inference that any of the Individual Defendants directed that these statements be made while simultaneously intending not to fulfill these promises or knowing they would not come true.

**F.  The Alleged Omissions Are Not Adequately Pled.**  "An omission cannot give rise to a claim of mail or wire fraud liability absent a duty to disclose."  *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 302 (S.D.N.Y. 2000).  To survive a motion to dismiss, the complaint must allege facts giving rise to such a duty; it must also "specify the person responsible for the failure to speak, the context of the omission, and the manner in which the omission misled the plaintiff."  *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 349 (S.D.N.Y. 2010) (internal quotation marks omitted).

Plaintiffs allege several supposedly fraudulent omissions, but none of them constitute fraud under these rules.  One major category of alleged omissions, for example, concerns information about federal and state financial aid that the Defendants supposedly routinely withheld from students.  (Am. Compl. ¶¶ 164, 183-200.)  As discussed above, however, the HEA is the only source that can legally give rise to a duty to disclose the financial aid information that

---

[19] Nor is there any reasonable inference that this statement was false. (*See* Section II(D), *supra*, explaining that fraud claim is not stated absent detailed allegations from which one could infer that the alleged misstatement was false). Indeed, Plaintiffs' own allegations contradict any conclusion that the defendants do not regularly provide "job placement assistance" to graduates and students by alleging that ASA does provide assistance.  (Am. Compl. ¶¶ 131-32, 134, 136.)  The fact that Plaintiffs are dissatisfied with the quality of the assistance does not change the fact that Plaintiffs admit that assistance is provided.

Defendants allegedly withheld. 20 U.S.C. § 1092(a); 34 C.F.R. §§ 668.41-43. Because the HEA provides the exclusive duty to disclose this information, these alleged omissions cannot legally serve as predicate acts for Plaintiffs' RICO claim. Section I, *supra*.[20]

Plaintiffs also claim that Defendants withheld information about the rate at which ASA students withdraw from ASA prior to graduating (Am. Compl. ¶ 104), as well as the time and expense it supposedly takes to complete ASA programs. (*Id.* ¶¶ 162-65.) Plaintiffs, however, allege no facts that would give rise to a duty to disclose ASA's student drop-out rate to anyone; nor do they explain what specific "information" is supposedly withheld from students regarding the "cost" of ASA's programs, or even that there is an identifiable "cost" of obtaining a degree that ASA could possibly know and disclose prior to the time that any given student graduates.

**G. There is No RICO Claim in Light of the Above.** In light of the above, Plaintiffs are left with few, if any, viable allegations of mail or wire fraud on which to base a RICO claim against any of the Individual Defendants. Because Plaintiffs cannot allege two predicate acts by each defendant, and because any conceivable allegations of fraud that Plaintiffs might be left with will be immaterial and isolated allegations that are insufficient to show a pattern of racketeering activity, the RICO claim should be dismissed as a matter of law.[21]

---

[20] In addition to the alleged omissions, Plaintiffs also allege that ASA "trains and directs" employees "not to answer questions" about financial aid and "students are prevented from speaking with financial aid representatives until after they have committed to attend ASA." (Am. Compl. ¶¶ 163-64.) A non-specific allegation that ASA declines to answer questions, however, does not state a claim for fraudulent omission against the Individual Defendants. *Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*, 888 F. Supp. 2d 491, 505 (S.D.N.Y. 2012) (where "[t]he complaint alleges no more than that [the defendants] 'refused to disclose information' pertaining to" the disputed transaction, it "does not begin to approach the level of specificity required" by Rule 9(b)), *aff'd*, 514 F. App'x 51 (2d Cir. 2013); *see also Amusement Indus*, at 349 (allegations of fraudulent omission must identify the specific defendant responsible for the alleged omission

[21] If this Court dismisses the Federal RICO claim, it should not exercise pendant jurisdiction over the state law DTPA § 349 claim and should instead dismiss that claim, as well. *See Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.") (internal quotation marks omitted).

