UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

| | |
|---|---|
| KARILIN FRICA SANCHEZ, SHAWANNA | : |
| DILWORTH, NELSON FORASTIERI, ANDRE | : |
| LASHLEY, TOMMY MIRANDA, RENEE DAVIS, | : |
| RODNEY WILLIAMS, and MARY ESTEVEZ, | : |
| individually and on behalf of all others similarly situated, | : |
| | : |
| Plaintiffs, | : |
| | : |
| -against- | : |
| | : |
| ASA COLLEGE, INC., ALEX SHCHEGOL, VICTORIA | : |
| KOSTYUKOV, VICTORIA SHTAMLER, ROBERTO | : |
| DUMAUAL, LESIA WILLIS-CAMPBELL, JOSE | : |
| VALENCIA, SHANTHI KONKOTH, MARK | : |
| MIRENBERG, ALLA SHCHEGOL, ROBERT | : |
| FAYNBLUT, DUWAYNE CARTHAN, ANTHONY | : |
| DALTON, and JOHN and JANE DOES 1 AND 2, | : |
| | : |
| Defendants. | : |

14 Civ. 5006 (JMF) (RLE)

------------------------------------------------------------------------x


# STATEMENT OF INTEREST
## OF THE UNITED STATES OF AMERICA


PREET BHARARA
United States Attorney for the
Southern District of New York,
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2721
Facsimile:  (212) 637-2686
Email: tomoko.onozawa@usdoj.gov

TOMOKO ONOZAWA
Assistant United States Attorney
   – Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

STATUTORY BACKGROUND...................................................................................3

ARGUMENT ...............................................................................................................5

POINT I — THE HIGHER EDUCATION ACT DOES NOT PREEMPT OR DISPLACE PRIVATE FEDERAL AND STATE CAUSES OF ACTION THAT INVOLVE ALLEGATIONS OF FRAUD AND MISREPRESENTATION AGAINST TITLE IV PARTICIPANTS, SUCH AS THOSE AT ISSUE IN THIS CASE.....................5

    1.    The HEA and its Regulations Do Not Preempt or Otherwise Bar State Law Claims that May Separately Constitute Violations of the HEA ...................................................................................................6

    2.    The HEA and its Regulations Do Not Displace Other Federal Law Claims that May Separately Constitute Violations of the HEA ...............12

POINT II — PLAINTIFFS CANNOT ASSERT CLAIMS AGAINST THE DEPARTMENT OF EDUCATION FOR ANY PURPORTED AGENCY FAILURE TO INVESTIGATE THEIR COMPLAINTS ...............................................................18

CONCLUSION...........................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Adler ex rel. v. Bank of America, N.A.*,
    No. 13 Civ. 4866, 2014 WL 3887224 (S.D.N.Y. July 17, 2014) ......................................6

*Agunbiade v. United States*,
    893 F. Supp. 160 (E.D.N.Y. 1995) ..................................................................................20

*Anderson v. Bowen*,
    881 F.2d 1 (2d Cir. 1989) .................................................................................................20

*Arroyo v. Solomon & Solomon PC*,
    No. 99-CV-8302, 2001 WL 1590520 (E.D.N.Y. Nov. 16, 2001)....................................13

*Ayres v. General Motors Corp.*,
    234 F.3d 514 (11th Cir. 2000) .......................................................................................7, 9

*Bond v. United States*,
    134 S. Ct. 2077 (2014)......................................................................................................6

*Britt v. Grocers Supply Co., Inc.*,
    978 F.2d 1441 (5th Cir. 1992) ........................................................................................12

*Capriola v. Brightstar Education Group, Inc.*,
    No. 11-CV-00135, 2013 WL 1499319 (E.D. Cal. Apr. 11, 2013) ..................................17

*Cliff v. Payco General America Credits, Inc.*,
    363 F.3d 1113 (11th Cir. 2004) ......................................................................................11

*College Loan Corp. v. SLM Corp.*,
    396 F.3d 588 (4th Cir. 2005) ..........................................................................................10

*Danielson v. Burnside-Ott Aviation Training Ctr., Inc.*,
    941 F.2d 1220 (D.C. Cir. 1991)....................................................................................7, 9

*De Masi v. Lawshy*,
    No. 13 Civ. 923, 2014 WL 3893852 (S.D.N.Y. Aug. 6, 2014) ......................................19

*Entergy Nuclear Vermont Yankee, LLC v. Shumlin*,
    733 F.3d 393 (2d Cir. 2013)............................................................................................6

*Fifth Avenue Peace Parade Committee v. Hoover*,
    327 F. Supp. 238 (S.D.N.Y. 1971)..................................................................................20

ii

*Gatsiopoulos v. Kaplan Career Institute, ICM Campus,*
    No. 09-2170-CIV, 2011 WL 3489443 (S.D. Fl. Aug. 9, 2011)........................................17

*Goel v. U.S. Department of Justice,*
    No. 03 Civ. 0579, 2003 WL 22047877 (S.D.N.Y. Aug. 29, 2003) .................................19

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991)...........................................................................................................6

*Heckler v. Chaney,*
    470 U.S. 821 (1985)....................................................................................................18, 19

*In re Kaplan Higher Education Corp. qui tam Litigation,*
    626 F. Supp. 2d 1323 (U.S. Jud. Pan. Mult. Lit. 2009) ....................................................17

*Keams v. Tempe Technology Institute,*
    39 F.3d 222 (9th Cir. 1994) ........................................................................................10, 18

*Leveski v. ITT Education Services, Inc.,*
    719 F.3d 818 (7th Cir. 2013) .......................................................................................3, 16

*Marinoff v. Department of Health, Education and Welfare,*
    456 F. Supp. 1120 (S.D.N.Y. 1978), *aff'd,* 595 F.2d 1208, 1208 (2d Cir. 1979) ........20, 21

*McCulloch v. PNC Bank Inc.,*
    298 F.3d 1217 (11th Cir. 2002) ..................................................................................11, 15

*McNamee, Lochner, Titus & Williams, P.C. v. Higher Education Assistance Foundation,*
    50 F.3d 120 (2d Cir. 1995)..................................................................................................3

*McSmith v. HUD,*
    No. 06-10903, 2007 WL 1741886 (E.D. La. June 8, 2007)..............................................20

