USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/05/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                       :

KARILIN FRICA SANCHEZ, et al.,         :

                            :

             Plaintiffs,      :          14-CV-5006 (JMF)

                            :

          -v-               :         <u>OPINION AND ORDER</u>

                            :

ASA COLLEGE, INC., et al.,          :

                            :

             Defendants.     :

                            :

-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Plaintiffs bring this putative class action against ASA College, Inc. ("ASA"), a for-profit corporation that offers certificate and associate's degree programs in career-oriented fields such as business and healthcare, and several of its officers (together, "Defendants"). Plaintiffs, all former ASA students, allege that they were "victimized by a massive scheme to draw millions of dollars of federal and state financial aid to ASA . . . by [Defendants] systematically and fraudulently misrepresenting the nature of ASA's certificate and degree programs." (Am. Compl. (Docket No. 33) ¶ 1). Defendants' predatory and fraudulent practices, they contend, violated the Racketeer Influenced and Corrupt Organizations Act, Title 18, United States Code, Sections 1961-68 ("RICO"), and Section 349 of New York's General Business Law (the "GBL"). Defendants now move to dismiss Plaintiffs' First Amended Complaint (the "Complaint"). For the reasons that follow, Defendants' motion is GRANTED.

## BACKGROUND

      The following facts, taken from the Complaint, are assumed to be true for the purposes of this motion. *See,* e.*g., LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). As noted, ASA is a for-profit corporation that offers certificate and associate's degree

programs in career-oriented fields such as business and healthcare.  (Am. Compl. ¶¶ 17, 52).  It

operates a few campuses in Brooklyn and Manhattan, and one campus in North Miami Beach,

Florida.  (*Id.* ¶ 17).  In order to generate revenue, ASA relies primarily — indeed, almost

exclusively — on federal and state financial aid awarded to incoming students: For example, from

2010 to 2011, over $76 million of ASA's reported $78 million in revenue came from federal and

state loans and need-based grants.  (*Id.* ¶¶ 53-54).  Over seventy percent of ASA's students drop

out within two semesters; accordingly, the school's efforts to recruit and enroll new students are

vital to its financial success.  (*Id.*  ¶ 62).

Plaintiffs allege that, because of the pressure to enroll new students, ASA and its officers

use "a system of marketing, recruiting, and enrollment" that "relies on misrepresentations,

pressure, and a false sense of urgency."  (*Id.* ¶ 78).  The scheme, according to Plaintiffs, begins

with resource allocation.  Specifically, the Complaint alleges that several Defendants — namely,

Alex Shchegol ("Shchegol"), ASA's President and Chief Executive Officer who oversees all of

ASA's operations; Alla Shchegol (together with Shchegol, the "Shchegols"), who oversees ASA's

facilities and information technologies and directs revenues towards the same; Robert Faynblut,

who directs and oversees ASA's personnel activities; Roberto Dumaual, who directs ASA's

recruiting strategies and interacts with government entities on behalf of ASA; Shanthi Konkoth,

who oversees ASA's regulations and compliance; Lesia Willis-Campbell, who directs ASA's

externship and job placement activities; and Jose Valencia and Mark Mirenberg, past or present

directors of ASA's financial operations and allocation of revenues (collectively, the "Resource

Allocation Defendants") — prioritize recruitment above all else by funding marketing and

admissions personnel in lieu of allocating "sufficient resources" to career services or job placement activities.  (*Id.* ¶¶ 63, 67-73, 127-28, 291-92).[1]

Plaintiffs also allege that ASA's recruitment and admissions personnel are trained to use misleading and fraudulent tactics to induce prospective students to enroll in ASA.  Under the direction of various Defendants — namely, Shchegol, Faynblut, and Dumaual, as well as Victoria Kostyukov and Duwayne Carthan, who direct ASA's recruiting and advertising strategies (collectively, the "Recruiting Defendants") — ASA personnel are trained to, among other things, falsely represent to undocumented prospective students that they will receive work permits or green cards upon completing ASA's programs.  (*Id.* ¶¶ 63-65, 67, 73-74, 78, 82-83). Additionally, Shchegol, Kostyukov, Dumaual, Carthan, Valencia, Mirenberg, Willis-Campbell, and Konkoth (together, the "Marketing Defendants") designed and disseminated promotional materials that mislead prospective students as to job placement rates.  (*Id.* ¶¶ 100-10).  For example, ASA marketing materials state that students have an overall 83% job placement rate (*id.* ¶ 105); that 79.1% of ASA graduates are employed within one year of graduation (*id.* ¶ 107); and that ASA's Medical Office Assisting program has a 100% job placement rate (*Id.* ¶ 109).

Those statistics, calculated by Shchegol and Willis-Campbell (collectively, the "Job Placement Defendants"), do not reflect the reality of students' employment prospects upon

---

[1]     There are inconsistencies between the Complaint and Plaintiffs' memorandum of law with respect to which individual Defendants were involved in which aspects of the scheme; for example, Plaintiff's memorandum identifies fewer Defendants as being involved in certain activities related to Defendants' fraudulent scheme.  (*Compare, e.g.*, Pls.' Mem. Law Opp'n Defs.' Mot. To Dismiss First Am. Compl. (Docket No. 55) ("Pls.' Mem.") 3, *with* Am. Compl. ¶¶ 100-02).  Although the Court could arguably deem Plaintiffs to have abandoned those particular claims against the unnamed Defendants, *cf. Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 266-67 (E.D.N.Y. 2012) (treating the plaintiff's failure to adequately respond to the defendants' arguments in her memorandum of law as a withdrawal of that claim), *order amended on reconsideration on other grounds*, 2013 WL 5423800 (E.D.N.Y. Sept. 25, 2013), the Court will consider the facts as set forth in the Complaint.

graduation because they exclude subsets of the ASA student population (for example, those who did not seek job placement assistance from ASA), and include graduates who are in unpaid, part-time, or temporary jobs, as well as jobs for which ASA did nothing to prepare them (such as jobs outside the students' field of study or jobs students held prior to attending ASA).  (*Id.* ¶¶ 111-15). ASA also misrepresents other aspects of the ASA experience in order to attract students, including the extent of job placement assistance offered to ASA students and graduates (*id.*  ¶¶ 118-40); the transferability of ASA credits (*id.* ¶¶ 150-52); and the role successful completion of ASA's programs may have on students' abilities to sit for licensing exams or pursue certain career paths (*id.* ¶¶ 153-59).

