UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KARILIN FRICA SANCHEZ, SHAWANNA
DILWORTH, NELSON FORASTIERI, ANDRE
LASHLEY, TOMMY MIRANDA, RENEE
DAVIS, RODNEY WILLIAMS, and MARY
ESTEVEZ, individually and on behalf of all others
similarly situated,

                                   Plaintiffs,

    - against -

ASA COLLEGE, INC; ALEX SHCHEGOL;
VICTORIA KOSTYUKOV; LESIA WILLIS-
CAMPBELL; and ROBERT FAYNBLUT,

                                   Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  05/02/2016

ECF Case
No. 14-CV-5006 (JMF/RLE)

**SETTLEMENT AGREEMENT
AND [PROPOSED] ORDER**

         This Settlement Agreement and Order dated April 27, 2016 ("Settlement Agreement" or

"Agreement") is entered into by and among Defendants ASA College ("ASA"), Inc., Alex

Shchegol, Victoria Kostyukov, Lesia Willis-Campbell, and Robert Faynblut (together,

"Defendants"); and Plaintiffs Karilin Frica Sanchez, Shawanna Dilworth, Nelson Forastieri,

Andre Lashley, Tommy Miranda, Renee Davis, Rodney Williams, and Mary Estevez (together,

"Named Plaintiffs"), in their individual capacities, through their undersigned counsel, who are

authorized by their respective clients to execute this Settlement Agreement.  Defendants and

Named Plaintiffs are the "Parties."

## BACKGROUND

         ASA is a privately owned, for-profit career college that offers certificate and degree

programs in business, healthcare, criminal justice, information technology, and other fields.  On

July 3, 2014, Plaintiffs commenced this Civil Action individually and on behalf of a proposed

class of students who attended or are attending ASA against Defendants for alleged violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), and New York General Business Law § 349 ("New York Consumer Protection Act").  The Civil Action sought an order certifying the Civil Action as a class action under Federal Rule of Civil Procedure 23, declaratory and injunctive relief, actual, statutory and punitive damages, and attorneys' fees.

On September 5, 2014, Defendants filed a Motion to Dismiss the Civil Action.  On October 3, 2014, Plaintiffs filed a First Amended Complaint.  On November 3, 2014, Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint.  On January 23, 2015, the United States filed a Statement of Interest in the Civil Action.

On June 5, 2015, the Court entered an Opinion and Order granting Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.  The Court granted Plaintiffs leave to file a Second Amended Complaint. On August 5, 2015, Plaintiffs filed a Second Amended Complaint.

Defendants deny all liability for the claims and charges made in the Second Amended Complaint and do not admit or concede any fault or liability whatsoever.  Defendants maintain that ASA College has at all times fully complied with all federal and state education laws and is accredited by the Accrediting Council for Independent Colleges and Schools ("ACICS") and the Middle States Commission on Higher Education ("MSCHE"), among other accrediting agencies. The Parties have concluded after extensive arms-length negotiations that further litigation of the Civil Action would be protracted and expensive and that it is desirable that the litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement, to limit further expenses, inconvenience, and to dispose of the burden and risks of litigation.

2

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned, that this action is settled on the following terms and conditions:

## SECTION I: DEFINITIONS

1.     The following terms, as used in this Settlement Agreement, have the following meanings:

    a.     "ACICS" means Accrediting Council for Independent Colleges and Schools, and all of its past and present officers, directors, employees, agents, attorneys, servants, representatives, parents, subsidiaries, affiliates, partners, shareholders, and all other persons, partnerships, or corporations with whom the former have been, or are now, affiliated and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

    b.     "ASA" means Defendant ASA College, Inc., and all its past and present officers, directors, employees, agents, independent contractors, attorneys, servants, representatives, parents, subsidiaries, affiliates, partners, shareholders, and all other persons, partnerships, or corporations with whom any of the former have been, or are now, affiliated and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

    c.     "Admissions or recruitment activities" means any activity to explain, advertise, promote, or market ASA's programs and services to the general public.

    d.     "Civil Action" means the above-styled litigation.

    e.     "Clear and Conspicuous" or "Clearly and Conspicuously" means that the statement, representation or term being disclosed is of such size, color, contrast and/or audibility and is so presented as to be readily noticed and understood by the person to whom it is being disclosed.  If such statement is necessary as a modification, explanation, or clarification to other information with which it is presented, it must be presented in close proximity to the information it modifies, in a manner so as to be readily noticed and understood.  In addition to the foregoing, in interactive media, the disclosure must be presented directly and not via a hyperlink that requires navigation to a separate page.