**III.    The Amended Complaint Fails To State a Claim Under DTPA § 349.**

**A.  The Conduct at Issue is Not Consumer Oriented.**  To state a claim under DTPA § 349, a complaint must allege, as a threshold matter, that the challenged act or practice was a "consumer transaction," meaning the purchase of goods or services "primarily for a personal, family or household purpose."  *See, e.g., Stutman v. Chem. Bank,* 95 N.Y.2d 24, 29 (2000); *Cruz v. NYNEX Info. Res.,* 263 A.D.2d 285, 289 (1st Dep't 2000) ("In New York law, the term 'consumer' [for purposes of DTPA § 349] is consistently associated with an individual or natural person who purchases goods, services or property primarily for 'personal, family or household purposes.'").  By contrast, the statute does not apply to the purchase of goods or services for a business purpose.  *Id.*; *In re Sterling Foster & Co., Sec. Litig.*, 222 F. Supp. 2d 216, 286 (E.D.N.Y. 2002) (business transactions do not fall within the scope of DTPA § 349); *Jack Kelly Partners LLC v. Zegelstein*, No. 600351/08, 2009 WL 5172482 (Sup. Ct., N.Y. County Nov. 30, 2009) (unpub.) (where lease was marketed for business purposes, the alleged deceptive conduct did not fall under DTPA § 349).

Under this standard, Count II should be dismissed because the Plaintiffs cannot satisfy their threshold burden of demonstrating that their claim is based on "consumer transactions." This is because the Plaintiffs admit that their primary purpose in attending ASA *was* one of a business nature, *i.e.,* to obtain a job or improve their job prospects.[22]  Occupationally-related activities are commonly understood in our vernacular to be "business activities," and a recent

---

[22] *See, e.g.,* Am. Compl. ¶ 303 (Ms. Sanchez's goal in attending ASA was to "pursue a career"), ¶ 329 (Ms. Dilworth sought to obtain "a job in the field of fashion design"), ¶ 350 (Mr. Forastieri attended ASA "to find a higher-paying job in the field of accounting"), ¶ 378 (Mr. Lashley sought training "to help him obtain full-time, permanent, higher-paying employment in the medical administration field"), ¶ 402 (Mr. Miranda "wanted to work for the Transportation Security Agency"), ¶ 419 (Ms. Davis sought a degree to improve her candidacy for a staffing coordinator position), ¶ 445 (Mr. Williams attended ASA to obtain a job), ¶ 468 (Ms. Estevez sought a degree "to pursue a career with a higher starting salary and more opportunities for advancement."); *see generally* Am. Compl. ¶ 52 (ASA "sell[s] career-oriented certificate[s]."); ¶ 1 (ASA is a "career college").

case specifically held that the purchase of educational services for the purpose of obtaining a job is a "business purpose."

*MacDonald v. Thomas M. Cooley Law School*, 724 F. 3d 654, 657 (6th Cir. 2013) involved law school graduates who brought an action against their school under Michigan's Consumer Protection Act ("**MCPA**"), which, like DTPA § 349, applies only to transactions that are primarily for personal, family, or household purposes. *See id.* at 660-61. Dismissing the MCPA claim on a motion to dismiss, the Sixth Circuit explained that activities that one engages in for reasons relating to one's occupation are commonly understood to be "business purposes." *Id.* at 661-62. Thus, because the graduates admitted in their complaint that their primary purpose in attending law school "was to attain full time employment in the legal sector," the Court ruled that the payment of law school tuition was for a business purpose and thus could not be used as the basis for an MCPA claim. *Id.* The same logic applies here, as the Plaintiffs all purchased ASA's educational services for the classic business purpose of obtaining employment. The DTPA claim should be dismissed for this reason alone.