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation,*
    725 F.3d 65 (2d Cir. 2013)..................................................................................................6

*Morton v. Mancari,*
    417 U.S. 535 (1974)...........................................................................................................12

*Murungi v. Texas Guaranteed,*
    646 F. Supp. 2d 804 (E.D. La. 2009), *aff'd* 402 Fed. Appx. 849 (5th Cir. 2010) .............11

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating District,*
    673 F.3d 84 (2d Cir. 2012)..................................................................................................6

*Norman v. Niagara Mohawk Power Corp.*,
  873 F.2d 634 (2d Cir. 1989)......................................................................7

*N.Y. Institute of Dietetics, Inc. v. Great Lakes Higher Educ. Corp.*,
  No. 94 Civ. 4858, 1995 WL 562189 (S.D.N.Y. Sept. 21, 1995).....................14

*POM Wonderful LLC v. Coca-Cola Co.*,
  134 S. Ct. 2228 (2014).......................................................................12, 13

*Parks School of Business v. Symington*,
  51 F.3d 1480 (9th Cir. 1995) ..................................................................17

*Robinett v. Delgado Comty. College*,
  No. Civ. A. 99-2545, 2000 WL 798407 (E.D. La. June 19, 2000)...................17

*Rodriguez v. McKinney*,
  878 F. Supp. 744 (E.D. Pa. 1995) ............................................................14

*Salazar v. Duncan*,
  No. 14 Civ. 1230, 2015 WL 252078 (S.D.N.Y. Jan. 16, 2015).......................19

*Wage Appeals Board.*,
  941 F.2d at 1223 ....................................................................................9

*West v. Jackson*,
  538 F. Supp. 2d 12 (D.D.C. 2008)............................................................20

*Wilkins v. United Health Grp., Inc.*,
  659 F.3d 295 (3d Cir. 2011).....................................................................16

**Federal Statutes and Regulations**

5 U.S.C. §§ 501 *et seq*...................................................................18, 19, 20

5 U.S.C. § 701 ........................................................................................19

5 U.S.C. § 702 ........................................................................................19

5 U.S.C. § 704 ........................................................................................19

5 U.S.C. § 706 ........................................................................................19

15 U.S.C. §§ 1962 *et seq*...........................................................................11

18 U.S.C. §§ 1961 *et seq*.................................................................... passim

20 U.S.C. §§ 1070-1099c-2 ............................................................................... passim

20 U.S.C. § 1070 .......................................................................................................3

20 U.S.C. § 1078-8 ..................................................................................................15

20 U.S.C. § 1082 ......................................................................................................18

20 U.S.C. § 1094 ...............................................................................................4, 8, 19

28 U.S.C. § 517 ..........................................................................................................1

28 U.S.C. § 1361 ......................................................................................................20

31 U.S.C. § 3729 ......................................................................................................16

31 U.S.C. § 3730 ......................................................................................................16

42 U.S.C. § 1981 ......................................................................................................17

42 U.S.C. § 1983 ......................................................................................................17

49 U.S.C. § 30118 ......................................................................................................9

34 C.F.R. § 600.4 .......................................................................................................8

34 C.F.R. § 668.14 .....................................................................................................4

34 C.F.R. §§ 668.81 *et seq* .........................................................................................4

34 C.F.R. §§ 668.92-95 ..............................................................................................8

**State Statutes**

N.Y. Gen. Bus. Law § 349 ................................................................................. passim

The United States of America (the "Government"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, respectfully submits this Statement of Interest, pursuant to 28 U.S.C. § 517,[1] in support of Plaintiffs' opposition to that part of the Defendants' Motion to Dismiss the First Amended Complaint, which asserts that Title IV of the Higher Education Act, 20 U.S.C. §§ 1070-1099c-2 ("HEA"), compels dismissal of Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), and the New York General Business Law § 349 ("GBL").[2]

## PRELIMINARY STATEMENT

In the instant case, the named Plaintiffs seek to represent a class of current, former and future students of defendant ASA College, Inc. ("ASA"), a privately-owned, for-profit career college in New York, New York.  *See* First Amended Complaint ("Am. Compl.") ¶ 1.  ASA participates in federal student aid programs authorized by Title IV of the HEA, which are administered by the United States Secretary of Education ("Secretary").  *Id.* ¶ 221.  Accordingly, ASA has entered into a contractual arrangement with the Secretary in the form of a program participation agreement and is required to submit annual Title IV compliance audits to the Secretary whereby ASA must affirm compliance with all applicable federal and state statutes and regulations and accrediting agency standards.  *Id.* ¶¶ 223, 225.

The crux of Plaintiffs' allegations is that ASA and its officers conspired to victimize

---

[1] 28 U.S.C. § 517 states that "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

[2] This Statement of Interest expresses the Government's views only with respect to Point I of Defendants' Memorandum of Law in Support of Their Motion to Dismiss the First Amended Complaint ("Defs.' Br.") and Point I of the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Amended Complaint ("Defs.' Reply Br.").  The Government takes no position with respect to the remaining grounds for dismissal set forth in Defendants'

members of the putative class when it induced them to borrow, thus permitting ASA to ultimately receive, millions of dollars in federal and state financial aid by misrepresenting the nature, value, and cost of ASA's certificate and degree programs. *Id.* Specifically, Plaintiffs allege that Defendants made misrepresentations regarding the programs offered and the benefits of enrolling, including misrepresentations about job placement rates and the extent of job placement assistance provided by ASA, *id.* ¶¶ 100-159, 211-214, the costs of enrolling in ASA's programs, *id.* ¶¶ 160-182, and the availability of federal financial aid, *id.* ¶¶ 183-210. Plaintiffs assert that these alleged misrepresentations give rise to causes of action under RICO and the GBL. *Id.* ¶¶ 489-536. The Amended Complaint does not assert a cause of action under the HEA.