According to the Complaint, ASA's misrepresentations go beyond efforts to bolster the school's image.  For example, under the direction of Shchegol, Kostyukov, Dumaual, Mirenberg, Valencia, Faynblut, and Victoria Shtamler, who oversees ASA's financial aid activities (collectively, the "Financial Aid Marketing Officers"), ASA misinforms current and prospective students about the extent and nature of their future debt burden.  Among other things, ASA fails to explain the difference between grants and loans, and fails to translate financial documents into the native languages of non-English speaking students.  (*Id.* ¶¶ 66, 186-200).  In addition, ASA misrepresents the full cost of its programs by, for example, misleading students as to the amount of time it will take to complete a given certificate or associate's degree.  (*Id*. ¶¶ 160-82).

Plaintiffs assert that, under the direction of Shchegol, Kostyukov, Shtamler, Dumaual, Willis-Campbell, Valencia, Mirenberg, Konkoth, Carthan, and John/Jane Does 1 and 2, who oversee ASA's federal and state financial aid transactions (collectively, the "Authorization Defendants"), ASA has also defrauded government agencies responsible for accrediting ASA or rendering its students eligible for state and federal financial aid.  (*Id.* ¶¶ 233-39, 245-50, 278-80, 285-91).  For example, to remain eligible for federal financial aid through Title IV of the Higher

Education Act (the "HEA") — which is administered by the United States Secretary of Education (the "Secretary") — ASA falsely represents that its programs are in compliance with HEA requirements, including, for example, that it provides accurate disclosures to students regarding its programs' quality and cost. (*Id.* ¶¶ 221-24, 226). Additionally, in order to maintain legal authorization to operate in New York — a requirement for Title IV eligibility — and to maintain eligibility for state financial aid funding, ASA and its officers mislead the Commissioner of the New York State Department of Education (the "NYSED") as to the nature and outcomes of ASA's programs. (*Id.* ¶¶ 233-35). For example, ASA falsely represents that every program offered and advertised is approved by the NYSED when, for example, it advertised a Massage Therapy program for over a year before it received the requisite approval. (*Id.* ¶¶ 236-37).

Finally, because an institution may lose its Title IV eligibility if too many students default on their loans within a certain time after graduation, Plaintiffs allege that Shchegol, Shtamler, Faynblut, Carthan, and Anthony Dalton, who oversees ASA's default reduction strategies (collectively, the "Default Manipulation Defendants"), launched an initiative in 2011 to lower the default rates of ASA's students. (*Id.* ¶¶ 75, 251-58). The initiative focused on encouraging former ASA students to enter into forbearance on their loans — postponing payments for a period of time during which the loans would continue to accrue interest. (*Id.* ¶¶ 257-59). According to Plaintiffs, "ASA employees were trained and directed to use fraud, misrepresentation, and concealment to pressure borrowers to enter forbearance . . . whether or not forbearance was in the borrowers' interest," and repeatedly told ASA borrowers that their bank accounts would be frozen and their wages garnished if they did not enter into forbearance. (*Id.* ¶¶ 263, 265). ASA employees were trained not to disclose other repayment options available to students or reveal the possible negative consequences of entering into forbearance. (*Id.* ¶¶ 265-66).

The named Plaintiffs filed this lawsuit on July 3, 2014.  (Docket No. 1).  In substance, they allege that Defendants' fraudulent scheme induced them into enrolling in ASA certificate and associate's degree programs, unaware of the financial costs they were incurring and the poor employment prospects they were facing upon completion of the programs.  (*Id.* ¶¶ 302-488). Several of the named Plaintiffs, for example, were misled as to the true cost of ASA's programs, and many had student loans drawn out in their names without their knowledge.  (*Id.* ¶¶ 308, 317, 336, 343, 449, 465, 474, 488).  Others, such as Nelson Forastieri, were induced to enroll at ASA because they were told that certain ASA programs would render them eligible to work in careers that, in fact, required greater certification.  (*Id.* ¶¶ 353-66).  Even after attending classes at ASA, all the named Plaintiffs remain unemployed, in low-skill jobs, or in positions they had before attending ASA.  (*Id.* ¶¶ 323, 344, 372, 394, 412, 434, 458-59, 484).  They seek, among other relief, an injunction directing Defendants to cease their allegedly unlawful activities and "to cancel all debts purportedly owed to ASA by Named Plaintiffs and Class members, and cease all collection thereof"; actual and/or compensatory damages; and treble damages pursuant to RICO. (*Id.* ¶ 537).

## DISCUSSION

A motion to dismiss pursuant to Rule 12(b)(6) challenges the sufficiency of the allegations in the complaint.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007). To survive such a motion, a complaint must, as a general matter, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U .S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

If the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570.