    f.     "Court" means the United States District Court for the Southern District of New York, through the Judge assigned to the Civil Action.

    g.     "Directory Information" has the meaning provided under the regulations of the Family Educational Rights and Privacy Act ("FERPA") as codified in 34 C.F.R. § 99.3, and includes but is not limited to, the student's name; address; telephone listing; electronic mail address; photograph; date and place of birth; major field of study; grade level; enrollment status (e.g., undergraduate or graduate, full-time or part-time); dates of attendance; participation in officially recognized activities and

sports; weight and height of members of athletic teams; degrees, honors, and awards received; and the most recent educational agency or institution attended.

h.    "Education Records" has the meaning provided under FERPA as codified in 34 C.F.R. § 99.3.

i.    "Effective Date" means the date this Settlement Agreement is so-ordered by the Court.

j.    "Enrolled" means having completed admissions paperwork and received a class schedule.

k.    "ESL" means English as a Second Language.

l.    "Notice of Disclosure of Job Placement Records" means the document with that title that the Parties have separately drafted and agreed upon, a document that also contains a section titled "Exclusion from Disclosure of Job Placement Records," attached to this Agreement as Exhibit A.

m.    "Plaintiffs' Counsel" means the New York Legal Assistance Group and the law firm of Emery Celli Brinckerhoff & Abady LLP.

n.    "Proposed Order Regarding FERPA" means the document with that title that the Parties have separately drafted and agreed upon, attached to this Agreement as Exhibit B.

o.    "Prospective Student" means any individual who is contacted by or contacts ASA, directly or indirectly, concerning possible enrollment in a course or program at ASA.

p.    "Stipulation of Dismissal" means the document titled "Stipulation and [Proposed] Order of Dismissal" that the Parties have separately drafted and agreed upon, attached to this Agreement as Exhibit C.

## SECTION II: INJUNCTIVE RELIEF

### *Recruiting, Marketing, and Admissions*

2.    ASA will not advertise any job placement rate, including in its catalog, on its website, in advertisements, brochures, or other marketing materials, except as calculated pursuant to Paragraphs 14–19 of the Settlement Agreement.

3.    ASA will ensure that persons or entities engaged in admissions or recruitment activities on ASA's behalf is communicating current and accurate information regarding courses and programs, services, tuition, terms, student outcomes, and operating policies of ASA.

4.    Any persons or entities engaged in admission or recruitment activities on ASA's behalf will use only those titles which accurately reflect their actual duties and responsibilities.

4

No person or entity engaged in admission or recruitment activities on ASA's behalf will be designated as a counselor or advisor.

5.  In interactions with a prospective student on ASA's behalf, no person or entity will make, directly or indirectly, any deceptive, false, or misleading statement of any kind. Prohibited statements include, but are not limited to:

   a.  Guarantees or assurances of employment while attending ASA;

   b.  Guarantees or assurances of employment after completing a program at ASA;

   c.  Projections of specific salaries or earnings after completing a program at ASA;

   d.  Predictions about monthly student loan payments or suggestions that students will not have to repay loans unless they have jobs;

   e.  Representations that ASA's ESL classes are free;

   f.  References to "financial aid" without an accompanying explanation that such "financial aid" may include loans that will have to be repaid; and

   g.  Representations that ASA's Healthcare Office Administration program makes students eligible to sit for the Certified Professional Coder Examination administered by the American Academy of Professional Coders;

   h.  Representations that ASA's Pharmacy Technology Program is a prerequisite for taking the National Pharmacy Technician Certification Examination administered by the Pharmacy Technician Certification Board;

   i.  Representations that ASA's Health Information Technology Program makes students eligible to pass certification exams in the health information technology field; and

   j.  Representations that credits earned at ASA are automatically transferable to other colleges.

6.  In interactions with a prospective student on ASA's behalf concerning financial aid, only designated employees of the Financial Aid Office may advise prospective students regarding projections of the amount of monthly student loan payments, or regarding prospective students' qualification for, or likely receipt of, financial aid. Financial Aid Office employees may not make, directly or indirectly, any deceptive, false, or misleading statement of any kind.