**B. The Amended Complaint is Insufficiently Pled as to the Individual Defendants.** Plaintiffs' DTPA § 349 claim fails to satisfy the pleading requirements of Fed. R. Civ. P. 8 ("**Rule 8**") as to any of the Individual Defendants because every single one of the acts or omissions that Plaintiffs claim to be a DTPA violation is attributed to "ASA Defendants." (*See* Amd. Compl. ¶¶ 529-536). It is widely recognized that group pleading such as this is insufficient as a matter of law because it does not provide fair notice to each defendant of the misconduct in which he or she is alleged to have personally participated. *See, e.g., Medina v. Bauer*, 02 Civ. 8837 (DC), 2004 WL 136636, at *6 (S.D.N.Y. Jan 27, 2004) (dismissing claim because plaintiffs violated Rule 8 "[b]y lumping all the defendants together and failing to

distinguish their conduct"); *Southerland v. N.Y.C. Hous. Auth.*, No. 10-CV-5243 (SLT), 2010 WL 4916935 at *3 (E.D.N.Y. Nov. 23, 2010) (same); *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, 12 CIV. 2837 (KBF), 2012 WL 6082387, at *6-*7 (S.D.N.Y. Dec. 3, 2012) (plaintiffs improperly "lump[ed]" all of the defendants together by attributing the alleged misconduct to the "defendants" collectively), *aff'd*, 530 F. App'x 19 (2d Cir. 2013). For this reason alone, the DTPA claim must be dismissed as to the Individual Defendants.

    **C. Plaintiffs Fail to Allege Acts or Practices That Are Materially Misleading.** To maintain a DTPA § 349 claim, Plaintiffs are also required to allege that the defendants engaged in conduct that is materially misleading. *See, e.g., Stutman v. Chem. Bank,* 95 N.Y.2d 24, 29 (2000). In determining whether conduct is materially misleading within the meaning of DTPA § 349, the New York Court of Appeals applies "an objective definition of deceptive acts and practices" that hinges upon whether the representations are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).

    The Plaintiffs' allegations are largely based on statements of a type that New York courts have held are non-actionable as a matter of law. For example, much of the Amended Complaint is predicated on the notion that it was misleading for ASA to advertise that it is licensed, accredited and qualified to receive financial aid given that, according to the Plaintiffs, ASA fraudulently obtained its license, accreditation, and permission to receive financial aid.[23] (Am. Compl. ¶¶ 1, 211-213, 226, 231, 242, 276-296.) But the statement that ASA is licensed,

---

[23] The DTPA § 349 claim on behalf of Nelson Forastieri must be dismissed for the additional reason that it is barred by the three year statute of limitations applicable to such claims. *See, e.g., Gaidon v. Guardian Life Ins.*, 96 N.Y.2d 201, 210 (2001). A cause of action under GBL § 349 accrues when a plaintiff alleges he was injured by a deceptive practice or act. *Id.* Here, Mr. Forastieri alleges he was injured no later than 2010, by incurring debt in order to attend ASA and by losing eligibility for federal and state student financial aid. Because this action was commenced more than three years after Mr. Forastieri suffered his alleged injury, his claim is barred by the statute of limitations.

accredited and qualified to receive financial aid is indisputably true and it is not a violation of DTPA § 349 to "publish truthful information and allow consumers to make their own assumptions about the nature of the information." *Gomez-Jimenez v. N.Y. Law Sch.*, 103 A.D.3d 13, 16 (2012).