As Defendants would have it however, in lieu of commencing a lawsuit against an institution that participates in a Title IV program for any violation of federal or state law, "a student with an HEA-related grievance against a Title IV participating institution must pursue the claim" with the United States Department of Education ("ED"). Defs.' Br. at 14. In essence, Defendants are arguing that the HEA preempts or otherwise displaces all causes of action, whether premised on state or federal law, against a Title IV participating institution based on conduct that touches upon HEA-related issues, or, as Defendants put it, any "HEA-related grievance." *Id.* And, as Defendants acknowledge repeatedly, because the HEA does not provide a private right of action for violations of that statute, the only forum in which one could adjudicate an "HEA-related grievance" is for the Secretary to pursue the matter administratively.

Nothing in the HEA or its legislative history even suggests that the HEA should be read to preempt or displace state or federal laws. Nor is there anything in the HEA or the regulations promulgated thereunder to evince any intent of Congress or ED that the HEA or its regulations

---

motion to dismiss, or to the merits of Plaintiffs' claims.

establish an exclusive administrative review process of student claims brought under state or federal law, even if the conduct alleged may separately constitute an HEA violation. Accordingly, for the reasons set forth below, the Government respectfully requests that the Court hold that the HEA does not preempt or otherwise displace Plaintiffs' RICO and GBL claims.

## STATUTORY BACKGROUND

Congress enacted the Higher Education Act of 1965, Pub. L. No. 89-329, 79 Stat. 1219 (1965), "[t]o strengthen the educational resources of our colleges and universities and to provide financial assistance for students in postsecondary and higher education." *McNamee, Lochner, Titus & Williams, P.C. v. Higher Educ. Assistance Found.*, 50 F.3d 120, 121 (2d Cir. 1995). (quoting Pub. L. No. 89-329, 79 Stat. 1219). Pursuant to that goal, under Title IV of the HEA, Congress established a variety of federal student loan and grant programs, including the Pell Grant Program, the Federal Family Education Loan Program, the Direct Loan Program, and other assistance programs. *See generally* 20 U.S.C. §§ 1070, *et seq.* Through these programs, Congress sought to "provide, through institutions of higher education, educational opportunity grants to assist in making available the benefits of higher education to qualified high school graduates of exceptional financial need, who for lack of financial means of their own or of their families would be unable to obtain such benefits without such aid." Pub. L. No. 89-329, 79 Stat. 1219, § 401(a). The Department of Education now administers over $150 billion in federal financial assistance under Title IV. *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 819 (7th Cir. 2013) (citing data compiled in 2013).

As one appellate court has acknowledged, "the colossal sums of money now administered under Title IV have led to abuses." *Id.* at 820. For this reason, Title IV requires that an educational institution receiving federal subsidies must first enter into a "program participation agreement" ("PPA") with ED, which "condition[s] the initial and continuing eligibility of an

institution to participate in a program upon compliance with" a variety of requirements

enumerated in the statute.  20 U.S.C. § 1094(a); *see also* 34 C.F.R. § 668.14(a) .   The PPA

requires, *inter alia*, a participating school to agree to a host of enumerated administrative and

financial requirements,  *see generally* 34 C.F.R. § 668.14(b)(1)-(31), including an agreement by

the school to act "[a]s a fiduciary responsible for administering Federal funds."  34 C.F.R.

§ 668.14(b)(2).

  The HEA and its implementing regulations also provide a process through which ED may

limit, suspend, or terminate an institution's participation in Title IV programs.  *See, e.g.*, 20

U.S.C. § 1094(c)(1)(F)-(G); 34 C.F.R. §§ 668.81 *et seq.*  More specifically, after reasonable

notice and opportunity for a hearing, if ED has found that a Title IV participant "has engaged

substantial misrepresentation of the nature of its educational program, its financial charges, or

the employability of its graduates," the Secretary "*may* suspend or terminate the eligibility status

for any or all programs under this subchapter . . . until the Secretary finds that such practices

have been corrected."  20 U.S.C. § 1094(c)(3)(A) (emphasis added).  The same section also

provides that the Secretary "*may* impose a civil penalty" for "substantial misrepresentation

regarding its programs, charges, or student outcomes.  20 U.S.C.    § 1094(c)(3)(B).  Although

ED may initiate an enforcement action against a Title IV participant that violates the PPA or

other statutory or regulatory requirements by imposing a civil fine, assessing a liability, or by

limiting, suspending or terminating the school's eligibility to participate in Title IV programs,

there is no administrative procedure by which student or other third-party complaints concerning

violations of these provisions must be filed, reviewed, and adjudicated by the agency.

# ARGUMENT

## POINT I

### THE HIGHER EDUCATION ACT DOES NOT PREEMPT OR DISPLACE PRIVATE FEDERAL AND STATE CAUSES OF ACTION THAT INVOLVE ALLEGATIONS OF FRAUD AND MISREPRESENTATION AGAINST TITLE IV PARTICIPANTS, SUCH AS THOSE AT ISSUE IN THIS CASE

Defendants argue that the Amended Complaint should be dismissed in its entirety "because Plaintiffs' claims are premised entirely on alleged violations of the HEA." Defs.' Br. at 10. Additionally, Defendants argue that, because the violations alleged by Plaintiffs do not give rise to a private right of action under the HEA, the HEA purportedly vests "exclusive" enforcement authority in the Secretary. *Id.* at 11-12. In so doing, Defendants effectively assert that the HEA preempts or otherwise displaces all private federal or state law claims arising out of alleged fraud and misrepresentations made by Title IV participants which "would require a court to determine questions of HEA compliance," or more broadly involve an "HEA-related grievance." *Id.* at 14. These assertions are incorrect.

Defendants cite numerous cases within and outside this district which hold that a plaintiff may not assert a private right of action against an HEA participant institution, *see* Defs.' Br. at 10-13. Although undisputed by the Government, these cases are entirely beside the point.[3] The question presented in this case is not whether Plaintiffs can assert a cause of action *under the HEA* for violations of the HEA and its regulations or for fraud and misrepresentations for which the HEA authorizes ED to take administrative action, but rather whether Plaintiffs can assert *other* federal and state law claims against Defendants based on allegedly fraudulent acts and

---

[3] If anything, the fact that there is neither a private cause of action under the HEA nor an opportunity for a party other than ED to pursue an administrative remedy supports the Government's position. Under Defendants' theory, a student will be left with no ability to seek recourse against a Title IV participating school for fraud or misrepresentation.

misrepresentations that may also violate the HEA and its regulations.  For the reasons set forth below, the HEA and its regulations do not bar Plaintiffs' civil RICO and GBL claims.