Here, Plaintiffs bring claims against the ASA Officers for violations of the civil RICO statute and conspiracy to violate the same. Additionally, they allege that all Defendants violated Section 349 of New York's General Business Law ("GBL") by virtue of their misleading advertisements and recruitment activities. Defendants move to dismiss all claims, arguing, among other things, that Plaintiffs fail to allege that any ASA Officers acted with the requisite intent in committing any RICO predicate acts (Defs.' Mem. Law Supp. Mot. To Dismiss First Am. Compl. (Docket No. 50) ("Defs.' Mem.") 19-21); that the Amended Complaint fails to allege any predicate acts of fraud with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure (*id.* at 17-19); and that — should the Court exercise supplemental jurisdiction over Plaintiffs' state-law claim in the event Plaintiffs' RICO claims are dismissed, which Defendants argue it should not — Plaintiffs fail to state a claim under Section 349 of the GBL (*id.* at 30-36). The Court will address each argument in turn.[2]

## A. Substantive Civil RICO

### 1. Applicable Law

Before turning to the specifics of Plaintiffs' claims, it is necessary to explain the principals of law that apply here. Plaintiffs' primary federal claim is for violation of the substantive civil RICO

---

[2]     Defendants also assert that dismissal is warranted because the HEA grants the Secretary "exclusive authority" to remedy any Title IV violations and, thus, that the HEA precludes Plaintiffs' claims based on failures to comply with its provisions. (Defs.' Mem. 10-15). In light of that argument, the Court granted leave to the United States of America to file a statement of interest, which argues that the HEA does not, in fact, preclude private causes of action based on fraud or misrepresentation by Title IV participants such as AXA. (Docket No. 64 at 5-18; *see also* Docket No. 56). Because the Court grants Defendants' motion on other grounds, however, it need not address the issue.

statute, Section 1962(c).  That section makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).  Ultimately, to prevail on their civil RICO claim, Plaintiffs "must show (1) a substantive RICO violation under § 1962; (2) injury to the plaintiff's business or property, and (3) that such injury was by reason of the substantive RICO violation."  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013), *cert. denied sub nom. US Foods, Inc. v. Catholic Healthcare W.*, 134 S. Ct. 1938 (2014) (internal quotation marks omitted).  To satisfy the first prong, "a plaintiff must show that the defendant conducted, or participated in the conduct, of a RICO enterprise's affairs through a pattern of racketeering activity," *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 487 (2d Cir. 2014), with a "pattern of racketeering activity" defined as two predicate acts of racketeering within ten years, 18 U.S.C. § 1961(5).

As defined in RICO, "racketeering activity" encompasses various substantive criminal offenses, including mail fraud in violation of Title 18, United States Code, Section 1341, and wire fraud in violation of Title 18, United States Code, Section 1343.  *See id.* § 1961(1).  "[B]ecause the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants and because the allure of treble damages, attorney's fees, and federal jurisdiction presents a powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of civil RICO, courts have noted that they have an obligation to scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud."  *Holmes v. Parade Place, LLC*, No. 12-CV-6299 (GBD) (DF), 2013 WL 5405541, at *14 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted); *see also Patrizzi v. Bourne in Time, Inc.*, No. 11-CV-2386 (PAE), 2012

WL 4833344, at *3 (S.D.N.Y. Oct. 11, 2012).  Further, because "virtually every ordinary fraud is

carried out in some form by means of mail or wire communication . . . RICO claims premised on

mail or wire fraud must be particularly scrutinized because of the relative ease with which a

plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."

*Gross v. Waywell*, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009) (internal quotation marks omitted).

In this case, Plaintiffs contend that the ASA Officers' "pattern of racketeering activity"

consisted of discrete acts of mail fraud and wire fraud — namely, mailings, e-mails, and phone

calls that either are fraudulent in and of themselves or are in furtherance of Defendants' scheme to

defraud prospective students and government entities.  (Am. Compl. ¶ 514-519).  In order to plead

mail or wire fraud as a predicate act, Plaintiffs' complaint "must show (1) the existence of a

scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the

use of interstate mails or transmission facilities in furtherance of the scheme."  *S.Q.K.F.C., Inc. v.*

*Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996); *see also Serin v. N. Leasing Sys.,*

*Inc.*, No. 06-CV-1625 (JSG), 2009 WL 7823216, at *7 (S.D.N.Y. Dec. 18, 2009).  Moreover,

because the alleged predicate acts sound in fraud, Plaintiffs' allegations must also satisfy the

heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which

demands that "[i]n alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *see Lundy v. Catholic Health*

*Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013).  That, in turn, normally "requires a

plaintiff to adequately specify the statements it claims were false or misleading, give particulars as

to the respect in which the plaintiff contends the statements were fraudulent, state when and where

the statements were made, and identify those responsible for the statements."  *In re Bank of N.Y.*

*Mellon Corp. Forex Transactions Litig.*, 991 F. Supp. 2d 479, 492 (S.D.N.Y. 2014) (internal

quotation marks omitted); *see also BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, No. 14-

CV-121 (JPO), — F. Supp. 3d —, 2014 WL 6077247, at *14 (S.D.N.Y. Nov. 14, 2014). Additionally, Plaintiffs "must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).

In applying Rule 9(b) to civil RICO actions, "courts in the Second Circuit have applied a different standard in cases where a plaintiff claims that mails or wires were simply used in furtherance of a master plan to defraud, but does not allege that the communications themselves contained false or misleading information." *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014) (internal quotation marks omitted). In those situations, "Rule 9(b) requires only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998); *see also Zito v. Leasecomm Corp.*, No. 02-CV-8074 (GEL), 2004 WL 2211650, at *12 (S.D.N.Y. Sept. 30, 2004). That is because mailings in furtherance of a scheme are not technically "'averments of fraud' within the language of Rule 9(b)," and "[o]nce the plaintiff alleges with particularity the circumstances constituting the fraudulent scheme, neither the reputational interests nor the notice function served by Rule 9(b) would be advanced in any material way by insisting that a complaint contain a list of letters or telephone calls." *Spira v. Nick*, 876 F. Supp. 553, 559 (S.D.N.Y. 1995). But "[i]n cases in which a plaintiff claims that specific statements or mailings were themselves fraudulent, *i.e.*, themselves contained false or misleading information, the complaint should specify the fraud involved, identify the parties responsible for the fraud, and where and when the fraud occurred." *In re Sumitomo Copper Litig.*, 995 F. Supp. at 456; *see also World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 498 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).