### *Lifetime Job Placement Assistance*

7.  ASA will make job placement assistance available to all ASA graduates, and will not impose any barriers or qualifications as prerequisites to an ASA graduate obtaining job placement assistance.

5

8.      ASA will not use any form of "waiver" to exclude graduates from requested job placement assistance.

9.      ASA will employ career placement advisors in a number sufficient to provide job placement assistance in a timely manner to all current and former students.

### ***Job Placement Rates***

10.     ASA represents that it is currently accredited by ACICS.

11.     ASA represents that it is required by ACICS to calculate and report job placement statistics for itself as an institution and for its programs in accordance with ACICS standards.

12.     ASA further represents that the procedures and standards concerning the calculation of job placement rates in this Agreement are consistent with ACICS standards, in that the procedures and standards are required by, or allowed for, by ACICS standards.

13.     ASA shall do the following in calculating and reporting job placement rates to ACICS:

<u>Reporting Cohort</u>

14.     ASA shall include in each annual Reporting Cohort all students who graduate or complete a substantive program between July 1 of the previous year and June 30 of the current year.

     a.      A graduate is a student who has:

          i.      Achieved a minimum GPA of 2.0;
          ii.     Passed all required or substitute courses;
          iii.    Attained required competencies;
          iv.     Met all clinical, internship, and externship requirements;
          v.      Satisfied all other academic requirements for graduation;
          vi.     Satisfied all non-academic requirements for graduation, such as payment of tuition and fees, return of books, etc.;
          vii.    Received the appropriate credential; and
          viii.   Ceased enrolling at ASA, unless currently enrolled or re-enrolled as a new student in a different ASA program.

     b.      A completer is a student who is no longer enrolled in an ASA program and who has either completed the time allowed or attempted the maximum allowable number of credits for the program of study but who did not accomplish one of the following graduation requirements:

          i.      Achieve a minimum GPA of 2.0;

          ii.     Attain required competencies; or

       iii.      Satisfy non-academic requirements

c.      A student who completes solely a stand-alone program in ESL is neither a graduate nor a completer.

<u>Placed Students</u>

15.      ASA will deem a student as "placed" only in the event that ASA has documented that the student is employed in a position that meets all of the following criteria:

      a.      Is permanent, not temporary, *i.e.* has no contemplated end date;

      b.      Is paid;

      c.      Requires a minimum of 20 hours per week;

      d.      Is in the student's field of study or a related field, determined because:

            i.      the title of the job corresponds to a job for which the program prepares students, based on the job titles ASA publishes in compliance with U.S. Department of Education Title IV regulations and identified in the Department's CIP-to-SOC Crosswalk with the CIP code of the ASA program, or

            ii.      the position requires the use of the majority of the skills learned in the program, based on the skills ASA publishes in the program description, or

            iii.      in the event that neither (i) nor (ii) applies, the student obtained, or advanced in or was able to retain a job s/he already had, only by virtue of graduating or completing the program at ASA.

      e.      The student has in fact been employed in the position for a minimum of 30 days.

16.      In addition, ASA will not deem as "placed" any student on the basis that the student is working:

      a.      For ASA as an admissions or recruiting representative;

      b.      As a food preparation worker, food service worker, or food server;

      c.      As a retail cashier, retail salesperson, or retail stock clerk.

17.      ASA will obtain and retain, for each placed student, the following documentation:

      a.      An employment verification form that confirms ¶¶ 15(a) through (c) and 15(e) above and lists the job title of the student, signed by an ASA representative and either the placed student or the employer;

      b.      A job description including list of duties;

     c.       For students deemed placed under ¶ 15(d)(iii), an attestation signed by the student setting forth the student's job title, date of employment, and attesting that the conditions set forth in ¶ 15(d)(iii) obtain; and

     d.       Current contact information for both the student and the student's employer, if any.

Waived Students

18.     ASA will exclude a student from the reporting cohort's job placement report as "waived" only if ASA documents that, at some point during the reporting period, the student, after graduating or completing,

     a.       Is pursuing continuing education, as established by information in the National Student Loan Data System (NSLDS);

     b.       Is deceased;

     c.       Is in active duty status in the military or is the spouse or dependent of military personnel who have moved due to military transfer orders;

     d.       Is imprisoned;

     e.       Is pregnant and does not wish to work;

     f.       Has a health condition that prevents the student from working, or is unable to work because the student's immediate family member required hospitalization, bed rest or rehabilitation; or

     g.       Is unable to work because of visa restrictions and ASA documents the student's visa, the lack of opportunities for paid practical training, and the student's location in the US for some time during the reporting period.