Another major component of the Amended Complaint consists of allegations that the job placement statistics that ASA publishes are misleading. According to the Plaintiffs, ASA's published job placement rates are misleading because they are "based on only a subset of students who graduate" (Am. Compl. ¶ 111), "improperly count… graduates who are in… part-time" employment (*id.* ¶ 115), and "falsely exclude … students whom they deem to have voluntarily left the workforce" (*id.* ¶ 113). These allegations cannot state a claim because New York courts have consistently found that calculating employment rates in this manner is not materially misleading as a matter of law for purposes of DTPA § 349. *See Gomez-Jimenez,* 103 A.D.3d at 16-17 (publication of employment data that did not differentiate between full-time and part-time employment was not materially misleading as a matter of law); *Austin v. Albany Law Sch. of Union Univ.*, 38 Misc. 3d 988, 996-98 (Sup. Ct. Albany County 2013) (publication of aggregated "employment rates" cannot be considered deceptive or misleading to a "reasonable consumer acting reasonably under the circumstances"); *Bevelacqua v. Brooklyn Law Sch.*, 39 Misc. 3d 1216(A) (Sup. Ct. Kings County 2013) ("basic deductive reasoning, informs a reasonable person that the employment statistic includes all employed graduates, not just those who obtained or started full-time legal positions") (internal quotation marks omitted).[24]

Many of the Plaintiffs' remaining allegations of deceptive conduct consist of statements that are nothing other than non-actionable puffery, statements that cannot, as a matter of law, be

---

[24] While the *Gomez-Jiminez* decision contained a comment indicating that a law school's conduct was consumer-oriented, no one contended in that case that the conduct was actually business-oriented.

materially misleading for DTPA § 349 purposes.  For example, the Plaintiffs allege that ASA

"guarantees that the school will place students in externships," state that "attendance will lead

directly to jobs," and characterizes itself as having "outstanding job placement assistance."  (Am.

Compl. ¶¶ 100, 102.)  This is classic puffery, which is not actionable as a general matter and

cannot support a DTPA § 349 claim in particular because statements of this sort would not

mislead a reasonable consumer.  *See Welch v. TD Ameritrade Holding Corp.,* No. 07 CIV 6904,

2009 WL 2356131, at *6, *11 (S.D.N.Y. July 27, 2009) (dismissing DTPA § 349 claim because

brokerage's statements that it provided "outstanding personal service" and "impartial guidance"

were immaterial puffery); *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 643 (S.D.N.Y.

2011) (dismissing DTPA § 349 claim because internet provider's promises of "blazing fast"

speed and "fast, easiest" connection are non-actionable puffery).

     Finally, Plaintiffs rely on allegedly misleading statements and omissions that cannot be

materially misleading because of the public disclosures made on ASA's website.[25]  For example,

the Plaintiffs claim the "ASA Defendants" represented that ASA credits are "automatically"

transferrable and that this was misleading because "the acceptance of ASA credits" is "entirely

within the discretion of the accepting college."  (Am. Compl. ¶ 152.)  In fact, however, ASA

discloses on its website that whether or not a student's ASA credits are transferrable to another

school is "subject to the discretion of the receiving institution."  (Johnson Decl. Ex. 6 at 47.)

Likewise, the Plaintiffs allege that ASA "conceals or distorts" the cost of ASA programs and the

financial consequences of a student's withdrawal (Am. Compl. ¶¶ 160-182, 201-210), but, in

fact, ASA discloses all of the costs of its programs and the financial consequences of a student's

---

[25] The Court may consider information from ASA's website in deciding this motion because Plaintiffs relied on the
website in formulating their complaint.  *See, e.g., Rahman v. Schriro,* 13-CV-6095 (CS), 2014 WL 2208050, at *3
(S.D.N.Y. May 27, 2014) (A document is "integral" to the complaint and may be considered on a motion to dismiss
"where the plaintiff has relied on the terms and effect of the document in drafting the complaint.") (internal
quotation marks omitted).

withdrawal in the ASA College Catalog on ASA's website.  (Johnson Dec., Ex. 6 at 13, 15, 25-26.)[26]