   1.   The HEA and its Regulations Do Not Preempt or Otherwise Bar State Law
        Claims that May Separately Constitute Violations of the HEA

   "It has long been settled . . . that [courts] presume federal statutes do not … preempt state law." *Bond v. United States*, 134 S. Ct. 2077, 2088 (2014) (citations omitted).  *See also*, *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013) (noting that "in all preemption cases . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)).  Accordingly, "'it is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides' the 'usual constitutional balance of federal and state powers.'"  *Bond*, 134 S. Ct. at 2088 (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991)).  And, of course, the burden of establishing preemption rests on the defendant.[4]  *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 733 F.3d 393, 414 n.21 (2d Cir. 2013);  *Adler ex rel. v. Bank of Am., N.A.*, No. 13 Civ. 4866, 2014 WL 3887224, at *3 (S.D.N.Y. July 17, 2014) ("Federal preemption is an affirmative defense, so the burden of proof is on the defendant.") (internal quotation marks omitted).

   Defendants concede that they have not sought to meet their burden of establishing that the HEA preempts state laws.  *See* Def. Reply Br. at 8.  Accordingly, they cannot proceed on the

---

[4] The doctrine of federal preemption recognizes three circumstances where state law can be preempted by federal law: (1) express preemption, where Congress has "manifest[ed] its intent to preempt state or local law explicitly, through the express language of a federal statute"; (2) field preemption, "where Congress has manifested an intent to 'occupy the field' in a certain area, as evidenced by 'a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, or where an Act of Congress touches a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject'"; and (3) conflict preemption, where state law actually conflicts with federal law.  *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 95 (2d Cir. 2012) (internal citations

affirmative defense of preemption.  Instead, relying primarily on *Danielson v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220 (D.C. Cir. 1991), *Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000), and *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634  (2d Cir. 1989), Defendants assert that because Congress has "create[d] a regulatory statute that provides for extensive administrative remedies rather than a private right of action, it intends the administrative remedies to be the exclusive ones for violations of the statue."  Def. Reply Br. at 2.  But these cases are entirely distinguishable because the HEA and its regulations do not establish a formal and exclusive procedure by which *students or other aggrieved parties* can seek recourse against Title IV participating schools due to alleged fraud or misrepresentations.

Nothing in the text of the HEA even suggests that Congress expressly or impliedly intended to curb state laws from regulating any alleged fraud committed by HEA participants.  Nor is there such evidence in the legislative history of the HEA or in ED's implementing regulations.  Although Defendants assert, without relevant citation, that a student "must" pursue "a claim based on alleged HEA violations . . . before the DOE," *see* Defs.' Br. at 14, there are no procedures under the HEA or its regulations for pursuing such a claim.  Rather, the statutory and regulatory provisions Defendants cite merely provide that, upon the agency's determination that the school "has engaged in substantial misrepresentations" about its educational program, financial charges, and its graduates' employability (and without regard to whether an audit, a hotline complaint, or some other disclosure triggered the underlying investigation which led to that determination), the Secretary of Education may: suspend or terminate the school's eligibility status until the school has corrected its practices; levy fines; impose certain limitations, requirements and conditions on the school; terminate a school's participation in Title IV and impose other prohibitions; and direct corrective action to remedy the violations.  20 U.S.C. §

---

omitted).

1094(c)(3); 34 C.F.R. §§ 668.92-95.  That provision provides no right for a student to intervene in a case or appeal an adverse ruling.  And, as discussed *infra* at Point II, should the Secretary exercise his or discretion and decline to take such action, an aggrieved student will be left entirely without recourse.[5]

In fact, far from suggesting that state enforcement schemes should not apply to Title IV participating schools, the HEA provides that, as a precondition to qualifying for eligibility under the HEA, an institution *must be subject to enforcement under State authority* – and as further implemented under ED regulations, *subject to enforcement under state law*.  The HEA requires that an institution be "authorized by such State to provide a program of education beyond secondary education." 20 U.S.C. §§ 1001(a)(2), 1002( b)(1)(B).[6]  The regulations provide that, for an eligible institution to be "legally authorized by a State," the State must have "a process to review and appropriately act on complaints concerning the institution *including enforcing applicable State laws* . . . ."  34 C.F.R. § 600.9(a)(1) (emphasis added).   These provisions

---

[5] To the extent that Defendants assert that Plaintiffs have a right to "file a complaint [with ED] for fraud against the defendants," this does not evince Congressional intent to vest exclusive enforcement authority in the agency in a manner that bars claims brought under state law.  *See* Defs.' Reply Br. at 8.  The webpage cited in Defendants' reply brief simply informs "anyone suspecting fraud, waste, or abuse involving" ED funds or programs that he or she can call a hotline number or send a complaint to the ED Office of the Inspector General ("OIG").  *See* http://www2.ed.gov/about/offices/list/oig/hotline.html.  The same webpage also qualifies that any complaints or concerns received "*may* be referred" for further investigation and cautions that "*not all complaints* filed with the OIG will generate an investigation, audit or inspection by the OIG."  *See id.* (emphasis added).  Thus, the existence of an OIG hotline for submitting complaints regarding fraudulent conduct by a school participating in Title IV programs—and that may or may not trigger further investigation at the agency's discretion—is not evidence of a Congressionally-mandated administrative remedy that a student must exhaust to obtain relief against a Title IV participant.

[6] ED regulations apply this requirement to "institutions of higher education," *see* 34 C.F.R. § 600.4; "proprietary institutions of higher education," *id.* at § 600.5; and "postsecondary vocational institutions," *id.* at § 600.6.  Each of these subsections (600.4, 600.5, and 600.6) contain a clause requiring an entity, as a precondition of meeting the definition of that type of entity, to be "*legally authorized* to provide an educational program beyond secondary education

establish that the HEA's administrative regime expressly contemplates state laws in three respects: (1) a school cannot participate in Title IV programs if not authorized by the State to operate as an institution of higher education; (2) State law applies to actions and omission by institutions that participate in the Title IV programs; and (3) the State must have a process for "enforcing applicable State laws."  The HEA and the regulations promulgated thereunder thus assume that State law applies to participating institutions, despite Defendants' contentions to the contrary.