Further, in pleading a RICO claim against multiple defendants, the "bare minimum of a RICO charge is that a defendant personally committed or aided and abetted the commission of two predicate acts." *McLaughlin v. Anderson*, 962 F.2d 187, 192 (2d Cir. 1992).  In cases involving wire fraud or mail fraud, that standard can be met through allegations that the defendants "committed the predicate acts of mail and wire fraud by directing [the enterprise] and its employees to use the mails and/or wires to further the fraudulent scheme." *Serin*, 2009 WL 7823216, at *8.  Thus, "it is . . . unnecessary for the Plaintiffs to allege that each of the individual Defendants personally committed at least two of the predicate acts of mail and/or wire fraud." *Id.*; *see also Angermier*, 14 F. Supp. 3d at 151.  At a minimum, however, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).  That means that a plaintiff may not rely solely upon defendants' "positions of control" in an enterprise, and may not link individual defendants to fraudulent activities "by stating only that [d]efendants were officers and shareholders" of the organization.  *Productores Asociados De Cafe Rio Claro, C.A. v. Barnett*, No. 98-CV-499 (DAB), 1999 WL 287389, at *3 (S.D.N.Y. May 7, 1999).

Finally, Plaintiffs must also "allege that each defendant had a specific intent to defraud either by devising, participating in, or aiding and abetting the scheme." *Targum v. Citrin Cooperman & Co.*, No. 12-CV- 6909 (SAS), 2013 WL 6087400, at *4 (S.D.N.Y. Nov. 19, 2013) (internal quotation marks omitted); *see also United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) (holding that "fraudulent intent" is "[e]ssential to a scheme to defraud.").  Rule 9(b) allows a plaintiff to allege intent "generally" rather than "with particularity," Fed. R. Civ. P. 9(b), but "'the relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for a license to base claims of fraud on speculation and conclusory allegations,'" *Vaughn v. Air Line*

*Pilots Ass'n, Int'l*, 395 B.R. 520, 548 (E.D.N.Y. 2008) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)), *aff'd*, 604 F.3d 703 (2d Cir. 2010), *and aff'd sub nom. Vaughn v. Air Line Pilots Ass'n*, 377 F. App'x 88 (2d Cir. 2010).  Accordingly, the facts alleged in a complaint based on mail or wire fraud "must give rise to a strong inference of such intent" in one of two ways.  *Greene v. Hanover Direct, Inc.*, No. 06-CV-13308 (NRB), 2007 WL 4224372, at *5 (S.D.N.Y. Nov. 19, 2007), *aff'd*, 326 F. App'x 57 (2d Cir. 2009).  First, a plaintiff may plead facts establishing "a motive to commit fraud and an opportunity to do so."  *Schmidt v. Fleet Bank*, No. 96-CV-5030 (AGS), 1998 WL 47827, at *6 (S.D.N.Y. Feb. 4, 1998).  Second, a plaintiff may identify "circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater."  *Gerstenfeld v. Nitsberg*, 190 F.R.D. 127, 131 (S.D.N.Y. 1999) (internal quotation marks omitted).  To satisfy the "conscious misbehavior" standard, a plaintiff must show "reckless conduct" by the defendants, "which is at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."  *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000) (internal quotation marks omitted); *see also 380544 Canada, Inc. v. Aspen Tech., Inc.*, 633 F. Supp. 2d 15, 29 (S.D.N.Y. 2009).

### 2.  Analysis

Applying those standards here, Plaintiffs' claims against each set of individual Defendants fail as a matter of law.  First, the Complaint fails to allege that various categories of individual Defendants — namely, the Resource Allocation Defendants, the Financial Aid Defendants, the Marketing Defendants, the Recruiting Defendants, the Authorization Defendants, and the Default Manipulation Defendants — possessed the requisite fraudulent intent.  Second, Plaintiffs' claims

against the Job Placement Defendants fall short of Rule 9(b)'s particularity requirements. The Court will discuss each failing in turn.

   a. **Claims Against the Resource Allocation Defendants, the Financial Aid Defendants, the Marketing Defendants, the Recruiting Defendants, the Authorization Defendants, and the Default Manipulation Defendants**

   Plaintiffs argue that they have met their burden of establishing scienter with respect to all Defendants because they have "alleged ample facts from which the only reasonable conclusion is that each Officer, aware of the falsity of ASA's job claims, played an active role in furthering ASA's scheme." (Pls.' Mem. 23). It follows that, despite their extensive allegations about the profit motives behind ASA's scheme (*see, e.g.*, Am. Compl. ¶¶ 52-62), Plaintiffs do not rely on the "motive and opportunity" prong of the test in establishing intent — and perhaps for good reason, as "a generalized profit motive that could be imputed to any company . . . has been consistently rejected as a basis for inferring fraudulent intent" in mail and wire fraud cases. *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 528 (E.D.N.Y. 2011) (internal quotation marks omitted); *see also Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*, No. 07-CV-1471 (RRM) (LB), 2009 WL 928718, at *6 (E.D.N.Y. Mar. 31, 2009). Instead, Plaintiffs rely on the "conscious misbehavior" or "recklessness" prong to establish the requisite fraudulent intent. Plaintiffs fail to make such a showing, however, with respect to most of the categories of Defendants.