Non-Placed Students

19.     ASA will count as "non-placed" any student who ASA cannot document as being placed or waived in accordance with the foregoing paragraphs.

Change in Accreditation Status or Standards

20.     In the event that ACICS standards for the calculation of job placement rates change in a material way such that it is impossible for ASA to comply with both ACICS standards and any provision of this agreement, Defendants will notify Plaintiffs' counsel of such change, and the Parties will follow the dispute resolution procedures set forth in Section IV.

21.     If during the pendency of this Agreement ASA is no longer accredited by ACICS for any reason, ASA shall continue to apply the ACICS procedures and standards for calculating

job placement rates for the purposes of this Agreement. In that event, ASA will not advertise, publicize, or promote any job placement rate as being endorsed, accepted, or approved by ACICS. In the event that ASA is no longer accredited by ACICS for any reason, ASA may advertise, publicize, or promote a job placement rate as being calculated "in accordance with ACICS" standards only if the same advertisement, publicity, or promotion clearly and conspicuously discloses that ASA is not accredited by ACICS.

### *Financial Aid Counseling*

22.     ASA must provide information about the availability of income-driven repayment options such as Income-Based Repayment whenever asked by a former ASA student about student loan repayment options.

## SECTION III: MONITORING

23.     Plaintiffs' Counsel will monitor ASA's compliance with this Settlement Agreement including, but not limited to, by auditing ASA's calculation of job placement rates as set forth below.

Audit of Job Placement Rates

24.     Simultaneously with the Parties' submission of this Settlement Agreement to the Court, the Parties shall make a joint request that the Court enter the Proposed Order Regarding FERPA, attached to this Agreement as Exhibit B.  If the Court enters the Proposed Order Regarding FERPA, or a substantially similar Order, the Parties will follow the procedures in Paragraphs 27–34.

25.     Defendants will supply to Plaintiffs' Counsel, for the ACICS reporting period ending June 30, 2016, and for each ACICS reporting period thereafter until this Agreement terminates pursuant to its terms, the information listed in Paragraphs 25(a)–(f). Defendants shall only redact that information as necessary to comply with FERPA.

   a.     For each of ASA's certificate and degree programs, an exhaustive list of job titles that constitute an "in field" placement described in Paragraph 15(d)(i);

   b.     For each of ASA's certificate and degree programs, an exhaustive list of skills taught in the program that could serve to verify that a graduate of that program is employed in the field of study or in a related field, as described in Paragraph 15(d)(ii);

   c.     The Campus Accountability Report as provided to ACICS, in both paper and electronic format, and any attachments or exhibits thereto;

   d.     The Institutional Effectiveness Plan and/or Campus Effectiveness Plan as provided to ACICS, and any attachments or exhibits thereto;

    e.      Any Program Improvement Plan or Campus Improvement Plan as provided to ACICS, and any attachments or exhibits thereto; and

    f.      Any and all correspondence between ACICS and ASA concerning job placement rates.

26.      This information will be provided to Plaintiffs' Counsel within thirty (30) days of its submission to, or receipt from, ACICS or, in the case of (a) and (b), within thirty (30) days of the Effective Date and within thirty (30) days of any subsequent modification.

27.      Each year until this Agreement terminates pursuant to its terms, within thirty (30) days of receiving the Campus Accountability Report from ASA, Plaintiffs' Counsel will identify a random sample of student placement files for auditing, according to statistically valid methods, and in a number in Plaintiffs' Counsel's discretion, not exceeding fifty (50) student files per ACICS reporting period.  Plaintiffs' Counsel will notify ASA of the students included in the random sample with reference to the page and row numbers of the Campus Accountability Report.

28.      Within five (5) business days of notification by Plaintiffs' Counsel, ASA will:

    a.      Identify the complete student placement files, in the form in which they are maintained by ASA's placement department and containing the documentation, where applicable, of the information listed in paragraphs 17 and 18, of all students identified by Plaintiffs' Counsel as part of the random sample;

    b.      Make a complete copy of those complete student placement files and set aside those copied files; ASA will redact students' social security numbers but will not otherwise redact the copied files; and

    c.      Send a copy of the Notice of Disclosure of Job Placement Records to each such student, via e-mail and First Class Mail, to all known addresses for that student, thereby providing those students an opportunity to exclude themselves from the random sample pursuant to the procedure set forth in the Notice of Disclosure of Job Placement Records.