In light of the above, these allegations cannot satisfy the "materially misleading" requirement because ASA disclosed the information it is alleged to have misrepresented or concealed.  *See Derbaremdiker v. Applebee's Int'l, Inc.,* No. 12-CV-01058 (KAM), 2012 WL 4482057, at *4 (E.D.N.Y. Sept. 26, 2012) ("New York courts have dismissed claims for having failed to satisfy [the materially misleading] element where a defendant fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to the plaintiff."), *aff'd,* No. 12-4184-cv, 2013 WL 2158396 (2d Cir. May 21, 2013); *Shovak v. Long Island Commercial Bank*, 50 A.D.3d 1118, 1120 (2d Dep't 2008) (affirming dismissal of DTPA § 349 claim where the allegedly deceptive practice "was fully disclosed to the plaintiff"); *Gomez-Jimenez v. N.Y. Law Sch.*, 36 Misc. 3d 230, 253 (Sup. Ct., N.Y. County 2012) (dismissing DTPA § 349 claim where "plaintiffs had access to publicly available information pertaining to the realities of the legal job market"), *aff'd*, 103 A.D.3d 13 (2012).

**D.  The DTPA Claim Fails Because Plaintiffs Cannot Plead a Legally Cognizable Injury.**  The Plaintiffs seek to recover under DTPA § 349 the amount that each owes either to ASA or in student loans for the cost of their education.  (Am. Compl. ¶ 531).  It is well established, however, that a DTPA § 349 plaintiff who purchases a good or service based on an alleged misrepresentation—and then uses that good or service—cannot claim the purchase price of the good or service as its injury.  *See Small v. Lorillard Tobacco Co.,* 94 N.Y.2d 43, 55-56

---

[26] Plaintiffs allege that ASA misleads students into believing that an ASA degree is a prerequisite to sit for certain professional exams (Am. Compl. ¶¶ 156-158.), by allegedly stating that an ASA associates degree will make a student eligible to sit for such exams.  However, Defendants are never alleged to have claimed that an ASA degree is a prerequisite, and no reasonable consumer would rely on a vague insinuation contained in promotional materials to determine what the requirements are for a professional credential.  *See generally Gomez-Jimenez*, 36 Misc. 3d at 253-54 (statements were not materially misleading where plaintiffs had access to relevant publicly available information).

(1999) (dismissing DTPA § 349 class action because plaintiffs cannot claim purchase price as injury).  This is for an obvious reason—if the plaintiff could enjoy the use of the product and then also recover the purchase price of the product, the plaintiff would enjoy a windfall at the expense of the defendant.  Thus, courts restrict DTPA plaintiffs to recovering only the difference between the true value of the good or service the plaintiff received on the one hand, and, the higher price the plaintiff paid because of the alleged misrepresentation on the other.  *See id.*

Courts have routinely dismissed education-related cases brought pursuant to the DTPA on the grounds that the value of an education is too speculative for a court to assess.  *See, e.g., Mihalakis v. Cabrini Med. Ctr.*, 151 A.D.2d 345, 346 (1st Dep't 1989) (court refused to speculate as to both the true value of existing internship program and an internship program having the characteristics that defendants allegedly misrepresented); *Gomez-Jimenez v. New York Law Sch.*, 36 Misc. 3d 230, 250 (Sup. Ct., N.Y. County, 2012) (dismissing section 349 claim on motion to dismiss, stating that "[t]he starting point of any such measurement [*i.e.*, the value of an education] is beyond this court"), *aff'd,* 103 A.D.3d 13 (2012).

This rule requires dismissal of Plaintiffs' DTPA § 349 claim.  Because the Plaintiffs have partaken in an ASA education, they cannot recover the purchase price of that education under the DTPA.  *See Mihalakis*, 151 A.D.2d at 346.

## CONCLUSION

For all of these reasons, Plaintiffs' Amended Complaint should be dismissed in its

entirety.

Dated: New York, New York
October 31, 2014

JOHNSON GALLAGHER MAGLIERY LLC

By:        s/Steven D. Johnson
       Steven D. Johnson  (SJ7178)
       Peter J. Gallagher   (PG8927)
75 Broad Street – 20th Floor
New York, New York 10004
Tel: (212) 248-2220
sjohnson@jgmlaw.com
pgallagher@jgmlaw.com

*Attorneys for Defendants*