The principal cases relied upon by Defendants are easily distinguished.  In each of these cases, the courts found that the statutes at issued contained extensive administrative remedies that permitted participation by *aggrieved parties*—and not merely the government agency at issue.  For example, in *Danielson*, the D.C. Circuit upheld the dismissal of plaintiff's civil RICO claim because, *inter alia*, section 1.8 of the McNamara-O'Hara Service Contract Act expressly provides that "any interested party" can seek reconsideration of a wage determination by the Labor Department's Administrator of the Wage and Hour Division and appeal the Administrator's decision to the Wage Appeals Board.  941 F.2d at 1223.  In *Ayres*, the 11th Circuit upheld denial of summary judgment of claim brought under state civil RICO statute, because the National Traffic and Motor Vehicle Safety Act "establishes its own extensive array of administrative remedies for a violation of its notification obligations," which included the opportunity for "hearings upon a motion of . . . any interested person at which '[a]ny interested person may make written and oral presentations of information, views, and arguments on whether the manufacturer has reasonably met the notification requirements.'"  234 F.3d at 522 (quoting 49 U.S.C. § 30118(e)).  And in *Norman*, the Second Circuit upheld the dismissal of a civil RICO claim because section 210(b) of the Energy Reorganization Act of 1974 provided an

_____

in the State in which the institution is physically located in accordance with sec. 600.9."

explicit process for whistleblowing nuclear power plant employees who were retaliated against for disclosing safety defects.   873 F.2d at 637.  Under that Act, an aggrieved employee may file a complaint with the Secretary of Labor within 30 days after a violation, the Secretary *must* investigate the claim and either deny it or take remedial action within 90 days, and a party whose claim was denied may seek appellate review in the Court of Appeals, or the Secretary may seek civil enforcement of its order against an employer in federal court.  *Id*. at 635.

Finally, courts have rejected arguments in other contexts that are similar to those raised by Defendants in this case.  For example, in *Keams v. Tempe Tech. Inst.*, 39 F.3d 222 (9th Cir. 1994), student-plaintiffs sued two accrediting agencies for common law negligence and violation of the HEA, asserting that the accreditors negligently accredited and failed to monitor the technical institute that plaintiffs had attended.  *Id.* at 224.  The district court granted defendants' motion to dismiss under Rule 12(b)(6), on the ground that the HEA preempted the negligence claim.  *Id.* at 224.  The Ninth Circuit reversed the dismissal, holding that the HEA "does not expressly preempt state common law tort claims against accreditors," and that the HEA "has not been read, in other contexts, as occupying the field and leaving no room for state law to operate." *Id.* at 225-26.   In so holding, the Ninth Circuit found that allowing state tort claims to be made against the accreditors in this context would promote—rather than frustrate—the structure of the HEA-created guaranteed student loan program.  *Id.* at 226.

In *College Loan Corp. v. SLM Corp.*, 396 F.3d 588 (4th Cir. 2005), plaintiff and defendant were parties to an agreement in which the parties' obligations under the agreement "included compliance with the HEA."  *Id.* at 592.  The Fourth Circuit held that the HEA did not preempt plaintiff's state law claims of breach of contract, breach of fiduciary duty, aiding and abetting the breach, conversion, tortious interference, civil conspiracy, and violation of the Virginia Business Conspiracy Statute against defendant.  *Id.* at 593.  Notably, the Fourth Circuit observed that the "HEA makes no mention of preempting state tort and contract claims," there

10

was nothing to suggest that plaintiff's state law claims would "obstruct the federal scheme," and "[t]he existence of comprehensive federal regulations that fail to occupy the regulatory field do not, by their mere existence, preempt non-conflicting state law." *Id.* at 596, 598.

In another case, *Murungi v. Texas Guaranteed*, 646 F. Supp. 2d 804 (E.D. La. 2009), *aff'd* 402 Fed. Appx. 849 (5th Cir. 2010), plaintiff brought claims against defendants Sallie Mae and State Guaranteed under, *inter alia*, state law claims for fraud, defamation and intentional infliction of emotional distress. *Id.* at 807. The crux of plaintiff's complaint was that defendants "removed plaintiff's [student] loans from deferment status to default status," harassed him, and "spread falsehoods" that caused him reputational injury. *Id.* Defendants moved to dismiss, arguing that plaintiff's state law claims were preempted by the HEA, but the district court disagreed, holding that "[n]either the HEA nor its related regulations expressly preempt state laws on fraud, [intentional infliction of emotional distress] or defamation." *Id.* at 808.

And in *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1127-28 (11th Cir. 2004), a student loan borrower brought a suit to recover under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1962 *et seq.* ("FDCPA") and Florida state law. Following the Eleventh Circuit's decision in *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217 (11th Cir. 2002) the defendant in *Cliff* "concede[d], as it should, that a violation of the HEA can give rise to a cause of action under the FDCPA," a point with which ED agreed. *Id.* at 1127. *See also infra* at 15 (discussing *McCulloch*). With respect to the state law claim, the Eleventh Circuit expressly rejected defendant's argument that permitting a private cause of action under Florida law "equates to an end-run around our prior decision that the HEA does not authorize a private right of action." *Id.* at 1127-28. The Eleventh Circuit similarly rejected defendant's contention that permitting a state law claim "would undermine Congress's [HEA] enforcement scheme"—and, as is the case here, there was simply no evidence put forth in *Cliff* that ED or Congress believed that the HEA and state consumer protection statutes should not work in tandem. *Id.* at 1128. In sum, this Court

11

should consider the merits of Plaintiffs' GBL claim because the HEA and its implementing

regulations do not provide students with any formal administrative procedure for filing

complaints against a school participating in Title IV, the HEA and its regulations do not conflict

with state law, and numerous courts have held that the HEA does not preempt state law claims.