   First, Plaintiffs allege that they adequately plead the Resource Allocation Defendants' fraudulent intent with respect to ASA's scheme because those Defendants "know that ASA does not allocate sufficient resources to deliver on the promises that it makes to potential and current students" (Pls.' Mem. 25), yet continue to "invest[] as little of ASA's revenue as possible in student services, such as instruction and career placement assistance, in favor of recruiting, advertising, and profit" (Am. Compl. ¶ 291). Those allegations barely support an inference of

fraudulent conduct, however, and certainly do not support an inference of fraudulent intent.
Specifically, Defendants' choice to allocate funds to some departments over others, absent any
non-conclusory allegations that they were doing so with the knowledge that the decision would
help further ASA's scheme, is better characterized as a business decision than one in furtherance
of fraud.  *See, e.g.*, *Butz v. Bliss*, No. 84-CV-7030 (JMW), 1987 WL 14634, at *23 (S.D.N.Y. July
15, 1987) ("[A] review of [the individual defendants'] 'scheme of fraud' reveals a series of
legitimate business decisions," rather than fraud).  Plaintiffs also contend that the Shchegols have
"repeatedly authorized immense expenditures of ASA assets," ostensibly for the construction and
maintenance of ASA facilities, "while in fact diverting those assets to pay for the purchase,
construction, improvement, and maintenance of properties owned by [the Shchegols] in their
personal capacities."  (Am. Compl. ¶ 292).  Those allegations are certainly more damning than the
allegations against the other Resource Allocation Defendants, but they are limited to one
paragraph and are unsupported by any suggestion that the Shchegols' behavior was in knowing or
intentional furtherance of ASA's scheme to defraud students and the accrediting agencies.
Accordingly, Plaintiffs' claims against the Resource Allocation Defendants must be dismissed.

Plaintiffs fare no better with respect to five other groups of Defendants — the Default
Manipulation Defendants, the Authorization Defendants, the Financial Aid Defendants, the
Marketing Defendants, and the Recruiting Defendants.  First, "[n]ot all statements may form the
basis of a fraud claim."  *Nelson v. Publishers Circulation Fulfillment, Inc.*, No. 11-CV- 1182
(TPG), 2012 WL 760335, at *4 (S.D.N.Y. Mar. 7, 2012).  For example, "[u]nder . . . the federal
mail and wire fraud statutes, opinions and puffery or ultimately unfulfilled promises are not
actionable as fraud."  *Id.* (citing *Lasker v. N.Y. State Elec. & Gas Corp.*, 85 F.3d 55, 59 (2d Cir.
1996) (internal quotation marks omitted).  Thus, a plaintiff may not base a fraud claim on
"subjective claims about products, which cannot be proven either true or false."  *Time Warner*

14

*Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007) (internal quotation marks omitted).  Here, some of Defendants' alleged misrepresentations are of that ilk.  Plaintiffs challenge, for example, the Marketing Defendants' dissemination of materials stating that ASA has "outstanding job placement assistance" (Am. Compl. ¶ 102); their insistence that students must "act now" to enroll in ASA (*id.* ¶ 83); and certain of the Financial Aid Marketing Defendants' representations that students can "'immediately embark on meaningful career [sic]'" upon graduation from ASA (*id.* ¶ 166 (alteration in original)).  Such statements are "opinions about [ASA's] business" as well as "expression[s] of corporate optimism," however, and do not give rise to a fraud claim.  *Hampshire Equity Partners II, L.P. v. Teradyne, Inc.*, No. 04-CV-3318 (LAP), 2005 WL 736217, at *4 n.4 (S.D.N.Y. Mar. 30, 2005) (listing cases), *aff'd*, 159 F. App'x 317 (2d Cir. 2005).  Nor are "exaggeration[s] or overstatement[s] expressed in broad, vague, and commendatory language," which are "considered to be offered and understood as an expression of the seller's opinion only."  *Time Warner Cable, Inc.*, 497 F.3d at 159 (internal quotation marks omitted); *see also Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) (holding that, in the Fair Debt Collection Practices Act ("FDCPA") context, a statement that a consumer must "act now" to pay his debt constitutes puffery, or "rhetoric designed to create a mood rather than to convey concrete information or misinformation." (internal quotation marks omitted)).[3]

---

[3]     Additionally, some of the statements at issue are not even plausibly alleged to be false.  For example, ASA's promotional materials state that "students can earn Associate's Degrees in 16 months — the equivalent of four semesters of study under ASA's accelerated calendar," (Am. Compl. ¶ 166), a statement that Plaintiffs allege is false and misleading because only a third of students earn Associate's Degrees in six semesters (*Id.* ¶ 167).  Nevertheless, that many students do *not* earn degrees in four semesters — or even six semesters — does not render ASA's assertions that students "can" earn degrees in four semesters false or misleading.