29.      Within two (2) business days of ASA receiving a returned Exclusion from Disclosure of Job Placement Records form from any student, ASA will send a copy of the same form to Plaintiffs' Counsel, with the student's name and any other personally identifiable information redacted.  ASA will simultaneously identify each such student to Plaintiffs' Counsel, without providing any personally identifiable information, identifying the student with reference only to the page and row number of the Campus Accountability Report.  For each student for whom ASA receives an Exclusion from Disclosure of Job Placement Records form, Plaintiffs' Counsel will identify a substitute student from the Campus Accountability Report and will notify ASA accordingly.  ASA shall follow the provisions in paragraph 28, and this paragraph, with regard to such substitute students that Plaintiffs' Counsel identifies.

30. For each student in the random sample for whom ASA does not receive an Exclusion from Disclosure of Job Placement Records within twenty-one (21) days of sending that form, ASA will, on the business day following the twenty-first (21st) day, send Plaintiffs' Counsel the placement file for each such student, in the form in which that placement file was copied, redacted as to any social security numbers, and set aside pursuant to Paragraph 28.

31. The Parties will follow the provisions in paragraphs 28 through 30 each year until ASA has submitted to Plaintiffs' Counsel complete placement files for fifty (50) students.

32. It is expressly understood by the Parties that Plaintiffs' Counsel may contact students included in the sample and any associated employers or educational institutions in order to verify the information contained therein.

33. It is the understanding of the Parties that, upon the Court entering the Proposed Order Regarding FERPA, or a substantially similar Order, ASA's provision to Plaintiffs' Counsel of Directory Information and other student Education Records pursuant to paragraphs 27 to 31 will be consistent with FERPA, and implementing regulations including, without limitation, 34 C.F.R. § 99.31(a)(9), and that ASA will provide Plaintiffs' Counsel with Directory Information and other student Education Records only as consistent with FERPA.

34. Plaintiffs' Counsel will maintain any and all information and documents provided pursuant to Paragraphs 27 to 31 in the strictest confidence. Plaintiffs' Counsel will use any and all information provided pursuant to paragraphs 27 to 31 solely for the purposes described in this Agreement. In no event may Plaintiffs' Counsel make any public disclosure of information provided pursuant to paragraphs 27 to 31, except: (a) as provided in paragraph 32, and (b) that Plaintiffs' Counsel may cite or attach the information in any court filing pursuant to Section IV of this Agreement provided that any student's personally identifying information is redacted in any such filing. Upon the termination of this Agreement, Plaintiffs' Counsel will return to ASA or destroy any and all information provided pursuant to paragraphs 27 to 31.

## SECTION IV: RESOLUTION OF DISPUTES

35. The Parties recognize that questions may arise as to whether the Parties are fulfilling their obligations as set forth herein. In the spirit of common purpose and cooperation that occasioned this Agreement, the Parties agree to the following.

36. If differences arise between any of the Parties with respect to the Parties' compliance with, interpretation of, or implementation of the terms of this Agreement, including without limitation differences arising from the results of any audit of job placement rates, efforts shall be made by the Parties to resolve such difference promptly in accordance with the Dispute Resolution Procedures in this Section.

37. If one party believes an issue must be resolved, it shall promptly notify the other parties in writing of the issue and the facts and circumstances relied upon in asserting its position. The parties notified of the issue shall be given a reasonable period of time (not

11

to exceed fifteen (15) days) to review the facts and circumstances and to provide the party raising the issue with its written position including the facts and circumstances upon which it relies in asserting its position.  Within a reasonable period of time thereafter (not to exceed fifteen (15) days) the Parties shall meet, by telephone or in person, and attempt to resolve the issue informally.  If a party believes that resolution cannot be achieved following a meeting to discuss the dispute, the party shall promptly notify the other parties in writing that it is terminating discussions, and shall specify its final position with regard to resolving the dispute.  The notifying party may then petition the Court for relief.

38.    Nothing in this Section shall prevent any party from promptly bringing an issue before the Court when, in the moving party's view, the facts and circumstances require immediate court action.  The moving party's papers shall explain the facts and circumstances that necessitate court action.  If any party brings a matter before the Court requiring court action, the opposing party shall be provided with appropriate notice under the Local Rules of the United States District Court for the Southern District of New York and the Federal Rules of Civil Procedure.