> 2.   The HEA and its Regulations Do Not Displace Other Federal Law Claims that
>       May Separately Constitute Violations of the HEA

Where a case "concerns the alleged preclusion of a cause of action under one federal

statute by the provisions of another federal statute," the "preclusion analysis is not governed by

the Court's complex categorization of the types of pre-emption" because "the state-federal

balance does not frame the inquiry." *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228,

2236 (2014). *See also Britt v. Grocers Supply Co., Inc.*, 978 F.2d 1441, 1446 (5th Cir. 1992)

("Because the root of the preemption doctrine lies in the tension between federal and state

regulation . . . , the analysis of the tension between two conflicting federal statutes is somewhat

different."). Although "principles [of pre-emption] are instructive insofar as they are designed to

assess the interaction of laws that bear on the same subject," in cases such as this one, "analysis

of the statutory text, aided by established principles of interpretation, controls" in questions as to

which federal statute "established the proper framework for decision." *Id.* Moreover, "[t]he

courts are not at liberty to pick and choose among congressional enactments, and when two

statutes are capable of coexistence, it is the duty of the courts, absence a clearly expressed

congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417

U.S. 535, 551 (1974). Applying these principles here, it is clear that the HEA does not displace

a private plaintiff's right to bring a claim under another federal law, even when the basis of the

conduct alleged could also constitute a violation of the HEA.

First, there is simply no evidence that the HEA or its regulations vest the Secretary of

Education with exclusive enforcement authority to remedy conduct that violates federal law,

where that conduct may independently violate the HEA.  Moreover, nothing in the HEA, its

implementing regulations and in the civil RICO statute expressly bar civil RICO claims arising

out of allegedly fraudulent actions that also violate the HEA.  *Cf. POM Wonderful LLC*, 134 S.

Ct. at 2237 (holding that plaintiff's Lanham Act claim was not barred by the Federal Food, Drug

and Cosmetic Act ("FDCA"), because neither the Lanham Act nor the FDCA "in express terms,

forbids or limits Lanham Act claims challenging labels that are regulated by the FDCA.").  To

the extent Congress believed that the application of other federal laws related to fraud could

somehow interfere with the HEA's regulatory scheme, Congress could have promulgated

amendments to resolve that conflict over the 50 years since the HEA was enacted in 1965, *see*

Pub. L. No.  89-329, 79 Stat. 1219 (1965).  *See POM Wonderful LLC*, 134 S. Ct. at 2231 ("If

Congress had concluded, in light of experience, that Lanham Act suits could interfere with the

FDCA, it might well have enacted a provision addressing the issue during these 70  years.").

Second, relevant case law also supports the Government's view that the HEA does not

displace claims for fraud and misrepresentations that are available under federal law.  In *Arroyo*

*v. Solomon & Solomon PC*, No. 99-CV-8302, 2001 WL 1590520, at *8 (E.D.N.Y. Nov. 16,

2001), plaintiff sued defendant, a private collection firm, under the FDCPA, alleging that

defendant made false and misleading statements to collect a debt by demanding payments that

she could not afford, contrary to her rights under the HEA.  *Id.* at *1.  Defendant moved for

summary judgment, arguing that plaintiff was barred from suing under the FDCPA for a

misrepresentation claim that stemmed from an alleged violation of the HEA.  *Id.* at *3.  The

district court denied summary judgment.  *Id.* at *15.  Among other things, the district court held

that it was "not aware of anything in the legislative history of the HEA which might suggest that

Congress intended the HEA's remedial scheme to be so comprehensive as to foreclose plaintiff's

FDCPA suit for misrepresentation of her rights under § 1078-6 of the HEA."  *Id.* at *7.  The

district court further noted that because the HEA "offers no avenue by which plaintiff could

13

vindicate a claim of misrepresentation," the lack of any remedy "compels the conclusion that Congress did not intend the HEA to foreclose her suit under the FDCPA." *Id.   See also Rodriguez v. McKinney*, 878 F. Supp. 744, 751 (E.D. Pa. 1995) (denying summary judgment and holding that defendants' "arguments are without legal merit," where vocational school students sued school owner under civil RICO for making allegedly fraudulent certifications to DOE, and defendants argued, *inter alia*, that "plaintiffs' RICO claim is in fact an impermissible private action under the [HEA]").

Although Defendants cite *N.Y. Inst. of Dietetics, Inc. v. Great Lakes Higher Educ. Corp.*, No. 94 Civ. 4858, 1995 WL 562189 (S.D.N.Y. Sept. 21, 1995) for the proposition that "alleged Title IV 'violations cannot form the basis for a RICO claim,'" *see* Defs.' Br. at 14, *Dietetics* is also distinguishable on its facts.  In that case, plaintiff New York Food, a vocational school, claimed that negligent loan servicing caused high default rates among borrowers who had attended the school, and claimed that defendant – which had assumed servicing responsibility on those loans caused the school to lose its eligibility to participate in a Federal Family Educational Loan Program ("FFELP") program.  Although the school purported to assert claims under civil RICO and state law, this Court found that the complaint was based entirely on an "alleged violation of HEA's due diligence provisions."  *Id.* at *1, *3.  *See also id.* at *4 ("Defendants' representations … were false only if the underlying HEA provisions were violated.").

In granting the motion to dismiss, this Court first held that the HEA did not explicitly or implicitly provide a private right of action to enforce Title IV of the HEA, meaning that the exclusive authority for adjudicating a Title IV violation rested with the Secretary.  *Id.* at *3.  Next, this Court addressed the question of whether this exclusive remedy precluded the plaintiff's federal RICO claim.  As to this question, this Court first noted that RICO makes it unlawful to engage in certain conduct involving a pattern of racketeering activity, such as violations of the mail and wire fraud statutes.  *Id.* at *4.  But, as this Court then noted, the mail

14

and wire fraud statutes do not proscribe any conduct beyond the use of the mails and wires to execute a scheme or artifice to defraud. *Id.* Therefore, in the context of RICO, this Court held that it had to determine whether the underlying fraud is one upon which it could exercise jurisdiction. *Id.* Turning to the allegations before it, this Court then held that because "Defendants' representations … were false only if the underlying HEA provisions were violated" and because only the Secretary could adjudicate a violation of the HEA, the HEA exclusive remedy precluded the RICO claim. *Id.* In this case, however, this Court need not determine whether Plaintiffs have violated the HEA; rather, the only question is whether Plaintiffs have plausibly stated a claim under federal RICO law *irrespective* of whether the conduct may have also violated the HEA.

*McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217 (11th Cir. 2002), which Defendants cite, *see* Defs.' Br. at 14, Defs.' Reply Br. at 6-7, is also distinguishable from this case. In *McCulloch*, plaintiffs were a putative class of parents of high-school students who were rejected by defendants for loans available to parents of dependent students under the PLUS Loan program, 20 U.S.C. § 1078B, and whose dependent children may have qualified both for subsidized loans under the FFEL program, as well as for additional, unsubsidized loans available only to those students whose parents could not obtain PLUS loans. 20 U.S.C. § 1078-8. *McCulloch*, 298 F.3d at 1219. Plaintiffs claimed that defendants violated the HEA when they failed to disclose to the parent-plaintiffs that their dependents, students planning to attend postsecondary institutions, were possibly eligible for additional loans. *Id.* Unlike in this case, plaintiffs asked the Eleventh Circuit to imply a private claim for relief under the HEA, but also brought a separate civil RICO claim. *Id.* at 1220. The Eleventh Circuit denied plaintiffs' request to imply a private claim for relief under the HEA, a point which none of the parties or the Government disputes in this case because of established precedent holding that the HEA does not provide a private right of action. *Id.* at 1221-25; *see supra* at 5. And importantly, the Eleventh

15

Circuit separately considered the merits of plaintiff's civil RICO claim, *id.* at 1225-26, which is precisely what the Government submits this Court should do in this case, because the HEA does not, as matter of law, displace Plaintiffs' civil RICO claim.

Third, adopting Defendants' position would foreclose complementary and alternative federal enforcement mechanisms in the area of higher education, which Congress could not have intended when it enacted the HEA.  One example is the False Claims Act, 31 U.S.C. § 3279 *et seq.* ("FCA"), which makes it unlawful for any person to "knowingly present[], or cause[] to be presented, . . . a false or fraudulent claim for payment or approval" to the government or "knowingly make[], use[], or cause [] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the [g]overnment."  31 U.S.C. § 3729(a)(1)-(2). Although the FCA's primary purpose "is to indemnify the government—through its restitutionary penalty provisions—against losses caused by a defendant's fraud," *United States* ex rel. *Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 304-05 (3d Cir. 2011), a private individual (known as a "relator"), may bring a civil action in the name of the United States pursuant to the FCA's *qui tam* provision and may share a percentage of any recovery.  31 U.S.C. §§ 3730(b) & (d).

As a result, contrary to Defendants' contention that "private lawsuits against HEA participants, if permitted, would so severely undermine the statutory scheme intended by Congress," relators have long pursued FCA claims against Title IV participants for defrauding the Government without undermining "the Secretary[']s detailed enforcement mechanisms for remedying violations of the HEA."  Defs.' Br. at 13.  *See, e.g., Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 840 (7th Cir. 2013) (reversing district dismissal of relator's FCA suit against educational institution, where relator alleged that defendant compensated its recruitment representatives and financial aid administrators in a manner that violated the HEA); *United States* ex rel. *Capriola v. Brightstar Educ. Group, Inc.*, No. 11-CV-00135, 2013 WL 1499319, at

*11 (E.D. Cal. Apr. 11, 2013) (permitting relators, a group of former employees of defendant educational institution, to proceed with FCA suit against the institution for "submitting false claims for federal student financial aid funds to the United States Department of Education" in violation of Title IV of the HEA); *United States* ex rel. *Gatsiopoulos v. Kaplan Career Inst., ICM Campus*, No. 09-2170-CIV, 2011 WL 3489443, at **6-7 (S.D. Fl. Aug. 9, 2011) (permitting relators, former employees of defendant educational institution, to proceed with FCA suit against the institution for allegedly failing to comply with certain HEA regulations relating to completion and job placement rates); *In re Kaplan Higher Educ. Corp. qui tam Litig.*, 626 F. Supp. 2d 1323, 1323-24 (U.S. Jud. Pan. Mult. Lit. 2009) (consolidating multiple FCA actions brought by relators against school and its affiliates for violating Title IV of the HEA).

Courts have also permitted plaintiffs to seek alternative remedies for HEA-related violations under other statutes.  *See Robinett v. Delgado Comty. College*, No. Civ. A. 99-2545, 2000 WL 798407, at *7 (E.D. La. June 19, 2000) (denying plaintiff's attempt to sue defendants under the HEA for disqualifying him for federal financial aid, but permitting plaintiff to pursue due process claims for prospective injunctive relief under 42 U.S.C. § 1983 for the same conduct); *Parks School of Business v. Symington*, 51 F.3d 1480, 1488 (9th Cir. 1995) (reversing district court's dismissal of plaintiff's equal protection claims under 42 U.S.C. § 1981, where plaintiff alleged that defendant terminated its participation in the Arizona student loan guarantee program in a manner that violated the equal protection clause, and district court dismissed the claim on the ground that plaintiff did not have a private cause of action under the HEA).

Finally, in the Government's view, private litigation under applicable state and/or federal law against participants of Title IV funding can serve as an important adjunct to the Department of Education's administrative enforcement tools under the HEA.  When the Ninth Circuit declined to hold that the HEA preempted a common-law negligence claim brought by students

against accrediting agencies whom they alleged had negligently accredited and failed to monitor

a school, the Circuit recognized that:

> [i]t cannot be easy for the Secretary to police her list of accrediting
> agencies.  The schools which are accredited have an interest in
> speaking well of the accreditors, and the accreditors will doubtless
> speak well of themselves . . . . The students have no natural forum
> in the federal procedure.  Their interest in honest and effective
> accreditation may be more effectively vindicated by private tort
> suits in state court.  The Secretary might find these lawsuits useful
> as a device to stimulate examination of particular accrediting
> agencies.  We do not make this policy decision.

*Keams*, 39 F.3d at 227.  Thus, if this Court were to adopt Defendants' position, such a ruling

could effectively nullify consumer protection laws and other private enforcement mechanisms to

combat fraud and misrepresentations in the area of higher education.

## POINT II

### PLAINTIFFS CANNOT ASSERT CLAIMS AGAINST THE DEPARTMENT OF EDUCATION FOR ANY PURPORTED AGENCY FAILURE TO INVESTIGATE THEIR COMPLAINTS

Defendants incorrectly contend that "[i]f a student files a complaint against a school with

the DOE and is dissatisfied with the DOE's handling of the claim, the student can file a lawsuit

against the DOE, whose actions will be reviewed on an arbitrary and capricious standard."