Second, to the extent that Plaintiffs identify statements that are provably false or misleading, they fail to marshal any specific facts indicating that the Default Manipulation Defendants, the Authorization Defendants, the Financial Aid Defendants, the Marketing Defendants, and the Recruiting Defendants were aware of the falsity of the representations, and fail to plead any facts regarding when — and how — these Defendants would have been made aware of ASA's overall scheme to defraud of which they are alleged to have acted in furtherance. Instead, Plaintiffs primarily insist that, because of various Defendants' role in ASA's organizational structure, Defendants "know or should know" of the overall scheme and thus knowingly or intentionally acted to further it.  (*See, e.g.*, Pls.' Mem. 23 ("Marketing and Recruiting Defendants know or should know that ASA's claims about job outcomes are false . . . [because] they are aware — because they are integrally involved in ASA's internal operations — that the majority of ASA graduates who are employed do not have jobs in their field of study . . . ."); *id*. at 24 ("[T]he fact that ASA's recruiting and financial aid activities are so closely and improperly intertwined . . . supports an inference that Financial Aid Defendants are aware that ASA perpetrates fraud.").  As noted above, however, Plaintiffs cannot rely solely upon Defendants' "positions of control" in the alleged enterprise to establish knowing or intentional participation in a fraud.  *Barnett*, 1999 WL 287389, at *3; *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) (dismissing a fraud claim because the plaintiff's complaint merely "couple[d] a factual statement with a conclusory allegation of fraudulent intent," and these "conclusory allegations — that Defendants 'knew but concealed' some things, or 'knew or were reckless in not knowing' other things — do not satisfy the requirements of Rule 9(b)").  Plaintiffs also argue that the Default Manipulation Defendants "know that a great number of former ASA students were unemployed or underemployed, and unable to afford the monthly payments on their loans," and that this knowledge supports the inference that "the Officers intentionally participated

16

in ASA's scheme to defraud." (Pls.' Mem. 25). But merely citing Defendants' awareness of ASA's poor job placement outcomes does not give rise to a plausible inference that any Defendants knowingly or intentionally participated in a scheme to defraud ASA students and government entities. *See S.Q.K.F.C.*, 84 F.3d at 633.

    As for the Authorization Defendants, Plaintiffs largely recite Defendants' alleged misrepresentations to federal and state agencies — including representations that ASA "complies with all applicable federal and state statutes and regulations and accrediting agency standards" — and insist in conclusory fashion that Defendants "know or should know" that these representations are false because the representations conflict with ASA's actual practices. (Am. Compl. ¶¶ 225-29, 231-32, 234-40). Plaintiffs also allege that NYSED alerted ASA that some of its practices were noncompliant with regulations and that Shchegol and Konkoth told NYSED that the company was adopting procedures to bring it into compliance, but the Complaint is devoid of any facts to support Plaintiffs' assertion that the two Defendants "knew that their statements to NYSED were false and that the corrective action plans they described would not be implemented by ASA." (*Id.* ¶¶ 242-44). As Plaintiffs have failed to present "at least a minimal factual basis for their allegations of scienter," their claims against these Defendants must also be dismissed. *MLSMK Invs. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 144 (S.D.N.Y. 2010) (internal quotation marks omitted); *see also In re One Commc'ns Corp.*, No. 07-CV-3905 (LTS) (AJP), 2009 WL 857535, at *11 (S.D.N.Y. Mar. 31, 2009) ("The Complaint's mere recitation of [fraudulent] practices, coupled with conclusory allegations that Defendants were aware of these practices by virtue of their positions or their access to unspecified financial documents, without more, fails to state with particularity facts giving rise to a strong inference that any Defendant falsely represented, with scienter, that Lightship was in compliance with relevant laws and

regulations." (internal citation omitted)), *aff'd sub nom. One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75 (2d Cir. 2010).

### b. Claims Against the Job Placement Defendants

By contrast, Plaintiffs do allege sufficient facts to infer fraudulent intent on the part of the Job Placement Defendants.  Specifically, Plaintiffs allege that those Defendants provided reports to the Accrediting Council for Independent Colleges and Schools ("ACICS") — reports required for the school to remain accredited by ACICS — identifying an unemployed student as having a salary of $45,000 and labeling many students as ineligible for placement (and hence excluded from the employment statistics) who were not, in fact, ineligible.  (Am. Compl. ¶¶ 278-79).  When an ASA employee informed Shchegol and Willis-Campbell of the error, they "made no effort to investigate or correct" the misinformation contained in the reports and continued to circulate distorted statistics to ACICS.  (*Id.* ¶ 280).  Those allegations are sufficient to establish fraudulent intent.  *See In re Health Mgmt., Inc. Sec. Litig.*, 970 F. Supp. 192, 204 (E.D.N.Y. 1997) (finding that certain specific allegations of one defendant's knowledge of fraudulent activities, including "letters from outside auditors following the Fiscal 1994 and 1995 audits, alerting him of [potential fraudulent activity], is sufficient to plead a 'strong inference' of [the defendant's] conscious misbehavior and recklessness").[4]

---

[4]    Relying on cases applying the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78(u)-4, Defendants contend that Plaintiffs cannot rely on an unnamed employee's knowledge to establish scienter.  (Reply Mem. Law Further Supp. Defs.' Mot. To Dismiss Am. Compl. (Docket No. 59 ("Defs.' Reply Mem.") 12-13).  The PSLRA, however, requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  By contrast, Rule 9(b) requires only a "minimal factual basis" for scienter, and allows a plaintiff to aver intent generally.  *MLSMK Invs. Co.*, 737 F. Supp. 2d at 144 (internal quotation marks omitted).  Accordingly, there is no merit to Defendants' contention.