## SECTION V: REPRESENTATIONS BY PLAINTIFFS' COUNSEL

39.    Plaintiffs' Counsel represent and warrant that: (i) they do not represent, and are presently neither preparing nor contemplating representing, any other current or former students of ASA in any other lawsuits or other legal actions related to or similar to the Civil Action; and (ii) they neither currently nor presently intend to actively solicit current or former students of ASA to initiate any other lawsuits or other legal actions related to or similar to the Civil Action against ASA.

40.    Nothing in this Settlement Agreement shall be construed to prevent Plaintiffs' Counsel from complying with their obligations under the ABA Model Rules of Professional Conduct (including Rule 5.6), the New York Rules of Professional Conduct (including Rule 5.6(a)(2)), and/or any other applicable rules or codes of attorney professional conduct, including the duty to diligently represent their clients, nor shall anything in this Settlement Agreement be construed to conflict with Plaintiffs' Counsel's obligations under those rules or codes. Moreover, nothing in this Settlement Agreement shall be construed to preclude Plaintiffs' Counsel from monitoring ASA's compliance with this Settlement Agreement, or from representing clients in connection with applications to the U.S. Department of Education for loan relief.

## SECTION VI: SCOPE AND EFFECT OF SETTLEMENT

41.    Pursuant to the terms of a separate confidential agreement between the Parties, within the later of (A) twenty (20) days of the date the Parties execute this Settlement Agreement, and (B) three (3) days of the Effective Date, Defendants will effect payment to the Named Plaintiffs. Named Plaintiffs' claims against Defendants for damages will be terminated and released only upon payment pursuant to the terms of the separate confidential agreement.

42. Upon payment by Defendants to the Named Plaintiffs, and in consideration thereof, Named Plaintiffs shall be deemed to have fully, finally and forever, released, acquitted and discharged Defendants, individually and collectively, and each of their predecessors, successors, past and present officers, directors, trustees, partners, shareholders, employees, agents, attorneys, accountants, insurers, co-insurers, re-insurers, parents, affiliates and subsidiary companies, and the assigns and heirs of each of them from any and all claims and causes of action whatsoever at law or equity, known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden that could have been asserted, have been asserted, or are now pending on behalf of any Named Plaintiff arising in whole or part from the facts that Plaintiffs have asserted in the Civil Action or prosecution of this lawsuit.

43. Upon payment by Defendants to the Named Plaintiffs, and in consideration of the release described in the foregoing paragraph, Defendants, and their attorneys, heirs, executors, trustees, administrators, personal and legal representatives, and beneficiaries, shall be deemed to have completely released, acquitted, and forever discharged Named Plaintiffs, individually and collectively, from any and all claims, demands, actions, suits and causes of action, that Defendants ever had, now have, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known or unknown, foreseen or unforeseen, suspected or unsuspected injuries or damages, and the consequences thereof, in any way arising out of or resulting from Named Plaintiffs' attendance at ASA or prosecution of this lawsuit from the beginning of time to the date of this Settlement Agreement, including but not limited to any liability for tuition (including but not limited to for books or fees) owed to ASA by a Named Plaintiff.

44. The releases set forth in this Section shall not encompass or be deemed to impair any claims that may arise out of the implementation or monitoring of this Settlement Agreement. The provisions of this Settlement Agreement are not intended to eliminate or terminate any rights otherwise available to Named Plaintiffs for acts by Defendants occurring after the date of this Settlement Agreement.

45. Within five (5) business days after the payment to the Named Plaintiffs pursuant to paragraph 41, the Parties shall file a Stipulation of Dismissal with the Court in accordance with the terms of this Agreement and Federal Rule of Civil Procedure 41(a)(1)(A)(ii), pursuant to which the Named Plaintiffs' individual claims for damages and for injunctive and equitable relief shall be dismissed with prejudice, and Named Plaintiffs' claims on behalf of a putative class shall be dismissed without prejudice.

## SECTION VII: CONTINUING JURISIDCTION AND TERMINATION

46. The Court shall retain jurisdiction to enforce the terms of this Agreement for thirty-six (36) months from the Effective Date. At that time, the Court's jurisdiction shall end and all rights and claims arising under the provisions of this Settlement Agreement shall terminate.  Upon the passing of thirty-six (36) months of the Effective Date, no provisions of this Agreement shall have any force or effect, and any injunctive relief provided for in this Agreement shall automatically terminate.