Defs.' Mem. at 6 (citing 20 U.S.C. § 1082(a)(2)).  Defendants' argument is incorrect both as a

matter of law and policy.

The closest analogue to the type of claim Defendants envision here is the Administrative

Procedure Act, 5 U.S.C. § 501 *et seq.* ("APA"), which permits any person "adversely affected or

aggrieved" by agency action, including "a failure to act," to obtain "judicial review thereof," as

long as the action is a "final agency action for which there is no other adequate remedy in a

court" and the agency action was "arbitrary and capricious."  *Heckler v. Chaney*, 470 U.S. 821,

828, 842 (1985) (quoting 5 U.S.C. §§ 702, 704, 706).   The APA, however, does not authorize

claims for monetary relief, 5 U.S.C. § 702, and precludes judicial review where the challenged

"agency action *is committed to agency discretion by law*."  *Id*. § 701(a)(2) (emphasis added).

Plaintiffs would be unable to assert an APA claim for any purported ED failure to

investigate or properly respond to the violations alleged in this case, because the regulations

cited by Defendants, *see* Defs.' Mem. of Law at 6, 15, confer wide discretion to the Secretary to

initiate enforcement proceedings, limit or terminate an institution's participation in Title IV,

and/or assess fines, among other things.  *See* 20 U.S.C. §§ 1094(c)(3)(A) ("the Secretary *may*

suspend or terminate the eligibility status for any or all programs"), 1094(c)(3)(B)(i) ("the

Secretary *may* impose a civil penalty") (emphasis added).  *See, e.g., Heckler*, 470 U.S. at 831

("This Court has recognized on several occasions over many years that an agency's decision not

to prosecute or enforce, whether through civil or criminal process, is a decision generally

committed to an agency's absolute discretion.") (citations omitted); *Salazar v. Duncan*, No. 14

Civ. 1230, 2015 WL 252078, at *11 (S.D.N.Y. Jan. 16, 2015) (dismissing APA claim against the

Department of Education for agency's denial of plaintiffs' request to discharge student loans,

suspend collection efforts, and/or notify all students of availability of false certification

discharges, because the agency's decision not to take the steps demanded by plaintiffs was

"committed to agency discretion"); *De Masi v. Lawshy*, No. 13 Civ. 923, 2014 WL 3893852, at

*5 (S.D.N.Y. Aug. 6, 2014) (dismissing APA claim against federal agencies for failing to act on

plaintiff's complaints regarding bank's alleged mishandling of plaintiff's mortgage, because

plaintiff had "not identified any discrete, nondiscretionary duty the Federal Defendants owed to

him but failed to take"); *Goel v. U.S. Dep't of Justice*, No. 03 Civ. 0579, 2003 WL 22047877, at

*3 (S.D.N.Y. Aug. 29, 2003) (dismissing APA claim alleging Immigration and Naturalization

Service's decision to not take action against entity that allegedly hired illegal aliens, because

plaintiff "cites no authority that mandates that INS owes him a duty to prosecute").   Because

DOE's decision to investigate or act on any student complaints regarding a particular school is

an "agency action . . . committed to agency discretion by law," Plaintiffs would not be able to use the APA to seek judicial review of ED responses to student complaints under the arbitrary and capricious standard.

Nor would Plaintiffs be able to assert a mandamus action to compel the Secretary to investigate a student complaint under 28 U.S.C. § 1361, because Defendants have not shown how ED would owe Plaintiffs a "clear duty" to investigate a student-filed complaint. *See* Defs.' Mem. of Law at 6, 14-15.   Mandamus relief is available "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  Mandamus jurisdiction only arises where: (1) the plaintiff has "a clear right" to the relief sought; (2) the defendant has "a plainly defined and peremptory duty" to perform the act in question; and (3) no other adequate remedy is available. *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989).   However, mandamus is appropriate only to review "ministerial acts which are subject to positive command, plainly described and free from doubt." *Fifth Ave. Peace Parade Comm. v. Hoover*, 327 F. Supp. 238, 242 (S.D.N.Y. 1971).   Courts have held that there is no mandamus jurisdiction to compel an agency or its individual officers to initiate a discretionary civil or criminal investigation, enforcement action, or prosecution. *See, e.g., See West v. Jackson*, 538 F. Supp. 2d 12, 22 (D.D.C. 2008) (holding that HUD's authority to investigate allegations of discrimination is a discretionary duty, not a ministerial one); *McSmith v. HUD*, No. 06-10903, 2007 WL 1741886, at *2 (E.D. La. June 8, 2007) (mandamus relief not available to compel HUD to investigate plaintiff's complaint of alleged housing discrimination, because "the Fair Housing Act does not prescribe the precise manner in which . . . HUD is to conduct its investigations"); *Agunbiade v. United States*, 893 F. Supp. 160, 163 (E.D.N.Y. 1995) (denying petitioner's request for mandamus to compel United States Attorney's Office to initiate investigation into misconduct); *Marinoff v. Dep't of Health, Educ. and Welfare*, 456 F. Supp. 1120, 1121–22 (S.D.N.Y. 1978) (dismissing plaintiff's complaint seeking mandamus to compel

Department of Health, Education and Welfare to investigate whether a certain substance could serve as a cure for cancer), *aff'd*, 595 F.2d 1208, 1208 (2d Cir. 1979).   Accordingly, if this Court were to grant Defendants' motion on the sole ground that the HEA bars Plaintiffs' civil RICO and GBL claims—as well as all other applicable federal or state law claims—Plaintiffs would have no administrative or judicial recourse for fraud and misrepresentations against Title IV participants.

## CONCLUSION

For the foregoing reasons, the Court should decline to dismiss Plaintiffs' Amended Complaint on the ground that the HEA preempts their claims in their entirety.

Dated:   New York, New York
              January 23, 2015

PREET BHARARA
United States Attorney for the
Southern District of New York
*Attorney for the United States of America*

By:      */s/ Tomoko Onozawa*
TOMOKO ONOZAWA
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2721
Facsimile:   (212) 637-2686
E-mail:  tomoko.onozawa@usdoj.gov