Nevertheless, Plaintiffs' claims against the Job Placement Defendants fail for a separate reason: They fail to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). As noted above, Plaintiffs' claims against the Job Placement Defendants are premised on Defendants' falsification of ASA's job placement rates — rates that were published in largely unspecified ASA "marketing and promotional materials" and "regular reports" to ACICS. (Am. Compl. ¶¶ 105-15, 277-80). As those materials are alleged to be fraudulent in and of themselves, rather than merely in furtherance of ASA's overall fraudulent scheme, Rule 9(b) requires that Plaintiffs' allegations of fraud be pleaded with particularity. *See In re Sumitomo Copper Litig.*, 995 F. Supp. at 456. The Complaint fails to satisfy that standard. To be sure, it does include a few examples of various marketing materials containing the inflated statistics (*id.* ¶¶ 105-09), but it includes virtually no details as to when and where those materials were disseminated. More glaringly, the Complaint includes *no* specific information about when the "regular reports" — reports that, as indicated above, the Job Placement Defendants allegedly knew were fraudulent — were sent to ACICS, meaning that they could have been sent at any point before 2011, when ASA ceased to be accredited by ACICS. (*Id.* ¶¶ 277-80). Those allegations do not satisfy Rule 9(b)'s heightened pleading standard. *See, e.g.*, *United States v. All Right, Title & Interest in Real Prop. & Appurtenances Thereto Known as 35-37 E. Broadway, N.Y., N.Y. 10002 Listed as Block 280, Lot 42 in Office of Cnty. Clerk & Register of N.Y. Cnty., N.Y.*, No. 12-CV-4034 (HB), 2013 WL 4006073, at *6 (S.D.N.Y. Aug. 6, 2013) (holding that allegations that fraudulent representations occurred "during or about the summer of 2008" were insufficient under Rule 9(b)); *see also DeFazio v. Wallis*, 500 F. Supp. 2d 197, 206 (E.D.N.Y. 2007) (finding the plaintiff's claims of fraudulent mailings failed under Rule 9(b) because they "do not explain what the [fraudulent] forms are; what information they contained; when the documents were mailed; or who sent them").

Plaintiffs insist that the "existence of an overall scheme to defraud, and each RICO defendant's participation, is all that Plaintiffs must plead with particularity under Rule 9(b)." (Pls.' Mem. 16).  Were Plaintiffs alleging "that the mails or wires were used in furtherance of a master plan to defraud, as opposed to [alleging that] the mailings themselves are . . . fraudulent," *USA Certified Merchants, LLC v. Koebel*, 262 F. Supp. 2d 319, 332 (S.D.N.Y. 2003), their argument might well have merit.  *See, e.g.*, *Aiu Ins. Co. v. Olmecs Med. Supply, Inc.,* No. 04-CV-2934 (ERK), 2005 WL 3710370, at *11 (E.D.N.Y. Feb. 22, 2005).  And indeed, where a plaintiff has already pleaded predicate acts against individual defendants based on detailed allegations of their involvement in the scheme or their use of the mails or wires to further the scheme, some courts have found a failure to plead individual communications with particularity does not warrant wholesale dismissal of a plaintiff's claims.  *See, e.g.*, *Beth Israel Med. Ctr. v. Smith*, 576 F. Supp. 1061, 1071 (S.D.N.Y. 1983) ("In view of the complaint's detailed description of the defendants' scheme . . . the failure to describe particular letters or telephone calls is not fatal to the complaint.").  Here, however, Plaintiffs' allegations of mail and wire fraud against the Job Placement Defendants rest entirely on communications that are themselves alleged to have been fraudulent.  (*See* Am. Compl. ¶ 519(e), (j)).  In such circumstances, "Rule 9(b) requires that the complaint allege the essential 'when, what, why and to whom' — when and to whom the statement was made, what it contained, and why it was false or misleading — with particularity." *Spira*, 876 F. Supp. at 559.  Were it otherwise, the Job Placement Defendants would have to craft a responsive pleading addressing an indefinite number of unspecified fraudulent documents — documents that, without any time frame, could number in the thousands.  *Cf. U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 258 (S.D.N.Y. 2014) ("Ultimately, whether a complaint satisfies Rule 9(b) depends upon," among other factors, "the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to

prepare a responsive pleading." (internal quotation marks omitted)).  As Plaintiffs fail to provide

the requisite details regarding the fraudulent documents produced by the Job Placement

Defendants and those documents form the bedrock of Plaintiffs' claims against those Defendants,

the claims must be and are dismissed.[5]

## B.  Civil RICO Conspiracy

Plaintiffs also bring a civil RICO conspiracy claim pursuant to Title 18, United States

Code, Section 1962(d).  To establish a violation of that provision, "a plaintiff must show that the

defendant agreed with at least one other entity to commit a substantive RICO offense."  *Crawford*,

758 F.3d at 487.  Courts, including the Second Circuit, have held that where, as here, a plaintiff

fails to state a substantive RICO claim, any claim of conspiracy under Section 1962(d) must fail as

well.  *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996) ("Since we have held

that the prior claims do not state a cause of action for substantive violations of RICO, the present

claim does not set forth a conspiracy to commit such violations."), *vacated on other grounds*, 525

U.S. 128 (1998); *Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-CV-588 (KMK),

---

[5]      Plaintiffs do not argue that they should be excused from Rule 9(b)'s pleading requirements because the facts are "peculiarly within" Defendants' knowledge, *see, e.g.*, *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (holding that "[d]espite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge," but noting that "[t]his exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations"), although the Complaint could be read to suggest as much.  (*See, e.g.*, Am. Compl. ¶ 278 ("Shchegol and Willis-Campbell made repeated false statements to ACICS, on occasions that Named Plaintiffs cannot identify but that are known to ASA Defendants . . . .")).  Plaintiffs, however, were able to plead with specificity the exact contents of the false statements in one of the reports to ACICS (*id.* ¶ 279), so there is no basis on the current record to conclude that the nature and dates of the false statements to ACICS are "peculiarly" within Defendants' knowledge.  *See Wilson v. Toussie*, 260 F. Supp. 2d 530, 537-38 (E.D.N.Y. 2003) (concluding that, "based upon the proffered materials, the Court cannot, at this time, ascertain whether" the *Wexner* exception to pleading with particularity "applies to any portions of [the plaintiffs'] RICO claims").