47.     A Party may only petition the Court for continuation of jurisdiction beyond the thirty-six (36) month period in the event that ASA ceases to be accredited by any approved accrediting agency; or ASA is no longer permitted to participate in Title IV financial aid programs under the Higher Education Act of 1965.

## SECTION VIII: GENERAL PROVISIONS

48.     This Settlement Agreement, and the documents referenced herein (the Stipulation of Dismissal, the Notice of Disclosure of Job Placement Records, and the confidential agreement referenced in Paragraph 41) constitute the Parties' entire agreement with respect to the matters set forth in this Settlement Agreement.

49.     In the event of any change in federal statute or regulation or state statute that any party believes changes his or her ability to comply with this Settlement Agreement, such party shall so notify all other parties and the parties shall attempt to come to an agreement as to any modifications of the Settlement Agreement that are warranted by said changes in federal or state law.  If, after 30 days, the parties have not been able to agree, the dispute shall be submitted to the Court by motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.  Unless plaintiffs obtain a stay during the pendency of any defendant's Rule 60(b) motion to modify that defendant's obligations under this Settlement Agreement, that defendant shall be permitted to implement the modification pending the Court's decision of the motion.   The filing by plaintiffs of an appeal of an adverse decision shall not operate as a stay of the Defendants' right to implement the proposed modification without further order of the District Court or Court of Appeals.

50.     All parties to this Settlement Agreement have participated in its drafting; consequently, any ambiguity shall not be construed for or against any party.

51.     This Settlement Agreement is final and binding upon the parties, their successors, and their assigns.  This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed an original.  For purposes of executing this Agreement, a document signed and transmitted by facsimile or email shall be treated as an original document and have the same binding legal effect as an original signature on an original document.

52.     Any notice, report, or communication required by or made pursuant to the terms of this Settlement Agreement (other than the Notice of Disclosure of Job Placement Records to be sent to individual students), shall be sent by electronic mail and, upon request, by first class mail, postage prepaid, to all of the people below:

              For Plaintiffs:                              For Defendants:

              Jane Stevens                                 Steven Johnson
              jstevens@nylag.org                           sjohnson@jgmlaw.com

14

53.   Any party may change the above designated addressee or address by written notice to the
      other parties. A copy of such notice shall be filed with the Clerk of Court.

NEW YORK LEGAL ASSISTANCE GROUP
By:

_____

Beth E. Goldman, President

Jane Greengold Stevens
Jason Glick
*Of Counsel*

7 Hanover Square, 18th Floor
New York, NY 10004
(212) 613-5000

EMERY CELLI BRINCKERHOFF & ABADY LLP
By:

_____

Matthew D. Brinckerhoff
Hayley Horowitz

600 Fifth Avenue, 10th Floor
New York, NY 10020
(212) 763-5000

*Attorneys for Plaintiffs*

Dated   4-27-16

JOHNSON GALLAGHER MAGLIERY LLC

By:

_____

Steven D. Johnson
Derek McNally

75 Broad Street – 20th Floor
New York, New York 10004
Tel: (212) 248-2220

53.     Any party may change the above designated addressee or address by written notice to the other parties. A copy of such notice shall be filed with the Clerk of Court.


NEW YORK LEGAL ASSISTANCE GROUP
By:


_____
Beth E. Goldman, President

Jane Greengold Stevens
Jason Glick
*Of Counsel*

7 Hanover Square, 18th Floor
New York, NY 10004
(212) 613-5000

EMERY CELLI BRINCKERHOFF & ABADY LLP
By:


_____
Matthew D. Brinckerhoff
Hayley Horowitz

600 Fifth Avenue, 10th Floor
New York, NY 10020
(212) 763-5000

*Attorneys for Plaintiffs*

Dated _____

JOHNSON GALLAGHER MAGLIERY LLC

By:

_____
Steven D. Johnson
Derek McNally

75 Broad Street – 20th Floor
New York, New York 10004
Tel: (212) 248-2220

*Attorneys for Defendants*

Dated April 27, 2016


SO ORDERED.

Dated: May 2, 2016

New York, New York

HON. JESSE M. FURMAN
United States District Judge


The Clerk of Court is directed to close this case. All conferences are cancelled.

16