2012 WL 1638326, at *8 (S.D.N.Y. May 8, 2012) ("[B]ecause Plaintiff has failed to plausibly

state a substantive RICO claim, he also, therefore, has failed to state a RICO conspiracy claim.");

*DeSilva*, 770 F. Supp. 2d at 525 n.13 ("Because plaintiffs lack standing to bring a claim under

either Section 1962(a) or Section 1962(c), plaintiffs' Section 1962(d) claim also must necessarily

fail, because to establish a conspiracy violation under § 1962(d), a plaintiff first must adequately

state a claim under §§ 1962(a), (b), or (c).").  In any event, Plaintiffs' conspiracy claim fails for

other reasons, as they fail to "provide specific factual allegations supporting an inference" that

Defendants "entered into an agreement to facilitate the goals of [the] enterprise." *Schmidt v. Fleet*

*Bank*, 16 F. Supp. 2d 340, 354 (S.D.N.Y. 1998), *disagreed with on other grounds by Pavlov v.*

*Bank of N.Y. Co.*, 25 F. App'x 70, 71 (2d Cir. 2002); *see also, e.g.*, *Hecht v. Commerce Clearing*

*House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) ("Because the core of a RICO civil conspiracy is an

agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must

allege specifically such an agreement.").  It is not enough to allege in conclusory fashion that

Defendants "conspired" to defraud.  (*See* Am. Compl. ¶¶ 515, 517).  After all, in order to survive a

Rule 12(b)(6) motion,  "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  As Plaintiffs' conspiracy

allegations are not only conclusory, but also "do not permit the court to infer more than the mere

possibility of misconduct," *id.* at 679, this claim must be and is dismissed.

**C.  State-Law Claims**

In light of the Court's dismissal of Plaintiffs' federal claims, the Court declines to exercise

supplemental jurisdiction over Plaintiffs' state-law claims.  Pursuant to Title 28, United States

Code, Section 1367, a district court has discretion over whether to exercise jurisdiction over state-

law claims "that are so related to claims in the action within such original jurisdiction that they

form part of the same case or controversy under Article III of the United States Constitution."  28

U.S.C. § 1367(a).  The Supreme Court and the Second Circuit have made clear, however, that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Here, there is no basis to depart from that general rule.  Given the relatively early state of the case, the traditional "values of judicial economy, convenience, fairness, and comity" that the Court must consider do not counsel in favor of exercising jurisdiction.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Accordingly, Plaintiffs' state-law claim is dismissed, and the Court therefore does not reach the question of whether Defendants violated Section 349 of the GBL.  *See* 28 U.S.C. § 1367(c); *see also, e.g.*, *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994) (recognizing that if the plaintiff's federal claims are dismissed before trial and there has not been a substantial expenditure of resources on the state claims, state claims should generally be dismissed as well).

## CONCLUSION

It may well be that Defendants have engaged in — and continue to engage in — unsavory business practices, but that is not the question before the Court.  Instead, the sole question for the Court is whether Plaintiffs have adequately pleaded their claims under the rigorous standards that apply under Rule 9(b) and to RICO claims, especially RICO claims where the alleged predicate acts are mail and wire fraud.  Having found that they have not, and that Plaintiffs must seek relief for any state-law violations in state court, the Court is compelled to grant Defendants' motion to dismiss and dismiss the Complaint in its entirety.

That is not, however, the end of the matter, as Plaintiffs request — albeit in a footnote in their memorandum of law — for leave to amend their Complaint in the event that the Court finds it deficient.  (Pls.' Mem. 41 n.28).  Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, which governs Plaintiffs' request, leave to amend a complaint should be freely given "when

justice so requires." Fed. R. Civ. P. 15(a)(2).  The Second Circuit has held that a Rule 15(a)

motion — as the Court construes Plaintiffs' request — "should be denied only for such reasons as

undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting

prejudice to the opposing party."  *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566,

603 (2d Cir. 2005) (internal quotation marks omitted).

  In light of that standard — and given the Court's basis for dismissal of Plaintiffs' claims

against the Job Placement Defendants in particular — granting Plaintiffs leave to amend is

warranted in this case.  *See Official Publ'ns, Inc. v. Kable News Co.*, 884 F.2d 664, 669 (2d Cir.

1989) (noting that "where [a] complaint is deficient under Rule 9(b), leave to amend is usually

afforded" (internal quotation marks omitted)).  To be sure, Plaintiffs already had one opportunity

to amend their Complaint following Defendants' first motion to dismiss, and were expressly

warned that they would "not be given any further opportunity to amend the complaint to address

issues raised by the motion to dismiss."  (Docket No. 30).  Nevertheless, the Court cannot

conclude that a second opportunity would be futile.  Indeed, although some of Defendants'

arguments for dismissal in its first motion are identical to those made in the instant motion,

Defendants largely attacked Plaintiffs' first Complaint on more general grounds, such as on its

tendency to attribute all allegedly fraudulent statements to "ASA Defendants" and its failure to

include *any* representations made by Defendants in their submissions to accrediting agencies —

deficiencies that Plaintiffs by and large cured.  That is, this not a case where there is a "repeated

failure to cure deficiencies by amendments previously allowed."  *In re Eaton Vance Mut. Funds*

*Fee Litig.*, 403 F. Supp. 2d 310, 319 (S.D.N.Y. 2005) (internal quotation marks omitted), *aff'd sub*

*nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007).

  Accordingly, Plaintiffs are hereby given leave to file a second amended complaint within

**thirty days** of the date of this Opinion and Order; Plaintiffs will not be given any further

opportunity to amend to address the defects addressed in this Opinion and Order.  If Plaintiffs do

amend, Defendants shall have **three weeks** in which to respond to the new complaint.  If Plaintiffs

do not amend, the case will be dismissed without further notice to the parties.

The Clerk of Court is directed to terminate Docket No. 46.


SO ORDERED.

Date:   June 5, 2015
New York, New York

JESSE M. FURMAN
United States District Judge